SCHNEIDER WALLACE
COTTRELL KONECKY LLP

John J. Nestico (N.Y. SBN 1724020)
6000 Fairview Road, Suite 1200
Charlotte, North Carolina 28210
Tel: (510) 740-2946; Fax: (415) 421-7105
jnestico@schneiderwallace.com

Joshua Konecky, (Cal. SBN 182897)*
Nathan Piller, (Cal. SBN 300569)*
Sarah McCracken, (Cal. SBN 313198)*
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel: (415) 421-7100
Fax: (415) 421-7105
jkonecky@schnedierwallace.com
ljoyner@schneiderwallace.com
npiller@schneiderwallace.com
smccracken@schneiderwallace.com

*To apply for admission Pro Hac Vice*

Attorneys for Plaintiffs and the proposed Class

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TAVARES HOBBS, RICARDO BELL, and ROBERT SHAW, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>KNIGHT-SWIFT TRANSPORTATION HOLDINGS, INC., and SWIFT TRANSPORTATION CO. OF ARIZONA, LLC.<br><br>        Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR A JURY TRIAL** |

Plaintiffs, Tavares Hobbs, Ricardo Bell, and Robert Shaw, by and through their undersigned attorneys, hereby bring this Class Action Complaint on behalf of themselves and all others similarly situated, against Defendants Knight-Swift Transportation Holdings, Inc. and Swift Transportation Co. Of Arizona, LLC., and alleges as follows:

## I.   INTRODUCTION

1.     This is a class action on behalf of Plaintiffs, Tavares Hobbs, Ricardo Bell, and Robert Shaw and other similarly situated individuals who have worked for Defendants Knight-Swift Transportation Holdings, Inc. and Swift Transportation Co. of Arizona, LLC (collectively, "Defendants" or "Knight-Swift") as non-exempt truck drivers in New York.

2.     Plaintiffs bring this case to address Knight-Swift's systemic denial of minimum wage, straight time and overtime compensation, among other violations of the New York Labor Law.

3.     Knight-Swift is the largest trucking company in the United States.  Knight-Swift has employed Plaintiffs and hundreds of other similarly situated employees in New York as over-the-road truck drivers (collectively "Drivers" and/or "the Class").  The Drivers work away from home for days and often weeks on end hauling freight in long-haul semis, either alone, or as part of a two-driver team.

4.     During their tours of duty transporting freight for Knight-Swift, Drivers live on the truck and attempt to rest in the truck's cramped "sleeper berth," a small space equipped with a bunk bed in the truck's cab.

5.     The Drivers work day and night, transporting loads up to and often over a thousand miles. They spend days and often weeks away from home as part of their regular job duties. To maximize productivity and profits, Knight-Swift works to keep the trucks moving as much as possible. The more Knight-Swift maximizes its drivers' work hours, the more loads its trucks can transport in a shorter amount of time. Knight-Swift's Driver Leaders and Planners work to assign Drivers as many miles as possible.  Not surprisingly, the Department of Transportation (DOT) has observed that over-the-road truck drivers like Knight-Swift's "work

Class Action Complaint
*Hobbs, et al v. Knight-Swift Transportation Holdings, Inc., et al.*

some of the longest hours known in this country." *See* Notice of Proposed Rulemaking; Request for Comments, Department of Transportation, Federal Motor Carrier Safety Administration, Hours of Service of Drivers; Driver Rest and Sleep for Safe Operations, 2000 WL 517560, 65 FR 25540-01, at 25548.

6.    Plaintiffs Tavares Hobbs and Robert Shaw worked with Knight-Swift as solo drivers. Plaintiff Ricardo Bell began his job with Knight-Swift working in a two-driver team that collectively hauled freight for 20 or more hours a day. During this time, he managed only a few hours of sleep per night in the truck's cramped "sleeper berth," typically while the truck itself was in motion, being driven by his team member.

7.    After transitioning from a team to "solo" driver status, Plaintiff Bell, like Plaintiffs Hobbs and Shaw, continued to work around the clock hauling freight, performing various non-driving tasks (such as trip inspections, washing the trailer, taking the truck through weigh scales, working with delivery agents, fueling, and completing paperwork, among numerous other tasks).

8.    Even when they are not driving or performing specific non-driving tasks, Plaintiffs and the other Drivers remained responsible for the security of the load and are required to be available to Knight-Swift—all while being required to remain in a physical area prescribed by Swift—the truck and its immediate vicinity—even when the truck is stopped. They are not permitted to use motels or other sleeping facilities; rather they must be in the "sleeper berth" space prescribed by Swift. Between the 20 or more hours per day spent driving, riding in a moving truck, performing non-driving tasks, and remaining under -Knight-Swift's control while confined to the truck's sleeper berth, unable to use the time effectively for their own purposes, the Plaintiffs and other similarly situated Drivers regularly worked more than 100 hours per week.

9.    The Drivers' time is logged in the truck's electronic system during each hour of every 24-hour period as one of either: "driving," "on-duty, not driving," "off-duty," or "sleeper berth." Knight-Swift defines these categories based on the Department of

Class Action Complaint
*Hobbs, et al v. Knight-Swift Transportation Holdings, Inc., et al.*

Transportation (DOT) safety regulations.

