**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

TAVARES HOBBS, RICARDO BELL, and
ROBERT SHAW, on behalf of themselves and
all others similarly situated,

       Plaintiffs,

       v.

KNIGHT-SWIFT TRANSPORTATION
HOLDINGS, INC., and SWIFT
TRANSPORTATION CO. OF ARIZONA,
LLC,

       Defendant.

Civil Action No. 1:21-cv-1421-AT

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS AND MOTION TO STRIKE

Dated:      New York, New York
             June 17, 2021

Of Counsel:   Brian D. Murphy

**SHEPPARD MULLIN RICHTER & HAMPTON LLP**
30 Rockefeller Plaza
New York, New York 10112-0015
Tel.: (212) 653-8700

*Attorneys for Defendants Knight-Swift Transportation Holdings, Inc.*
*and Swift Transportation Co. of Arizona, LLC*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................1

ALLEGATIONS & PROCEDURAL HISTORY ..........................................................3

    I.    Allegations in the Second Amended Complaint ............................................3

    II.    Compliance with Rule III(B) of the Individual Rules of Practice of this Court ..............................................................................................................5

ARGUMENT ...............................................................................................................6

    I.    The Court Should Strike Plaintiffs' Overbroad Class Definitions & Related Class Allegations ..........................................................................................6

        A.    Applicable Legal Standards ................................................................6

        B.    The Court Should Strike Plaintiffs' Class Definitions Because They Include Putative Members Who Have Not Suffered Any Injury Or Harm ..................................................................................................8

        C.    The Court Should Strike Plaintiffs' Class A Definition Because It Is Overbroad As It Contains Truck Drivers To Whom The NYLL Does Not Apply..........................................................................................10

        D.    The Court Should Strike Plaintiffs' Class B Definition Because It Is Not Ascertainable....................................................................................11

    II.    The Court Should Dismiss Plaintiffs' Overtime And Spread Of Hours Claims .....................................................................................................12

        A.    Applicable Legal Standards ..............................................................12

        B.    Plaintiffs Fail To Meet The Pleading Standard Necessary For Their NYLL Overtime Claim........................................................................14

        C.    Plaintiffs Fail To Meet The Pleading Standard Necessary For Their NYLL Spread-of-Hours Claim .............................................................16

    III.    The Court Should Dismiss Plaintiffs' Request For Injunctive Relief....................17

        A.    Applicable Legal Standards ..............................................................17

        B.    As Former Employees, Plaintiffs Do Not Have Standing To Seek Injunctive Relief..................................................................................18

CONCLUSION...........................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Amchem Prod., Inc. v. Windsor*
    521 U.S. 591 (1997) ................................................................................................7

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ...........................................................................................12, 13

*Atakhanova v. Home Family Care, Inc.*
    2020 WL 4207437 (E.D.N.Y. July 22, 2020) ....................................................11, 12

*Borgese v. Baby Brezza Enter. LLC*
    2021 WL 634722 (S.D.N.Y. Feb. 18, 2021) .........................................................7

*Chen-Oster v. Goldman*
    251 F. Supp. 3d 579 (S.D.N.Y. 2017) ..................................................................18

*Chen-Oster v. Goldman, Sachs & Co.*
    877 F. Supp. 2d 113 (S.D.N.Y. 2012) ..............................................................7, 18

*Comcast Corp. v. Behrend*
    569 U.S. 27 (2013) ................................................................................................7

*Davito v. AmTrust Bank*
    743 F. Supp. 2d 114 (E.D.N.Y. 2010) ..................................................................7

*DeJesus v. HF Mgmt. Servs., LLC*
    726 F.3d 85 (2d Cir. 2013) ..........................................................................2, 3, 13, 14

*Denney v. Deutsche Bank AG*
    443 F.3d 253 (2d Cir. 2006) ................................................................................8

*Deshawn E. ex rel. Charlotte E. v. Safir*
    156 F.3d 340 (2d Cir. 1998) ................................................................................17

*Drozd v. U.S.A. Concepts of New York Corp.*
    2015 WL 13733713 (E.D.N.Y. Apr. 23, 2015) ....................................................11

*Fedotov v. Peter T. Roach & Assocs., P.C.*
    354 F. Supp. 2d 471 (S.D.N.Y. 2005) ..................................................................7

*In re Fosamax Prods. Liab. Litig.*
    248 F.R.D 360 (S.D.N.Y. 2012) ..........................................................................8

*Fridman v. GCS Computers LLC*
    2018 WL 1581990 (S.D.N.Y. Mar. 27, 2018) ..................................................13, 16

*Gen Tel. Co. of Southwest. v. Falcon*
    457 U.S. 147 (1982) ........................................................................................................7

*Goshen v. Mut. Life Ins. Co. of N.Y.*
    286 A.D.2d 229, 730 N.Y.S.2d 46 (1st Dep't 2001) ...............................................10

*Heredia v. Americare, Inc.*
    2020 WL 3961618 (S.D.N.Y. July 13, 2020) ........................................................15

*Hinkley v. Seagate Hospitality Group, LLC*
    2016 WL 6524314 (W.D.N.Y. Nov. 3, 2016) ........................................................16

*Humphrey v. Rav Investigative & Sec. Servs., Ltd.*
    169 F. Supp. 3d 489 (S.D.N.Y. 2016) ...................................................................13