10.     Knight-Swift's policy and practice is to compensate Drivers with a per-mile piece rate that only covers time spent driving.  Knight-Swift does not pay its Drivers for time logged as "off duty" or "sleeper berth," or for the time they spend performing non-driving work that is, by definition, not paid (even when such tasks are logged as "on-duty" for DOT safety purposes).

11.     But while Knight-Swift does not pay for extensive time logged as "off duty"; "sleeper berth"; and "on duty" for DOT safety purposes, the New York Labor Law and Wage Orders make such time compensable.  As a result, the Drivers are paid for only a fraction of the time they spend performing non-driving tasks and/or when required to be in a physical area prescribed by Knight-Swift, unable to use the time productively for their own purposes. This time amounts to over 100 hours per week.

12.     Plaintiffs on behalf of themselves and on behalf of all members of the Class, brings this action to challenge Defendants' deficient policies and practices of: (1) failing to pay Plaintiffs and the Class members for all hours worked as required by N.Y. Lab. Law §§ 190 *et seq.* and 650 *et seq.*; (2) failing to pay Plaintiffs and the Class members minimum wages; (3) failing to pay Plaintiffs and the Class members overtime for "off the clock" work in excess of 40 hours per week, as required by N.Y. Lab. Law §§ 190 *et seq.* and 650 *et seq.*; (4) failing to provide "spread of hours" premium pay for each day Plaintiffs and the Class members worked ten or more hours in violation of New York State Department of Labor Regulation § 142-2.4; and (5) failing to provide accurate, itemized wage statements that include all categories of information set forth in N.Y. Lab. Law § 195(3).

13.     Plaintiffs bring this action to recover all unpaid wages, including minimum wages, straight time and overtime compensation, penalties, liquidated damages, and other damages under New York state law, on behalf of themselves and the Class members, as a class action under Federal Rule of Civil Procedure 23.  Plaintiffs seek to remedy the systemic deficiencies in Defendants' compensation and payroll policies and practices that have deprived

Plaintiffs and the Class members of their lawfully earned wages.

## II.  PARTIES

14.     Plaintiffs and proposed Class members are current and former employees of Defendants who worked as over-the-road Drivers in New York during the time period from six years before the filing of this complaint, through resolution of this action.

15.     Plaintiff Tavares Hobbs is an individual over the age of eighteen and is a resident of Pennsylvania. Plaintiff Hobbs was employed by Knight-Swift as a solo truck driver, worked on Knight-Swift's Sears, Wal-Mart and other accounts in New York. He was paid a per-mile piece rate, until he left Knight-Swift in approximately March 2020. As a truck driver for Knight-Swift, Plaintiff Hobbs regularly hauled freight for Knight-Swift in New York State, including substantial time in New York City.

16.     Plaintiff Ricardo Bell is an individual over the age of eighteen, is a resident of Far Rockaway, New York and was assigned to Knight-Swift's terminal in Syracuse, New York. In June of 2016, Plaintiff Bell was employed by Knight-Swift as team driver and was paid a per-mile piece rate. Thereafter, from approximately July 2016 through January 2017, Mr. Bell worked for Knight-Swift as a solo driver on a dedicated route for Target out of the Target distribution center in Amsterdam, New York. As a dedicated truck driver on Knight-Swift's Target account, Plaintiff Bell regularly hauled freight in New York State, including substantial time in New York City.

17.     Plaintiff Robert Shaw is an individual over the age of eighteen, is a resident of Buffalo, New York and was assigned to Knight-Swift's terminal in Syracuse, New York. Plaintiff Shaw was employed by Knight-Swift as solo driver on Knight-Swift's Walmart account out of Johnstown, New York in 2017 and was paid a per-mile piece rate. As a truck driver for Knight-Swift, Plaintiff Shaw regularly hauled freight for Knight-Swift in New York State, including substantial time in New York City.

18.     Defendant Knight-Swift Transportation Holdings, Inc. is an Arizona corporation resulting from a merger between Knight Transportation, Inc. and Swift

Transportation Company. It is the industry's largest full truckload company; operating with an extensive fleet of roughly 19,000 tractors, 58,000 trailers, and employing 24,000 people. Defendant Knight-Swift Transportation Holdings, Inc. does business in the State of New York and nationwide, and at all relevant times has been engaged in the business of long-haul trucking, logistics, and ground transportation in New York and nationwide, including in this Judicial District.

19.     Defendant Swift Transportation Co. of Arizona, LLC is an Arizona limited liability partnership that does business in the State of New York and nationwide, and at all relevant times has been engaged in the business of long-haul trucking, logistics, and ground transportation in New York and nationwide, including in this Judicial District.

20.     Throughout this Complaint, any reference to "Knight-Swift," "Swift," "Defendant," or "Defendants" is intended to refer to all Defendants jointly.

21.     At all material times, Defendants have done business under the laws of New York, have continuously maintained a physical place of business New York, and have employed the Class members in this district. Defendants are "employers" within the meaning of N.Y. Lab. Law § 190(3).

22.     Defendants acted and continue to act as joint employers of Plaintiffs and the Class members because they jointly, directly or indirectly, control the employment terms, pay practices, and daily work of Plaintiffs and the Class members.