*Jones, et al. v. BRG Sports, Inc.*
    2019 WL 3554374 (N.D. Ill. Aug. 1. 2019) ...........................................................7

*Kassman v. KPMG LLP*
    925 F. Supp. 2d 453 (S.D.N.Y.) ...........................................................7, 10, 17, 18

*Kinkead v. Humana at Home, Inc.*
    330 F.R.D. 338 (D. Conn. 2019) .............................................................................9

*Kuck v. Planet Home Lending, LLC*
    354 F. Supp 3d 162 (E.D.N.Y. 2018) ...................................................................14

*Limauro v. ConEd Co. of New York, Inc.*
    2021 WL 1226872 (S.D.N.Y. Mar. 31, 2021) .............................................13, 14, 15

*Lundy v. Catholic Health Sys of Long Island Inc.*
    711 F.3d 106 (2d Cir. 2013) ...........................................................................2, 13, 14

*Marciano v. SJN Adjustment Group, Inc.*
    2019 WL 4888569 (E.D.N.Y. Sept. 30, 2019) ......................................................15

*Mayfield v. Asta Funding, Inc.*
    95 F. Supp. 3d 685 (S.D.N.Y. 2015) ....................................................................6, 7

*Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*
    723 F.3d 192 (2d Cir. 2013) ............................................................................2, 13, 14

*O'Neill v. Mermaid Touring, Inc.*
    968 F. Supp. 2d 572 (S.D.N.Y. 2013) ...............................................................10, 11

*In re Petrobas Sec.*
    862 F.3d 250 (2d Cir. 2017) ..................................................................................11

*Pierre v. GTS Holdings, Inc.*
   2015 U.S. Dist. LEXIS 160345 (S.D.N.Y. Nov 30, 2015) .....................................................10

*Sanders v. Apple, Inc.*
   672 F. Supp 2d 978 (N.D. Cal. 2009) .........................................................................................9

*Serrano v. I. Hardware Distribs., Inc.*
   2015 WL 4528170 (S.D.N.Y. July 27, 2015) .........................................................................15

*Smith v. Mastercraft Decorators, Inc.*
   2011 WL 5191755 (W.D.N.Y. Oct. 25, 2011) ........................................................................15

*Vasconcellos v. City of New York*
   2014 WL 4961441 (S.D.N.Y. 2014) ........................................................................................17

*Wal-Mart Stores, Inc. v. Dukes*
   564 U.S. 338 (2011) .............................................................................................................7, 18

Statutes

New York Lab. Law ........................................................................................................ *passim*

Other Authorities

Fed. R. Civ. P. (b)(1) ..............................................................................................................17, 19

Fed. R. Civ. P. 12(b)(6) .............................................................................................................5, 18

Fed. R. Civ. P. 23(c)(1)(A) ...........................................................................................................7

Fed. R. Civ. P. 23(d)(1)(D) .....................................................................................2, 6, 7, 10, 18

Defendants Knight-Swift Transportation Holdings, Inc. and Swift Transportation Co. of Arizona, LLC (together, "Defendants" or "Knight-Swift"), by and through their undersigned counsel, respectfully submit this Memorandum of Law in Support of their Partial Motion to Dismiss Plaintiffs' Second Amended Complaint and Motion to Strike Class Definitions and Allegations pursuant to Rules 12(b)(1), 12(b)(6) and 23(d)(1)(D) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiffs are former Knight-Swift truck drivers who seek to pursue a variety of wage and hour claims on a representative basis against Knight-Swift under the New York Labor Law ("NYLL"). Even at this early juncture of the litigation, however, it is apparent from the face of the Second Amended Complaint ("SAC") that Plaintiffs' approach is procedurally and substantively flawed, and that certain aspects of the SAC must be stricken or dismissed.

First, Plaintiffs purport to represent two classes of current and former truck drivers, neither of which could ever be certified as defined with or without discovery. Plaintiffs offer the following definitions:

> Class A: All current and former truck drivers who have been employed by Defendants while being based out of a work location in New York state at any time beginning six years before the filing of this Complaint until resolution of this action;

> Class B: All current and former truck drivers who have been employed by Defendants while being based out of a work location outside of New York state, but who had one or more tours of duty and/or routes that necessitated being in New York state for more than 40 hours during at least one workweek, any time beginning six years before the filing of this complaint until resolution of this action.

These definitions are purposefully broad and designed, in tandem, to capture as many drivers as can be conceived. However, these aggressively expansive definitions cannot be reconciled with the nature of the relief sought by Plaintiffs, nor can they pass muster under the Rule 23 framework.

-1-

Both class definitions, for example, are so overbroad as to include persons who have not – and could not - suffer the harm alleged by Plaintiffs.  Plaintiffs contend they were not paid proper wages owing to having to work 24 hours a day, an allegation animated by their contention that they were required to use a "sleeper berth," which in their view, constituted hours worked. Plaintiffs do not limit either class definition to drivers who worked 24 hours per day, who drove "long haul" shifts requiring extensive or overnight travel, or who utilized sleeper berths.  Instead, both Class A and Class B purport to cover "all" truck drivers irrespective of their employment circumstances that would cast them outside the population who could have been harmed.  Courts will not hesitate to strike class definitions and related allegations at the pleading stage when the putative class necessarily includes those who did not suffer the same injury as Plaintiffs.