23.     As joint employers of Plaintiffs and the Class members throughout the relevant time period, Defendants, and each of them, are solely, jointly, and severally liable for penalties for violating New York Labor Law, rules and regulations, with respect to the employment of Plaintiffs and the Class members.

## III.  JURISDICTION AND VENUE

24.     This Court has jurisdiction over the subject matter of Plaintiffs' state law causes of action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA").  Under CAFA, this court has original jurisdiction over Plaintiffs' Rule 23 class action claims because

Class Action Complaint
*Hobbs, et al v. Knight-Swift Transportation Holdings, Inc., et al.*

the amount in controversy exceeds $5,000,000, and because Plaintiffs and Defendants are citizens of different states and the number of proposed class members in New York exceeds 100.

25.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, because Defendants employ the Class members and transact business in this Judicial District; and a substantial part of the acts and/or omissions giving rise to the claims occurred in this Judicial District.

## IV.  FACTUAL ALLEGATIONS

26.     Knight-Swift is a truckload motor shipping carrier operating with an extensive fleet of roughly 19,000 tractors, 58,000 trailers. It is the largest common carrier in the United States and boasts more than $4 billion in revenue.

27.     Knight-Swift has employed Plaintiffs and hundreds of other truck drivers to perform work in the State of New York.  The Drivers work away from home for days and weeks on end driving long-haul trucks, either alone, or as part of a two-driver team. They spend their time hauling freight for Knight-Swift's customers, conducting pre- and post-trip inspections, washing the trailers, fueling the tractors, taking the trucks through weigh scales, and conducting business with delivery agents, among other tasks.

28.     During their tours of duty transporting freight for Knight-Swift, Drivers live on the truck and attempt to rest in the truck's cramped "sleeper berth." The sleeper berth is a small space with a bunk bed in the truck's cab.

29.     The Drivers work day and night, transporting loads up to and often over a thousand miles and overnight, while hauling freight either as part of a two-driver team or as a solo driver. They spend weeks away from home at a time as part of their job.

30.     To maximize productivity and profits, Knight-Swift works to keep the trucks moving as much as possible. The more Knight-Swift maximizes its drivers' work hours, the more loads its trucks can transport in a shorter amount of time. Knight-Swift's Driver Leaders and Planners work to assign drivers as many miles as possible.  Knight-Swift uses software

programs purposed to minimize driver downtime, increase utilization of the trucks, maximize driving hours, and optimize Drivers' schedules to let them transport loads as efficiently as possible and to move more quickly from load to load.

31.     Plaintiff Ricardo Bell worked in a two-driver team that collectively hauled freight for 20 or more hours a day over the course of several days at the beginning of his employment with Knight-Swift. He managed only a few hours of sleep per night in the truck's cramped "sleeper berth," typically while the truck was in motion and being driven by his team member.

32.     As solo drivers, Plaintiffs Ricardo Bell, Tavares Hobbs, and Robert Shaw also worked around the clock hauling freight, performing various non-driving tasks (such as trip inspections, bringing the truck through weigh scales, working with delivery agents, fueling, and completing paperwork, among numerous other tasks), and remaining responsible for the security of the load while confined to the truck's sleeper berth, even when the truck was stopped.

33.     Between the 20 or more hours per day spent driving, performing non-driving tasks, and remaining confined to the truck's sleeper berth while subject to Knight-Swift's control and for Knight-Swift's benefit, Plaintiffs and other similarly situated Drivers have regularly worked more than 100 hours per week.

34.     The Drivers' time is logged in the truck's electronic system during each hour of every 24-hour period as one of either: "driving," "on-duty, not driving," "off-duty," or "sleeper berth."

35.     Knight-Swift's policy and practice is to compensate Drivers with (1) a per-mile piece rate that only covers time spent driving and (2) modest pay to cover certain periods of "on-duty, not driving" such as extended time waiting between loads ("Detention Pay").  Thus, Knight-Swift does not pay its Drivers for time logged as "off duty" or "sleeper berth," nor does it pay its piece-rate earning Drivers for the time they spend performing various non-driving

tasks, such as pre- and post-trip inspections, fueling, and weighing, among other tasks (even when such tasks are logged as "on-duty" on the DOT log).

36.     Knight-Swift defines compensable time according to the DOT regulations rather than New York Labor law.  However, the DOT regulations do not define compensable work time. New York Labor laws do define compensable work time. While Knight-Swift does not pay for any time put on the DOT log as "off duty" or "sleeper berth" for DOT safety purposes, New York Labor law makes much of this unpaid time compensable.  As a result, the Drivers are paid for only a fraction of the work they perform, despite working up to and over 100 hours per week.

37.     The unpaid work is made up, principally, of four components: (1) the time Drivers are required to remain in a physical area prescribed by Knight-Swift (the small "sleeper berth" of a truck or its close vicinity), while available to Knight-Swift and in service of its objectives, and unable to use the time productively for their own purposes; (2) the time Drivers spend performing non-driving tasks at the direction of Knight-Swift; (3) time spent during DOT-mandated 30-minute "breaks" when logged as "off duty" for DOT safety purposes, but while remaining confined to a physical area prescribed by Knight-Swift, and unable to use the time productively for their own purposes; and (4) time spent during short rest breaks while logged as "off duty" for DOT safety purposes, but that is nevertheless compensable under applicable law.