Each class definition also suffers from an independent flaw requiring that each be stricken. Membership in Class A is premised upon a driver having been "based out of a work location in New York," without reference to the amount of time a driver spends in New York.  The NYLL, however, does not apply extraterritorially and applies only where the majority of a workers' time is spent in-state such that many Class A members will not have standing to advance a NYLL claim. Membership in Class B presumes a driver is not based in New York, and is premised on the amount of time a driver spends in New York.  However, whether a driver crossed into New York for a sufficient period of time at some point during his or her employment cannot be established by objective criteria such that membership in Class B is not ascertainable.  Thus, the proposed class definitions and related allegations should be struck pursuant to Federal Rule of Civil Procedure 23(d)(1)(D).

Second, the Second Circuit's triumvirate decisions in *Lundy v. Catholic Health Sys of Long Island Inc., Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.,* and *DeJesus v. HF Mgmt. Servs.,*

*LLC,* 726 F.3d 85, 88-90 (2d Cir. 2013) compel dismissal of Plaintiffs' overtime and spread-of-hours claims for failure to meet basic pleading standards.  Plaintiffs originally pled that they "often" worked 20 hours per day, an impermissible generalization under this precedent.  In response to Knight-Swift's anticipated challenge, Plaintiffs revised their allegations to state that they "typically" worked 24 hours a day – and at that, every day of their employment.  Implausible as that may seem as a practical matter, it is equally implausible as a legal matter as this effort still relies on worn generalities and falls short of identifying a single workweek in which Plaintiffs worked more than 40 hours without proper compensation.  Plaintiffs' spread-of-hours claim is similarly infirm, and both are therefore subject to dismissal.

Each of these matters were raised with Plaintiffs in advance of this Motion, and yet Plaintiffs failed to remedy them.  Accordingly, the relief requested herein should be granted with prejudice and without providing Plaintiffs yet another opportunity to amend their pleadings.[1]

## ALLEGATIONS & PROCEDURAL HISTORY

### I.   ALLEGATIONS IN THE SECOND AMENDED COMPLAINT

Knight-Swift is a trucking company.  (SAC ¶ 3).  Plaintiffs allege they were employed by Knight-Swift as non-exempt truck drivers who worked "away from home for days and often weeks" hauling freight in long-haul semis.  (*Id.*).  Plaintiff Hobbs identifies as a resident of Pennsylvania, who contends he regularly drove through New York from July 2019 through March 2020.  (SAC ¶ 15, 61).  Plaintiff Bell identifies as a New York resident, who contends that he was based in Knight-Swift's Syracuse and Amsterdam, New York Terminals, driving throughout New York from June 2016 through January 2017.  (SAC ¶ 16, 73).  Plaintiff Shaw identifies as a New

---

[1]      By this Motion, Defendants also ask the Court to strike Plaintiffs' claims for injunctive and declaratory relief because they are former employees.  *See* Point III, *infra.*  Defendants did not raise this challenge during the pre-motion letter exchange conducted in accordance with the Court's Individual Rules because Defendants did not intend to advance the argument at that time.

York resident, who contends he was based in Knight-Swift's Syracuse, New York Terminal, driving throughout New York from March 2017 through October 2017.  (SAC ¶ 17, 67).

Plaintiffs contend they each worked "around the clock hauling freight" and performing "various non-driving tasks (such as trip inspections, washing the trailer, taking the truck through weigh scales, working with delivery agents, fueling, and completing paperwork, among numerous other tasks)."  (SAC ¶ 7).  Plaintiffs allege that when they were not driving or performing the aforementioned tasks, they were required to "remain" with their truck to protect the freight, such as when they utilized their truck's "sleeper berth" for rest.  (SAC ¶ 31).  Plaintiffs contend that Knight-Swift's pay practices resulted in them not being compensated for: (i) the time they were allegedly required to remain in close vicinity to their truck; (ii) the time they allegedly spent performing non-driving tasks; (iii) the time they allegedly spent during Department of Transportation-mandated 30-minute breaks; and (iv) the time they were allegedly "logged as off-duty for DOT safety purposes."  (SAC ¶ 37).

Both prior to and after filing the Second Amended Complaint, Plaintiffs estimated that they worked "20 or more hours per day" and "more than 100 hours per week."  (SAC ¶ 8, 47).  However, after filing the Second Amended Complaint and without revising these prior allegations, Plaintiffs Hobbs and Shaw additionally alleged that they worked six days a week, 24 hours a day, and 144 hours per week, (SAC ¶ 61, 67), while Plaintiff Bell alleged that he worked five days a week, 24 hours a day, and 120 hours per week, (SAC ¶ 73).  Each Plaintiff failed to identify any specific workweek in which they worked these purported hours, instead generally contending that these estimates applied to every week of their employment.

Plaintiffs allege claims under the NYLL for Defendants' alleged failure to: (i) pay for all hours worked; (ii) pay minimum wages; (iii) pay overtime; (iv) pay "spread of hours" premiums;

and (v) provide accurate wage statements.  (SAC ¶ 12).  Plaintiffs seek to proceed with each of these claims on a representative basis pursuant to Federal Rule of Civil Procedure 23 and define two putative classes as follows:

> Class A: All current and former truck drivers who have been employed by Defendants while being based out of a work location in New York state at any time beginning six years before the filing of this Complaint until resolution of this action;
>
> and
>
> Class B: All current and former truck drivers who have been employed by Defendants while being based out of a work location outside of New York state, but who had one or more tours of duty and/or routes that necessitated being in New York state for more than 40 hours during at least one workweek, any time beginning six years before the filing of this complaint until resolution of this action.