38.     Unpaid Sleeper Berth Time: The DOT's safety regulations require drivers who have already been driving for 11 hours to log 10 consecutive hours as "off duty" and/or "sleeper berth" before driving again. By having the Drivers attempt to rest in the truck's cramped "sleeper berth" for their mandatory 10-hour non-driving periods, Knight-Swift can have the truck move as continuously as possible, while still complying with the DOT's "hours of service" safety regulations.

39.     For example, many of Swift's Drivers work in a "team" configuration whereby one team member drives while the other attempts to rest in the small "sleeper berth." By having

the drivers switch off in the "team configuration," Swift can have the truck move continuously (save for restroom breaks, and other short stops), without stopping for 10 hours.  In turn, the "team" configuration maximizes efficiency for Knight-Swift by enabling it to meet the tight delivery deadlines it promises to its customers. These Drivers are forced to attempt to rest in the truck's cramped sleeper berth while the truck is moving. While in the "sleeper berth" of a moving truck, the Drivers cannot, of course, get out and do what they want; they are subject to Swift's control and in fact are waiting in a workplace prescribed by Knight-Swift, for Knight-Swift's benefit, during such time.

40.     Even when the Drivers work in a solo capacity, and therefore stop the truck for their mandatory 10-hour non-driving periods, they are confined to the immediate area of the truck, cannot use the time effectively for their own purposes, and are under Knight-Swift's control during such time.  These 10-hour non-driving periods are not leisure time; they are compensable under applicable law, except Knight-Swift does not pay the Drivers for it.

41.     The places where Drivers may stop for their mandatory 10-hour non-driving periods are tied to the necessities of the dispatch, including the delivery deadline, destination, and most efficient route thereto. The timing of the stops is irregular and dictated by the necessities of the dispatch. Knight-Swift penalizes Drivers for late deliveries and other "service failures" occasioned by departing from the most efficient route and timing of non-driving periods, up to and including termination.  Wherever they stop, the locations are away from home, and often lacking in even basic facilities such as restaurants, grocery stores, laundry, or showers.

42.     Additionally, Knight-Swift mandates that Drivers spend their mandatory 10-hour non-driving periods in the sleeper berth, rather than in a motel or other accommodation. The sleeper berth is a cramped bunk without a restroom, kitchen, sink, or other facility to take care of personal hygiene. Knight-Swift's Driver Handbook articulates Knight-Swift's policy that it will not pay for motels unless the truck breaks down, no other truck is available, and repairs take longer than 24 hours, and warns Drivers that "[d]eviation from assigned work

schedule" and "leaving the job or work area without Driver Leader's approval" are "prohibited."

43.     The Drivers are responsible for the security of the loads they are transporting. For instance, the Handbook warns that for many loads, Drivers may not "leave the truck unattended for any reason," including "being checked into a hotel," and must "remain in the truck." Swift also prohibits Drivers from consuming alcohol during these 10-hour periods and from having even sealed alcoholic beverage containers on stationary trucks.  And, Knight-Swift equips each truck with a "DriveCam," which monitors Drivers while they are in the truck.

44.     Also, during the 10-hour non driving periods, the Drivers are reachable by Knight-Swift, via the electronic communications device in the truck's cab (known as the "Qualcomm"), as well as by cell phone. Even when stopped, Drivers may be called upon by Knight-Swift to handle discrete work tasks, receive instructions from Knight-Swift management, or to report information to management. For example, Plaintiff Hobbs was interrupted during his 10-hour non-driving periods on a routine basis by requests from management to provide readings of the trailer's temperature. The time Mr. Hobbs spent performing these temperature checks was unpaid.

45.     The time the Drivers spend in the sleeper berth is primarily for Knight-Swift's benefit because it lets Drivers resume hauling freight for Knight-Swift at the earliest possible time. This in turn allows the trucks to move as efficiently as possible and maximizes the amount of freight Knight-Swift can deliver to its customers in the shortest amount of time.

46.     When these hours are credited, Plaintiffs and the Class Members worked well in excess of 40 hours in their individual workweeks, such that they were entitled to receive overtime compensation at a rate of one-and-one-half times their regular rates of pay for each overtime hour worked.

47.     Knight-Swift's policy of not paying for "sleeper berth" time was recently addressed in the analogous case of *Julian v. Swift Transp. Co. Inc.*, 360 F. Supp. 3d 932 (D.

Ariz. 2018).  In that case, the Court held that a certified collective of over-the-road truck drivers for Swift were continuously on-duty—even during their non-driving periods in the sleeper berth—and that the company's policy of deducting unlimited amounts of sleeper berth time from employee pay was unlawful under the Fair Labor Standards Act. *Id.* at 947, n.12, 952. The Court in *Julian* further awarded the collective of drivers damages on summary judgment for unpaid sleeper berth time. *Julian v. Swift Transp. Co. Inc.*, 2019 U.S. Dist. LEXIS 221423, at *12-*18, *21 (D. Ariz. Dec. 27, 2019).