(SAC ¶ 78).

## II.   COMPLIANCE WITH RULE III(B) OF THE INDIVIDUAL RULES OF PRACTICE OF THIS COURT

Plaintiffs commenced this action on February 17, 2021, but owing to a series of administrative issues, did not file the a First Amended Complaint until March 17, 2021.  (Docket Nos. 1, 13).  On April 16, 2021, Defendants filed a letter in accordance with Rule III(B)(iii) of this Court's Individual Rules of Practice.  (Docket No. 23).  Therein, Defendants announced their intention to file a motion under Rules 12(b)(6) and 23(d)(1)(D) challenging the proposed class definition as well as the sufficiency of Plaintiffs' pleadings concerning minimum wage, overtime, and spread of hours causes of action.  (*Id*.).

Plaintiffs responded by letter dated April 23, 2021.  (Docket No. 24).  Plaintiffs set forth an intention to oppose Defendants' challenge to their class definition, but acknowledged a willingness to amend the remainder of the First Amended Complaint to address Defendants' challenge to the sufficiency of their pleadings provided Defendants supplied driver logs and compensation data.  (*Id.*).

On April 29, 2021, the Court granted Defendants' request for leave to file their anticipated motion.  (Docket No. 25).  The Court gave Plaintiffs the option to file the SAC on or before May 13, 2021, which they did on May 19, 2021 with permission from the Court owing to an administrative filing error.  (Docket No. 36).

Plaintiffs attempted to respond to the challenge to their class definition by splitting it in two.  (SAC ¶ 78).  Plaintiffs sought to resolve Defendants' concerns with the sufficiency of their pleadings regarding their minimum wage, overtime, and spread of hours claims by offering estimates to which they applied the assumption that each Plaintiff worked 24 hours per day for five or six days per week.  (SAC ¶ 60-76).

Defendants have evaluated the SAC against the legal principles set forth in their April 16 letter and find the SAC remains deficient in a number of material respects.  Accordingly, by this Motion, Defendants seek an order: (i) striking the class definitions and associated allegations; (ii) dismissing Plaintiffs' overtime and spread of hours claims, and (iii) dismissing Plaintiffs' request for injunctive relief, all with prejudice, as contemplated by Rule III(B)(iv) of the Court's Individual Rules of Practice.

## ARGUMENT

### I.     THE COURT SHOULD STRIKE PLAINTIFFS' OVERBROAD CLASS DEFINITIONS & RELATED CLASS ALLEGATIONS

#### A.     Applicable Legal Standards

Federal Rule of Civil Procedure 23(d)(1)(D) empowers District Courts to determine whether a case may be maintained as a class action, and to "require that the pleadings be amended to eliminate allegations about representations of absent persons and that the action proceed accordingly" at an early stage.  FED. R. CIV. P. 23(d)(1)(D); *Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 696 (S.D.N.Y. 2015).  A decision on class certification should be issued "[a]t an

early practicable time." Fed. R. Civ. P. 23(c)(1)(A).  Courts may resolve claims at the pleading stage if it is "plain enough from the pleadings" that the proposed class cannot be certified.  *See, e.g., Davito v. AmTrust Bank*, 743 F. Supp. 2d 114, 115-117 (E.D.N.Y. 2010); *Borgese v. Baby Brezza Enter.* LLC, 2021 WL 634722, at *1 (S.D.N.Y. Feb. 18, 2021) (granting Rule 23(d)(1)(D) motion at the pleading stage); *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) (noting that it is appropriate to strike class allegations where the motion is premised on "issues separate and apart from issues that will be decided on a class certification motion"); *Fedotov v. Peter T. Roach & Assocs., P.C.,* 354 F. Supp. 2d 471, 478 (S.D.N.Y. 2005) (citing 5-23 *Moore's Fed. Practice* 3d § 23.82); *see also Gen Tel. Co. of Southwest. v. Falcon,* 457 U.S. 147, 160 (1982).

District Courts grant motions to strike class definitions and/or allegations where the pleadings demonstrate that the proposed class is not ascertainable, where it is overbroad, or where it is apparent individual issues will predominate issues common to the class.  *See., e.g., Mayfield,* 95 F. Supp. 3d at 696; *Borgese*, 2021 WL 634722, at *1; *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 462 (S.D.N.Y.) (recognizing that "a party may move to strike class claims even before discovery."); *Jones, et al. v. BRG Sports, Inc.,* 2019 WL 3554374 (N.D. Ill. Aug. 1. 2019).

The Supreme Court has set a high burden for litigants seeking to invoke the class-action device and the rigorous analysis engendered by Rule 23.  *See Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (noting that "usually…litigation is conducted by and on behalf of the individual named parties only.").  Plaintiffs bear the burden of establishing that all requirements of Rule 23 are met.  *See, e.g., Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997).  It is apparent on the face of the SAC that Plaintiffs cannot meet their burden here.