48.     As a result of these policies and practices, Knight-Swift has failed to compensate Plaintiffs and its other Drivers for all their hours worked, including straight time wages, overtime compensation and "spread of hours" premium pay. During many workweeks, Knight-Swift has required and/or suffered and permitted Plaintiffs and its other Drivers to work so many hours without compensation that their effective hourly rates have dipped below the applicable state minimum wages that have been in place during the applicable time period.

49.     <u>Unpaid Non-Driving Work</u>: Knight-Swift also fails to fully compensate the Drivers for time spent performing non-driving work at its behest, including but not limited to performing pre- and post-trip truck inspections, other roadside inspections, washing the trailer, fueling, tending to truck breakdowns and maintenance issues, responding to requests from management, bringing trucks through weigh scales, coordinating with shippers and delivery agents, and remaining in a standby capacity for freight transports to be made available, among other tasks.

50.     Knight-Swift's policy is to compensate the Drivers with a per-mile piece rate, which covers only driving, without compensating the Drivers separately for performing non-driving tasks.

51.     As a result of these policies and practices, Knight-Swift has failed to compensate Plaintiffs and its other Drivers for all their hours worked, including straight time wages, overtime compensation and "spread of hours" premium pay. During many workweeks, Knight-Swift has required and/or suffered and permitted Plaintiffs and its other Drivers to work

so many hours without compensation that their effective hourly rates have dipped below the applicable state minimum wages that have been in place during the applicable time period.

52.     <u>Unpaid Time during DOT "Breaks":</u> Defendants do not compensate Drivers for time spent during DOT-mandated 30-minute "breaks" or for time spent during other short rest breaks when logged as "off duty" for DOT safety purposes, but while remaining confined to a physical area prescribed by Knight-Swift, and unable to use the time productively for their own purposes and have systematically failed to relieve Plaintiffs and the other Drivers for meal and/or rest periods.

53.     The only thing Knight-Swift does to "provide" meal periods is to have them comply with DOT safety regulations, which merely require a single 30-minute break after 8 hours of driving. Yet, even when the drivers are logged as "off duty" for DOT safety purposes, they are not provided with an off-duty break because they still are under Swift's control. Even if Drivers manage to take some kind of "break" from time to time, these "breaks" are not free from physical constraint. Rather, the drivers are required to stay with the truck and maintain constant vigilance to ensure the load is secure and guarded against potential break-ins.

54.     If the employee's movement is constrained, which it is while required to be near and responsible for the truck and/or in the small sleeper berth and/or in a moving truck, then by definition, this "break" is not "off duty" or and must be compensated under New York law. As a result, the Drivers' compensation is artificially reduced by an extra half-hour and more each day.

55.     <u>Non-Complaint Wage Statements</u>: Defendants do not provide the Class members, including Plaintiffs, with accurate wage notices and itemized wage statements as required by New York law. The wage statements they are provided are not accurate because they do not reflect the actual hours worked by Plaintiffs and Class members. The wage statements do not contain all the pay rates that should be remitted to Plaintiffs and Class members, nor off-the-clock work. Further, the wage statements are inaccurate because they do not include premium pay for "spread of hours" or overtime hours worked.

## V.   CLASS ACTION ALLEGATIONS

56.     *Proposed Class Definition*: Plaintiffs bring this case as a class action on behalf of themselves and all others similarly situated pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and/or (b)(3).  The Class that Plaintiffs seek to represent are composed of and defined as follows:

> "All current and former truck drivers who have been employed by Defendants and driven a truck for Defendants in New York at any time beginning six years before the filing of this Complaint until resolution of this action." (the "Class").

57.     This action has been brought and may properly be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

58.     *Numerosity*:  The potential members of the Class are so numerous that joinder of all the members of the Class is impracticable. Plaintiffs are informed and believe that the number of members substantially exceeds 100. This volume makes bringing the claims of each individual member of the class before this Court impracticable. Likewise, joining each individual member of the Class as a plaintiff in this action is impracticable. Furthermore, the identities of the Class members will be determined from Defendants' records, as will the compensation paid to each of them, and the hours credited to the each of them. As such, a class action is a reasonable and practical means of resolving these claims. To require individual actions would prejudice the Class and Defendants.

59.     *Commonality*:  There are questions of law and fact common to Plaintiffs and the Class that predominate over any questions affecting only individual members of the Class. These common questions of law and fact include, but are not limited to:

   a.   Whether Defendants fail to pay Class members minimum wages, straight time pay, and overtime compensation for all hours worked as required by N.Y. Lab. Law § 190 *et seq.*;

   b.   Whether Defendants fail to pay Class members an extra hour of pay where the spread of hours exceeds 10 hours; or there is a split shift; or both situations

occur as required New York State Department of Labor Regulation § 142-2.4;

c.  Whether Defendants fail to provide Class members with all requisite categories of information in the itemized wage statements provided to Class members in violation of N.Y. Lab. Law § 195;

d.  Whether Defendants fail to provide Class members with timely, accurate itemized wage statements reflecting all hours worked in violation of N.Y. Lab. Law § 195;

e.  Whether Defendants make unlawful deductions from Class Members' pay statements in violation of N.Y. Lab. Law § 193;

f.  Whether Defendants had a good faith basis and objectively reasonable grounds to believe that their underpayment of wages was in compliance with the law, per N.Y. Lab. Law § 198(1-a) and relevant case law; and

g.  The proper formula for calculating restitution, damages and penalties owed to Plaintiffs and the Class as alleged herein.