**B.      The Court Should Strike Plaintiffs' Class Definitions Because They Include Putative Members Who Have Not Suffered Any Injury Or Harm**

The SAC offers two putative class definitions, one concerning truck drivers based in New York and one concerning truck drivers who, while not based in New York, nevertheless are alleged to have worked in New York for 40 or more hours in one or more workweeks.  (SAC ¶ 78).  Both proposed definitions, however, share the same fatal flaw: they include putative members who did not suffer the same injury as Plaintiffs.  Courts will not certify a class where the class definition necessarily includes those who have not suffered any injury or harm.  *See In re Fosamax Prods. Liab. Litig.,* 248 F.R.D 360, 367 (S.D.N.Y. 2012) ("Until a class of persons alleged to be entitled to relief is defined, the court cannot conduct the numerosity, commonality, typicality, and adequacy analyses that must precede certification"); *see also Denney v. Deutsche Bank AG*, 443 F.3d 253. 263-64 (2d Cir. 2006) ("[N]o class may be certified that contains members lacking Article III standing.").

Here, the harm alleged is a failure to be paid the minimum wage, overtime, for all hours worked, and spread of hours premiums.  (SAC ¶ 12).  Plaintiffs' allegations frame the conduct that gives rise to these purported harms as being required to work 24 hours per day each and every day of their employment.  (SAC ¶ 61, 67, 73).  This allegation is, in large part, premised on the concept that truck drivers who utilize the "sleeper berth" of their trucks for rest are unable to "effectively use the time for their own purposes," transforming the time, in their view, into compensable hours worked.  (SAC ¶ 8, 37).

Plaintiffs, however, do not limit either their Class A or Class B definitions to truck drivers who worked 24 hours per day, who drove "long haul" shifts requiring extensive or overnight travel, or who utilized the sleeper berths that animate the crux of their claims.  Instead, both Class A and Class B purport to cover "all" truck drivers irrespective of their factual employment circumstances

that would cast them outside the population who could have been harmed.  Moreover, Plaintiffs do not even define Class A to include only those truck drivers who worked "more than 40 hours during at least one workweek," highlighting its over-inclusiveness for purposes of an overtime claim.  *See, e.g., Kinkead v. Humana at Home, Inc.*, 330 F.R.D. 338, 346 (D. Conn. 2019) (limiting class of employees seeking overtime wages under the NYLL to "persons who worked more than 40 hours per week" to ensure that all class members had standing).  The inclusion of drivers who could not have suffered the same injury is grounds to strike the definition and related class allegations.  *See, e.g., Sanders v. Apple, Inc.,* 672 F. Supp 2d 978 (N.D. Cal. 2009).

In *Sanders*, plaintiffs brought a class action against a manufacturer, alleging that the class members had purchased computer monitors based upon advertisements that led them to believe the monitors were of a higher caliber than they were.  *Id.* at 982.  Plaintiffs asserted fraudulent representation claims, arguing that the putative class relied upon the manufacturer's sales materials.  *Id.*  The proposed class definition included "all person who purchased" monitors.  *Id.,* at 981.  The Court noted that the definition necessarily included those who suffered no harm or injury as defined by the plaintiffs, in that it included those who did not rely upon the advertisements in purchasing the laptop.  *Id.*  The Court further noted that, because the definition included all purchasers of the laptop and not just those who suffered the articulated harm, an individualized inquiry would be necessary to determine which purchasers relied on the advertisements.  *Id.*  Accordingly, the Court struck the class definition.

The same fault courses through the proposed Class A and Class B definitions.  If Plaintiffs' allegations are accepted as true, all truck drivers were not injured.  Instead, only those who drove a sufficient distance, worked overnight, or utilized a sleeper berth could have worked sufficient hours to trigger overtime obligations, potential minimum wage infractions (according to Plaintiffs'

method of calculation), or potential spread of hours infractions.  Whether a given truck driver satisfies one or all of these criteria can be determined only by an individualized inquiry.  As such, the Class A and Class B definitions, together with the related class allegations, should be struck pursuant to Rule 23(d)(1)(D).

### C.    The Court Should Strike Plaintiffs' Class A Definition Because It Is Overbroad As It Contains Truck Drivers To Whom The NYLL Does Not Apply

The Court should strike Plaintiffs' Class A definition and related allegations on the independent ground that it necessarily includes drivers as to whom the NYLL does not apply.  The crux of membership in Plaintiffs' definition of Class A is "being based out of a work location in New York State."  (SAC ¶ 78).  This is insufficient to trigger the NYLL.  *See Kassman*, 925 F. Supp. 2d at 469-70 (striking state-law class claims advanced on behalf of out-of-state plaintiffs). Indeed, under New York law, it is a "settled rule of statutory interpretation, that unless expressly stated otherwise, 'no legislation is presumed to be intended to operate outside the territorial jurisdiction of the state…enacting it.'"  *Goshen v. Mut. Life Ins. Co. of N.Y.*, 286 A.D.2d 229, 730 N.Y.S.2d 46, 47 (1st Dep't 2001); *O'Neill v. Mermaid Touring, Inc.*, 968 F. Supp. 2d 572, 578-79 (S.D.N.Y. 2013) (granting defendant summary judgment "to the extent that Plaintiff seeks recovery under the [NYLL] for overtime work performed outside of New York.").