60.  *Typicality*:  Plaintiffs' claims are typical of the claims of the Class.  Defendants' common course of conduct in denying the Drivers compensation for time spent in the truck's sleeper berth and other time during which they are subject to Defendants' control, for failing to compensate for work tasks that are not compensated by Defendants' per-mile piece rate and for failing to provide Class members with all requisite categories of information in the itemized wage statements has caused Plaintiffs and the proposed Class to sustain the same or similar injuries and damages.  Plaintiffs' claims are thereby representative of and co-extensive with the claims of the proposed Class.

61.  *Adequacy of Representation*: Plaintiffs are adequate representatives of the Class because they are members of the Class and their interests do not conflict with the interests of the members of the Class they seek to represent.  Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.  Plaintiffs and their counsel will fairly and adequately protect the interests of

members of the Class.

62.     _Superiority of Class Action_:  The class action is superior to other available means for the fair and efficient adjudication of this dispute.  The injury suffered by each member of the Class, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendants economically feasible. Furthermore, individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court, and avoids the problem of inconsistent judgments.

63.     _Appropriateness of Injunctive or Declaratory Relief_:  Final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.  Defendants have acted or refused to act on grounds that apply generally to the Class, such that final injunctive relief or corresponding declaratory relief may be properly applied to the Class as a whole.

## FIRST CAUSE OF ACTION
**Failure to Pay Straight Time Wages for Off-the-Clock Work**
**Violation of N.Y. Lab. Law §§ 190 _et seq._ and 650 _et seq._**

64.     Plaintiffs reallege and incorporate by reference the above paragraphs as though fully set forth below.

65.     At all relevant times, Plaintiffs were employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

66.     Under New York law, "employees must be compensated for all hours worked. The NYLL provides for full recovery of all unpaid straight-time wages owed." _Gordon v. Kaleida Health_, 2012 U.S. Dist. LEXIS 5243, at *16-17 (W.D.N.Y. Jan. 8, 2012). Thus, each hour of work must be compensated at the employee's regular hourly rate. _Id_.

67.     Defendants have engaged in and continue to engage in a policy and/or practice of not compensating Plaintiffs and the putative Class members for all hours worked or subject

to their control, without a good faith basis and objectively reasonable grounds to believe such policy and/or practice is lawful.  *See* N.Y. Lab. Law § 198(1-a), *Rana v. Islam*, 887 F.3d 118, 122-23 (N.Y. Ct. App. 2018); *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 505 (S.D.N.Y. 2015); *Herman v. RSR Sec. Servs.*, 172 F.3d 132, 142-43 (2d Cir. 1999).

68.    Specifically, as explained above, Defendants have maintained and continue to maintain a policy of denying the Drivers any compensation for time in the truck's cramped "sleeper berth," even though the Class members—including Plaintiffs—have been under Defendants' control while waiting in the truck's sleeper berth for Knight-Swift's benefit. Defendants also have failed to fully compensate Plaintiffs and the other Class members for time spent performing tasks other than driving, including but not limited to performing pre- and post-trip truck inspections, fueling, bringing the truck through weigh scales, and coordinating with delivery agents (among other tasks), as well as for all for the extensive time they must spend in the truck's sleeper berth without pay. Defendants have further failed to compensate Plaintiffs and the Class members during DOT-mandated 30-minute "breaks" and other short breaks when logged as "off duty" for DOT safety purposes despite requiring the Class members to work through them and remain subject to Defendants' control.

69.    Defendants' unlawful compensation scheme has denied Plaintiffs and the Class the straight time wages to which they are entitled under the law in violation of New York Labor Law and New York State Department of Labor Regulations. As explained above, Plaintiffs and members of the Class frequently have worked time for which they are not compensated at their regular rates of pay.

70.    Accordingly, Defendants have artificially reduced Plaintiffs' and its other Drivers' pay rates by denying them compensation for time spent on non-driving tasks and time during which they are under Defendants' control while in the sleeper berth of a moving truck, primarily for Defendants' benefit.

71.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and Class members have suffered loss of income and other damages.  Plaintiffs and the Class

members are entitled to recover their unpaid straight time wages and reasonable attorneys' fees, and costs and liquidated damages, pursuant to New York Labor Law § 663(1) and § 198.

72.     Wherefore, Plaintiffs and the putative Class further request relief as hereinafter provided.

### SECOND CAUSE OF ACTION
**Failure to Pay Minimum Wages**
**Violation of N.Y. Lab. Law §§ 190 *et seq.* and 650 *et seq.***

73.     Plaintiffs reallege and incorporate by reference the above paragraphs as though fully set forth below.

74.     At all relevant times, Plaintiffs were employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

75.     New York Minimum Wage Order § 142-2.1 provides: The minimum wage shall be paid for the time an employee is permitted to work, or is required to be available for work at a place prescribed by the employer, and shall include time spent in traveling to the extent that such traveling is part of the duties of the employee.