In the context of drivers, where a driver is "based" is not determinative of whether the NYLL will apply to that driver.  *See Pierre v. GTS Holdings, Inc.,* 2015 U.S. Dist. LEXIS 160345 (S.D.N.Y. Nov 30, 2015).  In *Pierre*, for example, a chauffeur was "based out of" New Jersey but routinely worked a greater number of hours per day in New York than in New Jersey.  *Id.* at *3. The Court identified the controlling factor for determining which state law to apply as, not where the driver initiated work, but the duration of time working in a given state.  *Id.*  The Court found

the driver to have spent more time in New York rather than New Jersey and applied the NYLL as a result. *Id.*

The reasoning applies with equal force here, albeit with a different result: drivers who are "based out of a work location in New York," do not necessarily spend the majority of their driving time in New York.  Plaintiffs themselves appear to acknowledge this requirement by virtue of their allegations that they each spent "substantial time" in New York.  However, Plaintiffs' definition of Class A does not share similar precision such that, as defined, Class A would include truck drivers who spent the majority of their time outside of New York.  An individualized inquiry would therefore be necessary to determine whether a given truck driver has standing to pursue claims under the NYLL.  *See O'Neill*, 968 F. Supp. 2d at 578-79 (highlighting the fact specific nature of the inquiry); *Drozd v. U.S.A. Concepts of New York Corp.*, 2015 WL 13733713, at *11 (E.D.N.Y. Apr. 23, 2015) ("[P]laintiffs are not entitled to damages under the NYLL for hours worked in New Jersey.").

### D. The Court Should Strike Plaintiffs' Class B Definition Because It Is Not Ascertainable

Plaintiffs' Class B definition is also independently deficient and should be stricken, but for a different reason: it is not ascertainable.  *See In re Petrobas Sec.*, 862 F.3d 250, 264 (2d Cir. 2017) ("Rule 23 contains an implicit threshold requirement that members of a proposed class be readily identifiable.").  The Second Circuit requires a District Court "to consider whether a proposed class is defined using objective criteria that establish a membership with definite boundaries."  *Id.* at 269.  "A class is ascertainable when…identifying its members would not require a mini-hearing on the merits of each case."  *Atakhanova v. Home Family Care, Inc.*, 2020 WL 4207437, at *7 (E.D.N.Y. July 22, 2020) (citing *In re Petrobas*).

Here, the reference point for membership in Class B is whether a driver "had one or more tours of duty and/or routes that necessitated being in New York State for more than 40 hours during at least one workweek." (SAC ¶ 78). In the SAC, Plaintiff does not identify any objective criteria that would resolve membership in Class B and account for factors such as driver routes, crossover of state lines, and detours, traffic, or construction that might impact a driver's time in New York and potential membership in Class B as defined by Plaintiffs.

In Plaintiffs' response to Defendants' pre-motion letter, Plaintiffs suggested that the Department of Transportation driver logs ("DOT Logs") that Knight-Swift is required to maintain under federal law might shed light on this issue. (Docket No. 24 at p. 2). However, Plaintiffs acknowledge that the DOT Logs record geographic location for a driver only "at each change in status." (*Id.* (citing 49 C.F.R. § 395.8(h)(5)). These DOT Logs will report little about the drivers' activities in between a "change in status," and therefore shed no light on whether the time is "hours worked" for purposes of meeting the 40-hour threshold. Further, the DOT Logs will require a herculean effort to sift through years of data to determine if in one of the potentially hundreds or thousands of weeks worked by putative Class B members, the math reveals the worker to have spent 40 or more hours in New York. Thus, a "mini-hearing" comprised of a manual review of DOT Logs will necessarily be required simply to determine potential membership in Class B, contrary to Second Circuit precedent. *See, e.g., Atakhanova*, 2020 WL 4207437, at *7.

## II.   THE COURT SHOULD DISMISS PLAINTIFFS' OVERTIME AND SPREAD OF HOURS CLAIMS

### A.   Applicable Legal Standards

Federal courts "demand more than unadorned, the-defendant-unlawfully-harmed me accusations" in complaints. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Mere "labels and conclusions" or "naked assertions" devoid of "further factual enhancement" do not suffice. *Id.* (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). "The tenet that a court must accept

as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, fail to state a claim. *Id.* To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Id. (*quoting *Twombly,* 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Courts in the Second Circuit have frequently applied and refined these standards to wage and hour claims under the NYLL. The Second Circuit has repeatedly held that, "to state a plausible FLSA [or NYLL] overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of 40 hours." *Lundy v. Catholic Health Sys of Long Island Inc.,* 711 F.3d 106, 114 (2d Cir. 2013); *see Limauro v. ConEd Co. of New York, Inc.*, 2021 WL 1226872, at *2 (S.D.N.Y. Mar. 31, 2021) (noting that the same pleading standards apply to both FLSA and NYLL claims). Further, a plaintiff must allege "sufficient detail about the length and frequency" of unpaid work in order to support a "reasonable inference" that he "worked more than 40 hours in a given week." *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.,* 723 F.3d 192, 201 (2d Cir. 2013). Indeed, "some factual context" is required to nudge the claim from "conceivable to plausible." *DeJesus v. HF Mgmt. Servs., LLC,* 726 F.3d 85, 88-90 (2d Cir. 2013). A plaintiff cannot rely on "general and conclusory allegation as to the number of hours 'routinely worked.'" *Humphrey v. Rav Investigative & Sec. Servs., Ltd.*, 169 F. Supp. 3d 489, 496 (S.D.N.Y. 2016) (internal citations omitted); *Fridman v. GCS Computers LLC,* 2018 WL 1581990, at *4 (S.D.N.Y. Mar. 27, 2018).