76.     The Class members, including Plaintiffs, have regularly worked around the clock on multi-day trips away from home, hauling freight for Knight-Swift.  They have worked tirelessly throughout the day and night to comply with Knight-Swift's policies and meet its expectations, including to keep freight moving as constantly as possible and to meet the tight deadlines Knight-Swift has promised to its customers.

77.     The Drivers are not paid at all—much less at the statutory minimum wage—for the extensive time they spend confined to the truck's cramped "sleeper berth," even though the Class members—including Plaintiffs—have been under Defendants' control while they wait in the truck's sleeper berth entirely for Knight-Swift's benefit. This time is compensable as a matter of law. Nor are Plaintiffs and the Class members fully compensated for time spent performing other non-driving tasks or time during DOT-mandated 30-minute "breaks," and other short breaks for safety purposes, even though the Class members are required to work through them and remain subject to Defendants' control.

78.     Defendants' unlawful compensation scheme has denied Plaintiffs and the Class the minimum wages to which they are entitled under the law. As explained above, Plaintiffs and members of the Class frequently have worked time for which they are not compensated, even at the statutory minimum wage.

79.     By failing to pay Plaintiffs and the Class members for all hours worked, including time spent in the sleeper berth and other off-the-clock work, Defendants fail to pay Plaintiffs and the other Class members at the applicable minimum wages.

80.     Defendants knowingly pay Plaintiffs and Class members less than the New York Minimum Wage Act and supporting regulations of the New York State Department of Labor require.

81.     Defendants' failure to pay Plaintiffs and Minimum Wage Class members the minimum wage is willful within the meaning of N.Y. Lab. Law. § 663.

82.     As a result of Defendants' willful and unlawful conduct, Plaintiffs and Class members are entitled to an award of damages in amounts to be determined at trial, as well as reasonable attorneys' fees, and costs and liquidated damages, pursuant to New York Labor Law § 663(1) and § 198.

83.     Wherefore, Plaintiffs and the putative Class request relief as hereinafter provided.

### THIRD CAUSE OF ACTION
**Failure to Pay Overtime Compensation for "Off-the-Clock" Work**
**Violation of N.Y. Lab. Law §§ 190 *et seq.* and 650 *et seq.***

84.     Plaintiffs hereby reallege and incorporate by reference the paragraphs above as though fully set forth herein.

85.     At all relevant times, Plaintiffs were employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

86.     This cause of action arises from Defendants' violation of N.Y. Lab. Law §§ 190 *et seq.*, 650 *et seq.,* and 12 N.Y.C.R.R. § 142-2.2, (and other supporting regulations), for their failure to pay Plaintiffs and Class members all of their overtime pay for the time worked in

excess of 40 hours in individual workweeks.  For all the time worked in excess of 40 hours in individual workweeks, Plaintiffs and Class members were entitled to receive one-and-one-half times their regular rates of pay.

87.     New York Labor Law's overtime-pay provision mandates that all employees be paid at an overtime rate of one and one-half times the regular rate, even if the employees fall within the motor carrier exemption of the Fair Labor Standards Act. *Hayward v. IBI Armored Servs*., 954 F.3d 573, 576 (2d Cir. 2020).

88.     Defendants have engaged in and continue to engage in a policy and practice of not compensating Plaintiffs and putative Class members for all hours worked, including overtime compensation, without a good faith basis and objectively reasonable grounds to believe the policy and practice complies with the law.  *See* N.Y. Lab. Law § 198(1-a), *Rana v. Islam*, 887 F.3d at 122-23; *Inclan*, 95 F. Supp. 3d at 505; *Herman*, 172 F.3d at 142-43.

89.     As explained above, Defendants have maintained and continue to maintain a policy of denying the Drivers any compensation for time in the truck's cramped "sleeper berth," even though the Class members—including Plaintiffs—have been under Defendants' control while waiting in the truck's sleeper berth for Knight-Swift's benefit. Defendants also have failed to fully compensate Plaintiffs and the other Class members for time spent performing tasks other than driving, including but not limited to performing pre- and post-trip truck inspections, fueling, bringing the truck through weigh scales, and coordinating with delivery agents (among other tasks), as well as for all for the extensive time they must spend in the truck's sleeper berth without pay. Defendants have further failed to compensate Plaintiffs and the Class members during DOT-mandated 30-minute and other short "breaks" when logged as "off duty" for DOT safety purposes despite requiring the Class members to work through them and remain subject to Defendants' control.

90.     When these hours are credited, Plaintiffs and the Class Members worked well in excess of 40 hours in their individual workweeks, such that they were entitled to receive overtime compensation at a rate of one-and-one-half times their regular rates of pay for each

overtime hour worked.

91.     By failing to compensate Plaintiffs and Class members for work performed while off-the-clock consistent with the overtime provisions, Defendants have violated and continue to violate N.Y. Lab. Law §§ 190 *et seq.*, 650 *et seq.,* and 12 N.Y.C.R.R. § 142-2.2.

92.     As a result of Defendants' willful and unlawful conduct, Plaintiffs and Class members are entitled to an award of damages in amounts to be determined at trial, as well as reasonable attorneys' fees, and costs and liquidated damages, pursuant to New York Labor Law§ 663(1) and § 198.