**B.** **Plaintiffs Fail To Meet The Pleading Standard Necessary For Their NYLL Overtime Claim**

Despite being advised of the deficiency in their pleadings concerning their overtime claims, Plaintiffs still fall short of that required by the Second Circuit's *Lundy*, *Nakahata*, and *DeJesus* trilogy. Plaintiffs repeat the generic allegation set forth in the First Amended Complaint that they, and all other drivers, purportedly worked "20 or more hours per day…[and] worked more than 100 hours per week." (SAC ¶ 8, 36, 47). Plaintiffs added new allegations in the SAC, which conflict with the above-referenced 20-hour estimate, but they fare no better. Specifically:

> Mr. Hobbs worked for Defendants from approximately July 2019 to March 2020…While on a tour of duty, Mr. Hobbs worked for approximately 24 hours a day…In a typical week under this regular schedule, Mr. Hobbs…worked approximately 6 days a week, 24 hours a day, for a total of 144 compensable hours.

(SAC ¶ 61).

> Mr. Shaw worked for Defendants from approximately March 2017 to October 2017. In a typical workweek on this regular scheduled, Mr. Shaw…worked approximately 6 days and 24 hours per day for a total of 144 hours.

(SAC ¶ 67).

> Mr. Bell worked in a two-driver team that collectively hauled freight for 20 or more hours a day over the course of several days at the beginning of his employment…Plaintiff Bell than transition to a solo driver, and continued to work around the clock….Mr. Bell worked for Defendants from approximately June of 2016 to January of 2017…In a five-day week, Mr. Bell's compensable hours were 120 hours (24 hours a day for 5 days).

(SAC ¶ 72-73). Generic allegations of this kind are precisely those that form the basis for dismissal under *Lundy* and its progeny. *See Kuck v. Planet Home Lending, LLC,* 354 F. Supp 3d 162, 168 (E.D.N.Y. 2018) (plaintiffs must allege more than "merely claiming that they 'occasionally,' 'typically,' or 'regularly' worked more than 40 hours in some weeks").

By way of two recent examples, in *Limauro*, the Southern District rejected the following allegations as insufficient to support a plausible overtime claim:

> Indeed, Mr. Limauro typically worked at least 45 hours per week, often more, and was not paid time and a half for those hours over 40 hours per week, and was deprived overtime pay.
>
> Mr. Limauro often arrived for work at 6:15am, approximately 45 minutes before his usual start time at 7:00am, for morning meetings and would often stay until 6:00pm, approximately 3 hours later than his usual end time of 3:00pm.
>
> Approximately twice per month (although sometimes more), Mr. Limauro also worked weekends (both Saturday and Sunday), in excess of 50 hours per week, but was not paid time and half for the hours over 40 hours per week that he worked, and thus was deprived overtime pay.
>
> During outages throughout the year, Mr. Limauro also worked seven days per week for more than two weeks in a row, and thus worked in excess of at least 50 hours per week on those occasions, and he likewise was not paid time and half for that work and was thus deprived of overtime pay.

2021 WL 1226782, at *2 (dismissing the revised pleadings with prejudice).

Likewise, in *Heredia v. Americare, Inc.*, the Southern District rejected as insufficient overtime allegations that included the plaintiff alleging she "worked numerous 24 hour shifts for Defendants and was never paid more than 13 hours per shift."  2020 WL 3961618, at *10-11 (S.D.N.Y. July 13, 2020).  The Court noted that, like here, most of the supporting statements consisted of "vague generalities," such as "numerous," "often" and "sometimes," which it found to run afoul of Second Circuit precedent.  *See id.* at *11 (citing *Bonn-Wittingham v. Project OHR, Inc.*, 792 Fed. Appx. 71, 75 (2d Cir. 2019)).

These cases exemplify the stringent pleading standards required in this context.  *See also Marciano v. SJN Adjustment Group, Inc.*, 2019 WL 4888569, at *2 (E.D.N.Y. Sept. 30, 2019) ("commonly worked between fifty and sixty hours per week" insufficient); *Serrano v. I. Hardware Distribs., Inc.*, 2015 WL 4528170, at *4, 2015 U.S. Dist. LEXIS 97876, at *7-8 (S.D.N.Y. July 27, 2015) ("worked 'an average' of 62 and 60 hours per week" and " 'often' worked over ten hours per day" "over a period of years" insufficient because did not identify a "given" week); *Smith v. Mastercraft Decorators, Inc.*, 09 Civ. 579, 2011 WL 5191755, at *3, 2011 U.S. Dist. LEXIS

125342, at *6-7 (W.D.N.Y. Oct. 25, 2011) (allegation that plaintiff "routinely" worked over 40 hours insufficient).

Plaintiffs have offered only allegations concerning what they purport to have "typically" worked, but they do not identify the hours worked during any "given" workweek.  *See, e.g., Fridman,* 2018 WL 1581990, at *8.  And at that, they offer the implausible allegation that every day of their employment, for its entirety, they worked 24 hours per day.  Their overtime claims should be dismissed with prejudice in accordance with Rule III(B) of the Court's Individual Rules of Practice.