93.     Wherefore, Plaintiffs and the putative Class request relief as hereinafter provided.

**FOURTH CAUSE OF ACTION**
**Failure to Provide Spread of Hours Pay**
**Violation of N.Y. Labor Regulation § 142-2.4**

94.     Plaintiffs hereby reallege and incorporate by reference the allegations set forth above as if fully set forth herein.

95.     New York State Department of Labor Regulation § 142-2.4 requires "spread of hours" pay. Specifically, New York State Department of Labor Regulation § 142-2.4 requires that an employee receive an extra hour of pay where the spread of hours exceeds 10 hours; or there is a split shift; or both situations occur.

96.     Defendants violate N.Y. Labor Law by failing to comply with their obligation to pay Plaintiffs and Class members the additional wages required by N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4 for working more than ten hours or a split shift in a day.

97.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and Class members have suffered loss of income and other damages.  Plaintiffs and the Class members are entitled to recover their unpaid spread of hours wages and reasonable attorneys' fees, and costs and liquidated damages, pursuant to New York Labor Law § 663(1) and § 198.

98.     Wherefore, Plaintiffs and the putative Class further request relief as hereinafter provided.

## FIFTH CAUSE OF ACTION
### Failure to Provide Accurate Itemized Wage Statements
### Violation of N.Y. Lab. Law § 195

99.     Plaintiffs hereby reallege and incorporate by reference the paragraphs above as though fully set forth herein.

100.    Defendants have not provided Plaintiffs and Class members with accurate itemized wage statements as required by N.Y. Lab. Law § 195(3).

101.    With each payment of wages, Defendants are required to provide Plaintiffs and all Class members with an accurate statement listing each of the following categories of information:

    a.  The dates of work covered by that payment of wages;

    b.  Name of employee;

    c.  Name of employer;

    d.  Address and phone number of employer;

    e.  Rate or rates of pay and basis thereof, whether the employee is paid by the hour, shift, day, week, salary, piece, commission, or other;

    f.  Gross wages;

    g.  Deductions;

    h.  Allowances, if any, claimed as part of the minimum wage;

    i.  Net wages;

    j.  The regular hourly rate or rates of pay;

    k.  The overtime rate or rates of pay;

    l.  The number of regular hours worked; and

    m.  The number of overtime hours worked.

102.    The wage statements furnished by Defendants to Plaintiffs and the Class members lack all the required information and do not provide the accurate number of regular

Class Action Complaint
*Hobbs, et al v. Knight-Swift Transportation Holdings, Inc., et al.*

and overtime hours worked, wages owed, and rates of pay.  This constitutes a per se violation of the law.

103.     As a result, pursuant to N.Y. Lab. Law § 198(1-b), Defendants are liable to Plaintiffs and each Class member in the amount of $250 per wage statement violation per Class member, up to a maximum of $5,000 per Class member, together with attorneys' fees and costs.

104.     Wherefore, Plaintiffs and the putative Class request relief as hereinafter provided.

## JURY DEMAND

105.     Plaintiffs hereby request a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

a.  For an order certifying that the Causes of Action in this Complaint may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23;

b.  Damages and restitution according to proof at trial for all unpaid wages and other injuries, as provided by New York Labor Law and all other applicable laws, rules, and regulations of New York;

c.  For a declaratory judgment that Defendants violated New York Labor Law and public policy as alleged herein;

d.  For preliminary, permanent, and mandatory injunctive relief prohibiting Defendants, their officers, agents, and all those acting in concert with them from committing, now and in the future, those violations of law herein alleged;

e.  For an order awarding Plaintiffs and the Class members compensatory damages, including lost wages, earnings, liquidated damages, treble damages, and other employee benefits, restitution, recovery of all money/property, actual damages, and all other sums of money owed to Plaintiffs and Class

members, together with interest on these amounts according to proof;

f.   For an order awarding Plaintiffs and Class members civil penalties pursuant to the New York Labor Law, and the laws of the State of New York, with interest thereon;

g.   For an order awarding reasonable attorneys' fees as provided by the New York Labor Law, the laws of the State of New York, and/or other applicable law;

h.   For all costs of suit;

i.   For interest on any penalties awarded, as provided by applicable law; and

j.   For such other and further relief as this Court deems just and proper.


Respectfully submitted,


DATED:   February 17, 2021                **SCHNEIDER WALLACE**
                                          **COTTRELL KONECKY**


*/s/ John J. Nestico*
John J. Nestico (N.Y. SBN 1724020)
6000 Fairview Road, Suite 1200
Charlotte, North Carolina 28210
Tel: (510) 740-2946; Fax: (415) 421-7105
jnestico@schneiderwallace.com

Joshua Konecky, to appear *pro hac vice*
Nathan Piller, to appear *pro hac vice*
Sarah McCracken, to appear *pro hac vice*
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Tel: (415) 421-7100; Fax: (415) 421-7105
jkonecky@schneiderwallace.com
npiller@schneiderwallace.com
smccracken@schneiderwallace.com

Class Action Complaint
*Hobbs, et al v. Knight-Swift Transportation Holdings, Inc., et al.*