### C.    Plaintiffs Fail To Meet The Pleading Standard Necessary For Their NYLL Spread-of-Hours Claim

Plaintiffs' spread-of-hours claim under the NYLL should be dismissed for similar reasons. Although the matter has received only scant attention among New York District Courts, the little that exists make clear that there is a pleading standard associated with the claim.  In *Hinkley v. Seagate Hospitality Group, LLC*, the Court was faced with an allegation concerning spread-of-hours stating:

> During the relevant time period, Class members, including Named Plaintiff, worked shifts that exceeded ten hours in length.  Despite NYLL requiring that Defendants provide an additional hour of pay at the basic hourly rate when an employee's length of the interval between the beginning and end of a workday exceeds 10 hours, Defendants did not pay Plaintiffs these wages.

2016 WL 6524314, at *9-10 (W.D.N.Y. Nov. 3, 2016).  The Court found this "insufficient to state a plausible claim" because plaintiff "fail[ed] to identify any actual instance when Defendants failed to pay him for a spread-of-hours situation."  *Id.* at *10.

Plaintiffs' allegations here are no different.  For each Plaintiff, the SAC states:

> Further, Knight-Swift failed to provide Mr. [] with "spread of hours" pay for the every-workday occurrence of working over ten hours in a day.

(SAC ¶ 64, 70, 76).   Accordingly, Plaintiffs' spread-of-hours claim should be dismissed with prejudice as well.

**III.   THE COURT SHOULD DISMISS PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF**

Plaintiffs do not plead an independent claim for declaratory or injunctive relief.  However, in the "Prayer for Relief" section of the SAC, Plaintiffs ask:

> For a declaratory judgment that Defendants violated New York Labor Law and public policy as alleged herein;

> For a preliminary, permanent, and mandatory injunctive relief prohibiting defendants, their officers, agents, and all those acting in concert with them from committing, now and in the future, those violations of law herein alleged.

(SAC at p. 30).  As Plaintiffs are all former employees, Plaintiffs do not have standing to pursue injunctive or declaratory relief, and this aspect of the SAC should be stricken pursuant to Fed. R. Civ. P. 12(b)(1).[2]

**A.      Applicable Legal Standards**

A defendant can challenge a plaintiff's Article III standing pursuant to a motion under Rule 12(b)(1) "because it concerns the court's subject matter jurisdiction." *Vasconcellos v. City of New York,* 2014 WL 4961441, at *2 (S.D.N.Y. 2014).   Where a plaintiff seeks injunctive relief, he "must also establish 'a real and immediate threat of repeated injury' demonstrated by more than 'past exposure to illegal conduct.'"  *Kassman,* 925 F. Supp. 2d at 455 (quoting *Los Angeles v. Lyons,* 461 U.S. 95, 102, 102 (1983)).   Plaintiffs seeking prospective relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future.  *See Deshawn E. ex rel. Charlotte E. v. Safir,* 156 F.3d 340 (2d Cir. 1998).

---

[2]        *See* FN1.

**B.      As Former Employees, Plaintiffs Do Not Have Standing To Seek Injunctive Relief**

Former employees lack standing to seek injunctive and declaratory relief.  *See Dukes,* 564 U.S. at 364.  "[E]x-employees have no material stake in whether their former employer is or is not enjoined from continuing" certain practices since they are no longer there.  *Chen-Oster,* 877 F. Supp. 2d at 121.  Thus, "where ex-employees do not seek (or cannot seek) reemployment with their former employer, they have no real…interest in an injunction. *Id.; see also Kassman,* 925 F. Supp. 2d at 465-66 (a plaintiff generally lacks standing to seek injunctive or declaratory relief against his or her former employer, as there is no prospect he or she will be injured in the future).

Each Plaintiff here is a former employee of Knight-Swift (SAC ¶ 15-17), and therefore lacks standing to seek injunctive relief.  *See Chen-Oster v. Goldman,* 251 F. Supp. 3d 579, 588 (S.D.N.Y. 2017).  Accordingly, Defendants respectfully request that the Court strike Plaintiffs' request for declaratory and injunctive relief from the SAC.

## CONCLUSION

In light of the foregoing, Defendants respectfully request that the Court enter an Order: (i) striking the class definitions and all class allegations pursuant to Federal Rule of Civil Procedure 23(d)(1)(D); (ii) dismissing Plaintiffs' overtime and spread of hours claims pursuant to Federal Rule of Civil Procedure 12(b)(6) with prejudice;  (iii) dismissing Plaintiffs' request for injunctive relief pursuant to Federal Rule of Civil Procedure 12(b)(1); and (iv) for such other and further relief as this Court deems just and proper.

Dated: June 17, 2021                              Respectfully submitted,

                                                  */s/ Brian D. Murphy*
                                                  Brian D. Murphy
                                                  SHEPPARD MULLIN RICHTER &
                                                  HAMPTON LLP
                                                  30 Rockefeller Plaza
                                                  New York, NY 10112
                                                  bmurphy@sheppardmullin.com
                                                  Tel: (212) 634-3059
                                                  Fax: (212) 655-1719