SCHNEIDER WALLACE
COTTRELL KONECKY LLP

John J. Nestico (N.Y. SBN 1724020)
6000 Fairview Road, Suite 1200
Charlotte, North Carolina 28210
Tel: (510) 740-2946; Fax: (415) 421-7105
jnestico@schneiderwallace.com

Joshua Konecky, admitted *pro hac vice* on May
5, 2021 (Cal. SBN 182897)
Nathan Piller, admitted *pro hac vice* on May 5,
2021 (Cal. SBN 300569)
Yuri A. Chornobil (N.Y. SBN 5567995)
to apply for admission to SDNY
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel: (415) 421-7100
Fax: (415) 421-7105
jkonecky@schnedierwallace.com
npiller@schneiderwallace.com
ychornobil@schneiderwallace.com

*Attorneys for Plaintiffs and the proposed Class*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TAVARES HOBBS, RICARDO BELL, and ROBERT SHAW, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>KNIGHT-SWIFT TRANSPORTATION HOLDINGS, INC., and SWIFT TRANSPORTATION CO. OF ARIZONA, LLC.<br><br>        Defendants. | Case No. 21 Civ. 1421 (AT)<br><br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND MOTION TO STRIKE** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... ii

I.   INTRODUCTION ................................................................................................................ 1

II.  PROCEDURAL HISTORY AND SUMMARY OF PLAINTIFFS' ALLEGATIONS ......... 3

III. DEFENDANTS' MOTION TO STRIKE SHOULD BE DENIED ....................................... 7

     a.   Motions to Strike Class Allegations are Disfavored ................................................... 7

     b.   The Weight of Authority Supporting Class and Collective Adjudication of
         Analogous Claims Betrays Defendants' Premature Challenges to the Viability of
         the Class Allegations ................................................................................................... 7

     c.   Defendants' Core Arguments Addressing the Propriety Class Certification under
         Rule 23 are Premature for the Pleadings Stage ....................................................... 10

     d.   Defendants' Challenges to the Standing of Unnamed Class Members are Both
         Premature and Unpersuasive ..................................................................................... 13

     e.   Defendants' Contentions Regarding Extraterritorial Application of the NYLL
         Present, at Most, a Common Merits Dispute that is Premature for the Pleadings
         Stage ......................................................................................................................... 18

IV.  DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED ................................... 20

     a.   Plaintiffs' Detailed Allegations are More Than Sufficient to Meet the Pleading
         Standard for Overtime Claims in the Second Circuit .............................................. 20

     b.   Plaintiffs' "Spread of Hours" Claim is Well-Pled ................................................... 24

     c.   If a Class is Certified, Plaintiffs Should be Permitted to Add Class
         Representatives Who Have Standing to Pursue Injunctive Relief ........................... 24

V.   CONCLUSION ................................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Academy of Ambulatory Foot Surgery (AAFS) v. A. Podiatry Ass'n,*
  516 F. Supp. 378 (S.D.N.Y. 1981) ........................................................................... 10

*Adashunas v. Negley,*
  626 F.2d 600 (7th Cir. 1980) ................................................................................... 18

*Anderson v. Mt. Clemens,*
  328 U.S. 680 (1946) ................................................................................................. 23

*Atakhanova v. Home Family Care, Inc.,*
  2020 U.S. Dist. LEXIS 129221 (E.D.N.Y. July 22, 2020) ...................................... 11

*Ayala v. U.S. Xpress Enters.,*
  2020 U.S. Dist. LEXIS 102991 (C.D. Cal. June 9, 2020) ......................................... 9

*Borgese v. Baby Brezza Enter.,*
  2021 U.S. Dist. LEXIS 30216 (S.D.N.Y. Feb. 18, 2021) ................................... 7, 17

*Browne v. P.A.M. Transp., Inc.,*
  2018 U.S. Dist. LEXIS 180189 (W.D. Ark. Oct. 19, 2018) ...................................... 9

*Browne v. P.A.M. Transp., Inc.,*
  2019 U.S. Dist. LEXIS 12244 (W.D. Ark. Jan. 25, 2019) ........................................ 8

*Calibuso v. Bank of Am. Corp.,*
  893 F. Supp. 2d 374 (E.D.N.Y. 2012) .................................................................... 14

*Cf. In re Petrobras Sec. Litig.,*
  862 F.3d 250 (2d Cir. 2017) .................................................................................... 11

*Chenensky v. N.Y. Life Ins. Co.,*
  2011 U.S. Dist. LEXIS 48199 (S.D.N.Y. Apr. 27, 2011) ................................... 7, 10

*Chen-Oster v. Goldman, Sachs & Co.,*
  877 F. Supp. 2d 113 (S.D.N.Y. 2012) ...................................................................... 7

*Cohen v. Gerson Lehrman Grp., Inc.,*
  686 F. Supp. 2d 317 (S.D.N.Y. 2010) .................................................................... 10

*Davi v. AmTrust Bank,*
  743 F. Supp. 2d 114 (E.D.N.Y. 2010) ...................................................................... 8

*Davito v. AmTrust Bank,*
  743 F. Supp. 2d 114 (E.D.N.Y. 2010) .................................................................... 11

*DeJesus v. HF Mgmt. Servs.*,
   726 F.3d 85 (2d Cir. 2013) ................................................. 23

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006) ......................................... 11, 14

*Fernandez v. Kinray, Inc.*,
   2014 U.S. Dist. LEXIS 178422 (E.D.N.Y. Dec. 30, 2014) .................... 14

*Flores v. Anjost Corp.*,
   284 F.R.D. 112 (S.D.N.Y. 2012) ...................................... 15

*Garcia v. Execu/Search Grp., LLC*,
   2019 U.S. Dist. LEXIS 26291, 2019 WL 689084 (S.D.N.Y. 2019) ........... 16

*Gardner v. W. Beef Props.*,
   2008 U.S. Dist. LEXIS 47027 (E.D.N.Y. June 16, 2008) ................. 10

*Gen. Tel. Co. v. Falcon*,
   457 U.S. 147, 102 S. Ct. 2364 (1982) .............................. 7

*Hallmark v. Cohen & Slamowitz, LLP*,
   283 F.R.D. 136 (W.D.N.Y. 2012) ................................. 10

*Haworth v. New Prime*,
   448 F. Supp. 3d 1060 (W.D. Mo. 2020) ........................... 8

*Heng Guo Jin v. Han Sung Sikpoom Trading Corp.*,
   2015 U.S.Dist. LEXIS 125961 (E.D.N.Y., Sept. 21, 2015) .............. 19

*Hernandez v. NJK Contractors, Inc.*,
   2015 U.S.Dist. LEXIS 57568 (E.D.N.Y., May 1, 2015) ................ 19

*Humphrey v. RAV Investigative & Sec. Servs.*,
   169 F. Supp. 3d 489 (S.D.N.Y. 2016) ......................... 21, 22

*In re Fosamax Prods. Liab. Litig.*,
   248 F.R.D. 389 (S.D.N.Y. 2012) ................................. 11, 14

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   299 F. Supp. 3d 430 (S.D.N.Y. 2018) ............................. 16

*In re Petrobas Sec.*,
   862 F.3d 250, 264 (2d Cir. 2017) ............................. 11

*Indergit v. Rite Aid Corp.*, 2009 U.S. Dist. LEXIS 42739,
   2009 WL 1269250 (S.D.N.Y. May 4, 2009) ...................... 14

*Ironforge.com v. Paychex, Inc.*,
   747 F. Supp. 2d 384 (W.D.N.Y. 2010) .................................................................. 10

*Julian v. Swift Transp. Co. Inc.*,
   2019 U.S. Dist. LEXIS 221423 (D. Ariz. Dec. 27, 2019) .......................................... 2, 9, 13, 24

*Julian v. Swift Transp. Co. Inc.*,
   360 F. Supp. 3d 932 (D. Ariz. 2018) ........................................................................ 1, 9

*Julian v. Swift Transp. Co.*,
   Case 2:16-cv-00576-ROS, Dkt. No. 103 (D. Ariz. 2017) ........................................ 8

*Kassman v. KPMG LLP*,
   925 F. Supp. 2d 453 (S.D.N.Y. 2013) ...................................................................... 7

*Kinkead v. Humana at Home, Inc.*,
   330 F.R.D. 338 (D. Conn. 2019) ........................................................................ 11, 14

*Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*,
   571 F.3d 672 (7th Cir. 2009) ................................................................................. 18

*Kuck v. Planet Home Lending, LLC*,
   354 F. Supp 3d 162 (E.D.N.Y. 2018) ............................................................ 20, 22, 23

*Lundy v. Catholic Health Sys of Long Island Inc.*,
   711 F.3d 106 (2d Cir. 2013) .................................................................................. 23

*Mazzei v. Money Store*,
   288 F.R.D. 45 (S.D.N.Y. 2012) .............................................................................. 16

*McNutt v. Swift Transp. Co. of Ariz., LLC*,
   2020 U.S. Dist. LEXIS 119909 (W.D. Wash. July 7, 2020) ...................................... 8

*Montoya v. CRST Expedited, Inc.*,
   404 F. Supp. 3d 364 (D. Mass. 2019) ...................................................................... 9

*N.Y. v. UnitedHealth Grp. Inc.*,
   2018 U.S. Dist. LEXIS 62301 (S.D.N.Y. Apr. 6, 2018) .......................................... 14

*Nakahata v. New York-Presbyterian Healthcare Sys.*,
   723 F.3d 192 (2d Cir. 2013) ......................................................................... 20, 22, 23

*Neil v. Sidney W. Barbanel Consulting Eng'r, LLC*,
   2014 U.S. Dist. LEXIS 110759 (E.D.N.Y. Aug. 11, 2014) ...................................... 21

*Paikai v. Gen. Motors Corp.*,
   2009 U.S. Dist. LEXIS 8538, 2009 WL 275761 (E.D.Cal. Feb. 5, 2009) .................. 10

*PBA Local No. 38 v. Woodbridge Police Dep't*,
  134 F.R.D. 96 (D. N.J. 1991) ........................................................................ 14

*Perry v. City of N.Y.*,
  2013 U.S. Dist. LEXIS 177396 (S.D.N.Y. Dec. 17, 2013) ...................................... 21

*PFT of Am., Inc. v. Tradewell, Inc.*,
  1999 U.S. Dist. LEXIS 3870 (S.D.N.Y. Mar. 31, 1999) ........................................ 17

*Philip Morris Cos. v. Nat'l Asbestos Workers Med. Fund*,
  214 F.3d 132 (2d Cir. 2000) ........................................................................ 10

*Ridgeway v. Walmart Inc.*,
  946 F.3d 1066 (9th Cir. 2020) ....................................................................... 9

*Ridgeway v. Wal-Mart Stores*, Inc.,
  2014 U.S. Dist. LEXIS 126806 (N.D. Cal. 2014) ................................................ 8

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015) ........................................................................ 15

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) ........................................................................ 18

*Rozema v. The Marshfield Clinic*,
  174 F.R.D. 425 (W.D. Wis. 1997) .................................................................. 14

*Sanders v. Apple, Inc.*,
  672 F. Supp 2d 978 (N.D. Cal. 2009) ............................................................. 17

*Shen v. John Doe Corp.*,
  2016 U.S. Dist. LEXIS 172232 (S.D.N.Y. Dec. 13, 2016) ............................... 21, 22

*Smith v. Mercy Med. Ctr.*,
  2017 U.S. Dist. LEXIS 113860 (E.D.N.Y. June 6, 2017) ..................................... 21

*Solouk v. European Copper Specialties, Inc.*,
  2019 U.S.Dist. LEXIS 81267 (S.D.N.Y., May 2, 2019) ....................................... 19

*Talarico v. Port Auth. of N.Y. & N.J.*,
  367 F. Supp. 3d 161 (S.D.N.Y. 2019) .............................................................. 7

*Tasion Commc'ns., Inc. v. Ubiquiti Networks*,
  2014 U.S. Dist. LEXIS 35455 (N.D. Cal. Mar. 14, 2014) ..................................... 17

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016) ...................................................................... 15, 23, 24

v

*Vargas v. Howard*,
   324 F.R.D. 319 (S.D.N.Y. 2018) ........................................................................ 15

*Villalpando v. Exel Direct Inc.*,
   2015 U.S. Dist. LEXIS 118065 (N.D. Cal. Sep. 3, 2015) ..................................... 24

*Winfield v. Citibank, N.A.*,
   842 F. Supp. 2d 560 (S.D.N.Y. 2012) .................................................................. 10

*Wooldridge v. Gateway Transp. of Ga., Inc.*,
   2019 U.S. Dist. LEXIS 109068 (N.D. Ga. June 24, 2019) ...................................... 9

*Zokirzoda v. Acri Café, Inc.*,
   2020 U.S. Dist. LEXIS 11747 (S.D.N.Y. Jan. 22, 2020) ...................................... 24

**Statutes**

49 C.F.R. § 395.3 ............................................................................................... 12

49 C.F.R. § 395.8 ............................................................................................... 12

**Rules**

Fed. R. Civ. Proc. 23............................................................................. 2, 10, 11, 16

## I.      INTRODUCTION

Plaintiffs filed this case to recover unpaid wages on behalf of current and former long-haul truck drivers ("Drivers") who worked for Defendants on tours of duty transporting freight.  The Drivers haul loads for Defendants, often for days or even weeks on end before returning home. While under dispatch, they must stay on schedule and responsible for the security of the truck and the load, even when the truck is stopped.  As a practical matter, they do not have the freedom or means to leave the vicinity of the truck (i.e. the workplace), for the entire dispatch. The Drivers literally live on the truck.  Instead of providing lodging, Defendants have their Drivers attempt to rest in the truck's cramped "sleeper berth," a small space in the cab lacking a bathroom or sink.

Yet, Defendant's policy and practice is to compensate Drivers with a piece rate that only covers time spent driving, and that does <u>not</u> compensate Drivers for any sleeper berth time, or even for the time Drivers spend performing other non-driving tasks.  This is the same industry policy that has led federal courts throughout the Country to consistently certify analogous classes and collectives of truck drivers alleging similar violations, as well as to find trucking companies liable on a class and collective basis, based on similar policies and theories of liability.

Defendant Swift's policy of not paying for sleeper berth time was recently addressed in the analogous case of *Julian v. Swift Transp. Co. Inc.*, 360 F. Supp. 3d 932 (D. Ariz. 2018).  There, the Court held that a certified collective of over-the-road truck drivers for Defendant Swift Transportation Co. of Arizona LLC were continuously on-duty—even during their non-driving periods in the sleeper berth—and that the company's policy of deducting unlimited amounts of sleeper berth time from employee pay was unlawful under the Fair Labor Standards Act. *Id*. at 947, n.12, 952.  The Court in *Julian* further awarded the collective of drivers damages on summary

judgment for unpaid sleeper berth time. *Julian v. Swift Transp. Co. Inc.*, 2019 U.S. Dist. LEXIS 221423, at *12-*18, *21 (D. Ariz. Dec. 27, 2019).

Now facing a case addressing the same problematic practice under the New York Labor Law (NYLL), Defendants seek to avoid discovery and the merits by advancing various premature, technical arguments against the sufficiency of the pleadings.  Defendants' arguments are unpersuasive, for several reasons.

Defendants fail to clear the high bar to strike class allegations at the pleadings stage.  As a threshold problem, Defendants' core arguments are premature on their face because they mirror the class certification inquiry and rely on cases decided at the Rule 23 stage.  For example, Defendants speculate that the class cannot be ascertained because of assumptions about limitations in standardized company records that they have not yet produced.  Defendants seek termination of class claims before any discovery, based on the company's own unfounded assertions about what discovery might show and premature legal conclusions about what might transpire at class certification.  Plaintiffs maintain that the claims here are ideally suited for class treatment because they turn on the lawfulness a uniform pay policy—as several courts have held in analogous cases— but this analysis is premature.  In this respect, Defendants' argument is a prime example of why motions to strike class claims at the pleadings stage are disfavored.

Next, Defendants contend that Plaintiffs seek to represent class members who lack standing, because the class definitions do not specifically mention sleeper berths or overnight trips. Defendants point to no evidence that some putative class members did not use sleeper berths or otherwise have disparate claims.  Regardless, Defendants' cramped interpretation would wrongly require that all putative class members work the same or similar hours as the Plaintiffs.  But differences in hours worked and the extent of injury are insufficient to defeat class certification,

2

much less strike class allegations at the pleadings stage. Even still, Defendants are simply incorrect that injury in this case hinges on using a sleeper berth. Plaintiffs allege that Defendants' pay scheme fails to compensate for various non-driving tasks, not merely sleeper berth time.

Defendants also argue that the putative class includes individuals who lack a sufficient connection to New York to bring claims under the NYLL, but fail to address case law contrary to their position. At most, Defendants' argument presents a common merits question that should not be resolved before discovery. In the meantime, it would be premature and improper for Plaintiffs to artificially exclude individuals from the class definitions who may well have viable claims, merely to meet Defendants' reading of unsettled law.

Defendants' arguments for dismissal of the overtime claims fare no better. Defendants' argument for dismissal is premised on the mistaken assumption that Plaintiffs must pinpoint specific workweeks and allege the precise number of hours worked during those workweeks. But no such technical requirement exists. Rather, overtime allegations must merely be detailed enough to support a "reasonable inference" that the employees worked more than 40 hours in a week. As numerous courts have held, the standard is met where employees allege that they worked a regular schedule requiring more than 40 hours of work every week. Plaintiffs here have gone above and beyond that standard by alleging detailed facts regarding their work schedules and weekly hours worked, the amount of hours they spent logged as "sleeper berth," the routes they performed, and the geographic areas the traveled, among other details supporting the claims.

For all these reasons, Defendants' motion should be denied.

## II.    PROCEDURAL HISTORY AND SUMMARY OF PLAINTIFFS' ALLEGATIONS

On February 17, 2021, Plaintiffs Tavares Hobbs, Robert Shaw, and Ricardo Bell, filed this case against Defendants Knight-Swift Transportation Holdings, Inc. and Swift Transportation Co.

of Arizona, LLC, Inc. ("Defendants" or "Swift"). *See* Class Action Complaint, Dkt. No. 1. On March 5, 2021, Plaintiffs filed their First Amended Complaint ("FAC") to add allegations regarding the citizenship of Defendants. Dkt. No. 6.

Plaintiffs allege that Defendants employed Plaintiffs and hundreds of other similarly situated employees to transport freight throughout New York. FAC, ¶ 1-3.  The Drivers work away from home, often for days or weeks on end hauling freight in long-haul semis, either alone, or as part of a two-driver team. *Id*. at ¶ 3. During their tours of duty transporting freight for Defendants, Drivers live on the truck and attempt to rest in the truck's "sleeper berth." *Id*. at ¶ 4. For example, Plaintiff Ricardo Bell began his job with Defendants working in a two-driver team that collectively hauled freight for 20 or more hours a day. During this time, he managed only a few hours of sleep per night in the sleeper berth, typically while the truck itself was in motion, being driven by his team member. *Id*. at ¶ 6.

Whether driving in a team or solo, Plaintiffs and the other Drivers worked around the clock hauling freight and performing various non-driving tasks (such as trip inspections, washing the trailer, taking the truck through weigh scales, working with delivery agents, fueling, and completing paperwork, among numerous other tasks).  *Id*. at ¶ 7.  When not driving or performing specific non-driving tasks, Plaintiffs and the other drivers remained responsible for the security of the load and available to Defendants, all while being required to remain near the truck and its immediate vicinity, even when the truck is stopped. *Id*. at ¶ 8.

Despite subjecting Plaintiffs and the other Drivers to its control throughout their tours of duty, Defendants have a policy and practice of not compensating Drivers for sleeper berth time, or for the time they spend performing non-driving tasks. *Id*. at ¶ 10.  Rather, Defendants have compensated Plaintiffs and the other Drivers with only a piece rate covering time spent driving

and occasional detention or bonus pay. *Id*. at ¶ 38.   As a result, Defendants have failed to compensate Plaintiffs and the other Drivers for all the non-driving time spent on their tours of duty subject to the control of the company, resulting in violations of the NYLL's minimum wage, straight time, overtime, and "spread of hours" requirements. *Id*. at ¶ 39, 67-101.

On April 16, 2021, Defendants filed a pre-motion letter seeking leave to file the instant motion. Dkt. No. 23.   In the letter, Defendants contended that Plaintiffs' proposed class definition was overbroad because it included individuals who may not have a sufficient connection to New York state, and who may not have used sleeper berths. *See id*. at p. 2.   Defendants also argued that the allegations were too "generic and aggregated" to sustain the minimum wage, overtime, and spread of hours claims. *See id*. at p. 3.   Plaintiffs' filed their responsive pre-motion letter on April 23, 2021, strongly disputing Defendants' contentions. Dkt. No. 24.   On April 29, 2021, the Court granted Defendants leave to file their motion and permitted Plaintiffs to file a further amended complaint. Dkt. No. 25.

On April 30, 2021, counsel for Plaintiffs requested that Defendants produce the named Plaintiffs' DOT logs and compensation data, so that Plaintiffs could meet the level of precision demanded in Defendants' pre-motion letter. *See* Exhibit 1 attached to the Declaration of Nathan Piller ("Piller Decl."). On May 6, 2021, counsel for Defendants declined to provide such records prior to Plaintiffs' deadline to amend the Complaint. *Id.*; *see also* Second Amended Complaint ("SAC"), Dkt. No. 36, at ¶ 58.

While Plaintiffs strongly dispute the arguments raised in Defendants' pre-motion letter, they nevertheless filed the SAC out of an abundance of caution. Dkt. No. 36.   Plaintiffs amended the class definition to clarify that Plaintiffs seek to represent only class members with a sufficient connection to New York and who have suffered the same or similar injuries as Plaintiffs.   For

instance, Plaintiffs added specific geographic and temporal limitations that restrict the putative

classes to only those who are based out of a New York work location or who have been dispatched

on routes that necessitated being on a tour of duty in New York for more than 40 hours, in at least

one workweek:

> Class A: "All current and former truck drivers who have been employed by
> Defendants while being based out of a work location in New York state at any time
> beginning six years before the filing of this Complaint until resolution of this
> action."; and

> Class B: "All current and former truck drivers who have been employed by
> Defendants while being based out of a work location outside of New York state,
> but who had one or more tours of duty and/or routes that necessitate being in New
> York state for more than 40 hours during at least one workweek, at any time
> beginning six years before the filing of this Complaint until resolution of this
> action."

SAC, at ¶ 78.

Further, Plaintiffs alleged substantial additional factual details to further bolster their

overtime and spread-of-hours claims, including the number of days worked per workweek, the

number of hours worked each day, approximate weekly compensation and the total hours worked

per week for each of the named Plaintiffs, daily sleeper berth time, and daily time spent performing

other compensable non-driving tasks, as well as detailed descriptions of their regular work

schedules, specific routes driven, and geographic areas traveled, among other details that further

substantiate the overtime and "spread of hours" claims. *Id.* at ¶ 57-77

Notwithstanding Plaintiffs' amendments, Defendants filed the instant motion on June 17,

2021. Dkt. No. 40.  Defendants apparently concede that the minimum wage claim is well-pled,

having abandoned their prior request for its dismissal. *See id.*

### III.   DEFENDANTS' MOTION TO STRIKE SHOULD BE DENIED

#### a.   Motions to Strike Class Allegations are Disfavored

In the Second Circuit, "[m]otions to strike are generally looked upon with disfavor." *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) (quoting *Chenensky v. N.Y. Life Ins. Co*., 2011 U.S. Dist. LEXIS 48199 at \*1 (S.D.N.Y. Apr. 27, 2011)) (internal quotation mark omitted).  Moreover, "a motion to strike class allegations 'is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification.'" *Chen-Oster*, 877 F. Supp. 2d at 117, (quoting *Chenensky*, 2011 U.S. Dist. LEXIS 48199 at \*3-4); *see also Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 462 (S.D.N.Y. 2013).

To prevail on a motion to strike class claims at the pleading stage, Defendants have the burden to demonstrate that the claims alleged in the complaint "fail to state a plausible entitlement to relief on behalf of the putative class members." *Talarico v. Port Auth. of N.Y. & N.J.*, 367 F. Supp. 3d 161, 173 (S.D.N.Y. 2019) (internal citations omitted); *Borgese v. Baby Brezza Enter.*, 2021 U.S. Dist. LEXIS 30216, at \*6 (S.D.N.Y. Feb. 18, 2021) (citing *Talarico*, 367 F. Supp. 3d at 173).  The deficiencies of the class allegations must be "plain enough from the pleadings," such that the "complaint itself demonstrates that the requirements for maintaining a class action cannot be met[.]" *Borgese,  LLC*, 2021 U.S. Dist. LEXIS 30216, \*6 (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S. Ct. 2364 (1982) and *Landsman & Funk PC v. Skinder—Strauss Assocs.*, 640 F.3d 72, 93 n.30 (3d Cir. 2011).

#### b.   The Weight of Authority Supporting Class and Collective Adjudication of Analogous Claims Betrays Defendants' Premature Challenges to the Viability of the Class Allegations

Faced with a high bar, Defendants attempt to liken Plaintiffs' class claims to those in

inapposite cases where it was plain from the pleadings that the class claims were not legally viable and could not be certified. *Cf.* Defendants' Partial Motion to Dismiss ("Ds' Brief"), Dkt. No. 40-3, at pp. 6-7 (citing, *e.g.*, *Davi v. AmTrust Bank*, where it was clear from the pleadings that class members had not exhausted the administrative requirements necessary to bring suit. 743 F. Supp. 2d 114, 115-117 (E.D.N.Y. 2010)).  For instance, without citing authority, Defendants contend that it is "implausible" as both a legal and a practical matter for Plaintiffs to allege that putative class members are entitled to pay for all the time that they must remain subject to Defendants' control during their tours of duty over the road. *Cf. id.* at pp. 3, 16.

Defendants' arguments are not well taken.  Indeed, the same or similar theories of liability have led federal courts throughout the Country to consistently certify analogous classes and collectives of over-the-road truck drivers—including two collectives of over-the-road truck drivers for Defendant Swift. *See, e.g.*, *McNutt v. Swift Transp. Co. of Ariz., LLC*, 2020 U.S. Dist. LEXIS 119909, at *19 (W.D. Wash. July 7, 2020) (certifying wage claims of nationwide collective of over-the-road truck drivers for Defendant Swift, based on theory that policy of not paying for sleeper berth time resulted in minimum wage violations); *Julian v. Swift Transp. Co.*, Case 2:16-cv-00576-ROS, Dkt. No. 103, at p. 10 (D. Ariz. 2017) (same); *Haworth v. New Prime*, 448 F. Supp. 3d 1060, 1066-67, 1070-71, 1076 (W.D. Mo. 2020) (same, for different trucking company); *Browne v. P.A.M. Transp., Inc.,* 2019 U.S. Dist. LEXIS 12244, at *18 (W.D. Ark. Jan. 25, 2019) (certifying analogous Arkansas state law claims for unpaid sleeper berth time under Rule 23); *id.* at *9-10, *18-19 (denying motion to decertify FLSA claims for unpaid sleeper berth time and granting motion to certify state wage claims regarding same policy); *Ridgeway v. Wal-Mart Stores*, Inc., 2014 U.S. Dist. LEXIS 126806, at *18 (N.D. Cal. 2014) (certifying state law claims for unpaid sleeper berth time during layovers under Rule 23).

Far from finding such claims implausible, courts regularly find trucking companies liable at summary judgment on a class or collective basis for analogous violations—again, <u>including Defendant Swift</u>. *See, e.g., Julian v. Swift Transp. Co. Inc*., 360 F. Supp. 3d 932, 943, 952 (D. Ariz. 2018) (holding that Defendant Swift could deduct no more than 8 hours of pay per day for sleeper berth time, under the Fair Labor Standards Act); *Montoya v. CRST Expedited, Inc*., 404 F. Supp. 3d 364, 395 (D. Mass. 2019) (same, for different trucking company); *Ridgeway v. Walmart Inc*., 946 F.3d 1066, 1077 (9th Cir. 2020) (affirming verdict awarding class-wide damages under California law for sleeper berth time during layovers); *Ayala v. U.S. Xpress Enters.*, 2020 U.S. Dist. LEXIS 102991, at *46 (C.D. Cal. June 9, 2020) (holding that subclass of drivers were entitled to minimum wage payment for off-duty and sleeper-berth time under California law); *see also Wooldridge v. Gateway Transp. of Ga., Inc*., 2019 U.S. Dist. LEXIS 109068, at *13 (N.D. Ga. June 24, 2019) (denying motion to dismiss and holding that regulation limiting pay deductions for sleeper berth time applied to truck drivers on tours of duty lasting 24 hours or more); *Browne v. P.A.M. Transp., Inc.*, 2018 U.S. Dist. LEXIS 180189 at *15-16 (W.D. Ark. Oct. 19, 2018) (same).

In one of the actions against Defendant Swift cited above, the District Court awarded damages at summary judgment for unpaid sleeper berth time. *Julian*, 2019 U.S. Dist. LEXIS 221423, at *18. Before the case settled, the issue remaining for trial was whether the collective also was entitled to compensation for all of the remaining unpaid time during their tours of duty— *i.e.* for 24 hours a day. *See id.* at *18-19. It is ironic at best for Swift to portray Plaintiffs' claims that class members were on duty for 24 hours a day as implausible, when it was on the verge of potentially being found liable on a collective basis for just such a violation only a year-and-a-half ago. Swift's conclusory assertions of legal and practical "implausibility" cannot be reconciled with the weight of authority recognizing both the suitability of analogous claims for class

treatment, as well as their merit.

>   **c. Defendants' Core Arguments Addressing the Propriety Class**
>       **Certification under Rule 23 are Premature at the Pleadings Stage**

Courts in the Second Circuit generally defer determination of whether the Rule 23 requirements are met to the class certification stage, where a more complete factual record can aid in the analysis. *See e.g., Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 573 (S.D.N.Y. 2012); *Chenensky*, 2011 U.S. Dist. LEXIS 48199, at *4; *Ironforge.com v. Paychex, Inc.*, 747 F. Supp. 2d 384, 404 (W.D.N.Y. 2010); *Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 324 (S.D.N.Y. 2010); *Gardner v. W. Beef Props.*, 2008 U.S. Dist. LEXIS 47027, at *12 (E.D.N.Y. June 16, 2008) ("Because this is decided as a motion to dismiss or strike and no motion for certification by plaintiff is pending, the Court need not reach defendant's arguments addressed to the particular requirements of Rule 23."); *Academy of Ambulatory Foot Surgery (AAFS) v. A. Podiatry Ass'n,* 516 F. Supp. 378, 383 (S.D.N.Y. 1981) (the defendant's arguments against certification were "more appropriately addressed in the context of motions to certify the proposed classes"); *Hallmark v. Cohen & Slamowitz, LLP,* 283 F.R.D. 136, 141 (W.D.N.Y. 2012) ("[T]he court's inquiry into the class action requirements at the pleading amendment stage[] is limited.").

Indeed, "the very purpose of allowing separate class certification proceedings" is to defer arguments regarding the propriety of a proposed class "to a later date." *Ironforge.com*, 747 F. Supp. 2d at 404 (quoting *Paikai v. Gen. Motors Corp.*, 2009 U.S. Dist. LEXIS 8538, 2009 WL 275761, at * 11 (E.D.Cal. Feb. 5, 2009)); *see also Philip Morris Cos. v. Nat'l Asbestos Workers Med. Fund*, 214 F.3d 132, 135 (2d Cir. 2000) (per curiam) ("[T]here can be no doubt that it is proper for a district court, prior to certification of a class, to allow discovery and to conduct hearings to determine whether the prerequisites of Rule 23 are satisfied.") (citation omitted).

Nonetheless, Defendants' core argument for striking the class allegations is that they purportedly do not "pass muster under the Rule 23 framework." *See* Ds' Brief at p. 1. Tellingly, Defendants rely on cases decided at the Rule 23 stage, many of which *granted* class certification. *Cf. In re Petrobras Sec. Litig.,* 862 F.3d 250, 264 (2d Cir. 2017) (affirming order granting class certification in part); *Atakhanova v. Home Family Care, Inc*., 2020 U.S. Dist. LEXIS 129221, at *7 (E.D.N.Y. July 22, 2020) (granting motion for class certification under Rule 23); *Denney v. Deutsche Bank AG,* 443 F.3d 253, 268-270 (2d Cir. 2006) (affirming order certifying case for settlement purposes); *Kinkead v. Humana at Home, Inc.*, 330 F.R.D. 338, 346 (D. Conn. 2019) (granting class certification in part); *In re Fosamax Prods. Liab. Litig.,* 248 F.R.D. 389, 397 (S.D.N.Y. 2012). These cases are inapplicable on a motion to strike. On their face, Defendants' central contentions address the Rule 23 inquiry, and thus are premature at the pleading stage.

Moreover, Defendants' own authorities hold that challenges to class allegations are improper on a motion to strike if they "mirror the class certification inquiry[.]" *Davito v. AmTrust Bank*, 743 F. Supp. 2d 114, 115-117 (E.D.N.Y. 2010) (citations omitted). Yet, in many respects, Defendants' challenges to the class allegations do just this.

For instance, Defendants contend that Plaintiffs' proposed classes are not ascertainable. *See* Ds' Brief at p. 11 (citing cases addressing ascertainability at the class certification stage). As Defendants' own cases point out, ascertainability is a requirement of Rule 23, not Rule 12. *In re Petrobas Sec.,* 862 F.3d 250, 264 (2d Cir. 2017).

Defendants' ascertainability arguments illustrate why such contentions are premature on a motion to strike. For example, Defendants speculate that their standardized records will not be adequate to show whether drivers spent sufficient time in New York to meet the definition of proposed Class B. But Defendants do not provide any examples of their records or other

documentation to support this contention.  Of course, discovery—not Defendants' unsubstantiated assertions—will show whether drivers are sufficiently ascertainable from Defendants' records. Premature termination of the class allegations based on Defendants' speculation about records they have not yet produced would prejudice Plaintiffs by denying them a fair opportunity to substantiate the class allegations.  This is precisely why courts generally deny motions to strike class allegations before discovery.

Even at this early stage, Defendants' own admissions regarding their records indicate that ascertainability will *not* pose a barrier to class certification when the question is properly presented at the Rule 23 stage.  Indeed, Defendants concede that they must maintain electronic Department of Transportation driver logs ("DOT logs") for each driver, and that these logs show the precise geographic location of each driver at each time they change their duty status. *Cf.* Ds' Brief at p. 12.  Under DOT regulations, drivers must change their duty statuses within each 24-hour period in which they drive, to create an electronic record of compliance with safety regulations. *See* 49 C.F.R. § 395.3 (providing that drivers must change duty status after 8 hours of driving, after 11 hours of driving, and after 14 hours of combined driving and on duty time), 49 C.F.R. § 395.8 (providing that drivers and motor carriers must maintain accurate records of these changes in duty status).  Although it is premature at the pleadings stage to parse DOT logs that have not been produced, Defendants' own description of the logs indicates that identifying drivers who spent 40 or more hours in New York can be accomplished by sorting electronic log entries to identify spans of time lasting more than 40 hours, wherein drivers did not record a change in duty status outside of New York.

Defendants suggest that using the DOT logs to identify class members would require a "herculean effort" or a "mini-hearing" for each driver, but again provide no substantiation for this

premature conjecture.  And, based on prior case law, Defendants' concerns are likely exaggerated at best.  For instance, at least one court relied on the very DOT logs maintained by this same defendant to award damages on a collective basis to thousands of drivers on summary judgment, in one fell swoop. *Julian*, 2019 U.S. Dist. LEXIS 221423, at *18.  In any event, Defendants' contention that its standardized records will pose manageability challenges is an issue for class certification, not the pleadings.

As another example, Defendants contend that Plaintiffs fail to allege so-called "objective criteria", such as "driver routes, crossover of state lines, detours, traffic or construction" that purportedly would enable identification of drivers who have spent sufficient time in New York to meet the definition of Class B. *See* Ds' Brief at p. 12.  Defendants do not explain how these vague labels could promote ascertainability, if added to the class definitions. *Cf. id.* Regardless, it is premature before discovery to determine whether and to what extent such purported "criteria" could provide an objective basis to define the boundaries of the class.  For example, Plaintiffs need to conduct discovery regarding Defendants' operations and policies to determine whether "driver routes" are categorized in such a manner by Defendants such that they could serve as an objective criterion for ascertaining membership in proposed subclass B.  This example only further demonstrates why ascertainability challenges are reserved for the class certification stage.

### d.  Defendants' Challenges to the Standing of Unnamed Class Members are Both Premature and Unpersuasive

Defendants do not contend that Plaintiffs lack standing, but rather that the class claims should be stricken based on speculation that some putative class members may lack standing. Defendants' contentions are unpersuasive, for several reasons.

First, questions of standing for putative class members are premature at the pleadings stage. *See, e.g., N.Y. v. UnitedHealth Grp. Inc.*, 2018 U.S. Dist. LEXIS 62301, at *6 (S.D.N.Y. Apr. 6,

2018) (standing challenge was "procedurally premature" before class certification) (citation omitted); *Calibuso v. Bank of Am. Corp.*, 893 F. Supp. 2d 374, 378 (E.D.N.Y. 2012); *Fernandez v. Kinray, Inc.,* 2014 U.S. Dist. LEXIS 178422, at *32 (E.D.N.Y. Dec. 30, 2014).   Again, Defendants rely on authorities that were decided at class certification, not at the pleadings stage. *See Denney,* 443 F.3d at 253 (appellate decision affirming a trial court order granting class certification and rejecting the defendant's standing argument); *In re Fosamax,* 248 F.R.D. at 397, (conducting class certification analysis in the mass tort context); *Kinkead, Inc.*, 330 F.R.D. at 346 (addressing standing on  motion for class certification); *see also Indergit v. Rite Aid Corp.*, 2009 U.S. Dist. LEXIS 42739, 2009 WL 1269250, at *4 (S.D.N.Y. May 4, 2009) ("In short, once a named plaintiff establishes individual standing, the issue of whether a named plaintiff can assert claims on behalf of absent class members is determined at the class certification stage of the litigation.").

Second, as Defendants' own authorities point out, Plaintiffs in a class action need not provide evidence of standing for putative class members. *See Denney,* 443 F.3d at 263 ("Those represented in a class action are passive members and need not make individual showings of standing.") (quoting *Rozema v. The Marshfield Clinic*, 174 F.R.D. 425, 444 (W.D. Wis. 1997)); *see also PBA Local No. 38 v. Woodbridge Police Dep't*, 134 F.R.D. 96, 100 (D. N.J. 1991) ("Once it is ascertained that there is a named plaintiff with the requisite standing [], there is no requirement that the members of the class also proffer such evidence."). Again, Defendant does not challenge the standing of the named Plaintiffs here.

Third, Defendants wrongly suggest that putative class members lack standing because they purportedly "did not suffer the same injury as Plaintiffs." *Cf*. Ds' Brief at p. 8.  Defendants' contention is premised on the conclusory assertion that some members of the putative classes may

not make overnight trips, and thus may have worked fewer hours than others. *See id.* This is just more speculation before discovery on Defendants' part. But even crediting Defendants' assumptions, there is no requirement that all members of a putative class work the same hours. Rather, "[t]he differences among the Plaintiffs as to the number of hours worked, the precise work they did, and the amount of pay they received concern the amount of damages to which any individual Plaintiff might be entitled if and when liability is found, not the amenability of the plaintiffs' claims to the class action form." *Flores v. Anjost Corp.*, 284 F.R.D. 112, 127 (S.D.N.Y. 2012) (citation omitted). Indeed, differences in damages do not alone defeat class certification, much less justify striking class allegations at the pleadings stage. *See Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 409 (2d Cir. 2015); *Vargas v. Howard*, 324 F.R.D. 319, 329 (S.D.N.Y. 2018); *Romero v. La Revise Assocs., L.L.C.*, 58 F. Supp. 3d 411, 419 (S.D.N.Y. 2014). To the contrary, a class may be certified even if it includes members who did not suffer an injury. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1049-50 (2016); *id.* at 1050 (Roberts, J., concurring with judgment granting class certification despite undisputed fact that certified class contained "hundreds of uninjured employees").

Fourth, Defendants take an artificially narrow reading of Plaintiffs' Complaint to argue that the putative classes must include individuals who were not injured. Defendants presume that because sleeper berths purportedly "animate the crux of [Plaintiffs'] claims," any class members who did not use sleeper berths or make overnight trips could not have been injured. *Cf.* Ds' Brief at pp. 8-9. Defendants cite no authority for their argument that an allegation of injury must use language that "animates the crux" of the claims. Nor does it follow that some class members here would have disparate claims, even assuming some of them may not have transported loads overnight or used sleeper berths. Plaintiffs claim that Defendants failed to pay their Drivers for

15

non-driving time during which they are subject to the control of the company.  This includes sleeper berth time, but it also includes time that Swift requires and/or suffers and permits the drivers to work off-the-clock to perform other non-driving tasks (e.g., fueling, inspections, truck break downs, etc.), which do not hinge on overnight trips and occur in addition to the unpaid sleeper berth time. *See*, *e.g.*, Second Amended Complaint (SAC), Dkt. No. 36, at ¶¶ 50-55. Depending on discovery, narrowing the class definitions to only those individuals who used the sleeper berth may improperly exclude putative class members who were injured by the same policy of not paying drivers for non-driving work, even if they did not make overnight trips.

Furthermore, adopting the limitations to the class definition suggested by Defendants would require Plaintiffs to use an impermissible "fail-safe" class definition whereby inclusion in the class would be contingent on prevailing on the claims. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 528 (S.D.N.Y. 2018) ("…fail-safe classes create manageability problems bearing on superiority under Rule 23(b)(3), are fundamentally unfair, or render the proposed class unascertainable.") (internal citations omitted).  For instance, Defendants' suggestion that Plaintiffs should seek to represent only those drivers who "worked 24 hours a day" presumes the merits of Plaintiffs' claim that all non-driving time during a tour of duty is compensable, thereby preventing identification of class members until after liability is determined. *Cf.* Ds' Brief at pp. 8-9; *Garcia v. Execu/Search Grp., LLC,* 2019 U.S. Dist. LEXIS 26291, at *7, 2019 WL 689084 (S.D.N.Y. 2019) ("Fail-safe classes are 'unmanageable because the members of the class could only be known after a determination of liability.'") (citing *Mazzei v. Money Store*, 288 F.R.D. 45, 55 (S.D.N.Y. 2012)).  Among other manageability problems, Defendants' proposal would make it impossible to identify class members in order to notify them if a class is certified.

Moreover, Defendants' authorities are distinguishable because they involved class allegations that were so threadbare or legally deficient that it was plain from the face of the complaint that absent class members could not bring claims and/or it was impossible to determine who would be included in the proposed class. For instance, in *Borgese v. Baby Brezza Enter.*, the Court struck the class allegations after determining that it was unable to conduct an analysis of variations in state law necessary to determine who other than the named plaintiffs could bring suit, because plaintiffs had failed to plead the states where the allegedly defective products were sold. 2021 U.S. Dist. LEXIS 30216, at *7-8. Similarly, in *PFT of Am., Inc. v. Tradewell, Inc.*, 1999 U.S. Dist. LEXIS 3870 (S.D.N.Y. Mar. 31, 1999), the court struck the class claims where the complaint contained "no facts from which it [could] be determined that there [wa]s any basis other than speculation as to whether there [we]re other members of the class." *Id*. at *4. Not so here, where putative class members are identifiable from Defendants' records.

In *Sanders v. Apple, Inc.*, the District Court struck the class allegations because the claims required such an individualized evidentiary showing of reliance that the case could not be maintained as a class action. 672 F. Supp 2d 978, 991 (N.D. Cal. 2009). Here, there is no analogous reliance element raising individualized inquiries, but rather only Defendants' conclusory assertion that determining which class members made overnight trips will require individualized inquiries. *Cf.* Ds' Brief at pp. 9-10. This unsubstantiated assertion is not only called into question by Defendants' own representations about their DOT logs, *see* Section III(c), *supra*, but also is insufficient to support striking the class allegations at the pleadings stage.

In addition to being inapposite, the reasoning in *Sanders* also has been roundly criticized. For instance, in *Tasion Commc'ns., Inc. v. Ubiquiti Networks*, 2014 U.S. Dist. LEXIS 35455, at *9 (N.D. Cal. Mar. 14, 2014), the District Court criticized *Sanders* for following the disfavored

approach of striking class allegations at the pleadings stage under Rule 12(f). *Id*. at *9 ("…the Court finds that the viability of this case law is questionable…").  *Sanders* also relied on *Adashunas v. Negley*, 626 F.2d 600, 604 (7th Cir. 1980), which has since been called into question by a subsequent Seventh Circuit decision for prematurely striking class allegations before sufficient discovery. *Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*, 571 F.3d 672, 677-678 (7th Cir. 2009) (criticizing *Adashunas*, and reasoning that "a class will often include persons who have not been injured by the defendant's conduct; inevitable because at the outset of the case many of the members of the class may be unknown, or if they are known still the facts bearing on their claims may be unknown. Such a possibility or indeed inevitability does not preclude class certification, [] despite statements in some cases that it must be reasonably clear at the outset that all class members were injured by the defendant's conduct.") (citations omitted).

For all these reasons, Plaintiffs' strongly dispute Defendants' contention that the current class definition is overly broad.  However, even if the Court deemed the definition to be overbroad in some respect, the correct remedy is not to strike the class allegations for lack of standing, as Defendants request, but rather to narrow the definition. *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993) ("A court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly.").

### e.  Defendants' Contentions Regarding Extraterritorial Application of the NYLL Present, at Most, a Common Merits Dispute that is Premature for the Pleadings Stage

Without citing any binding authority, Defendants contend that only employees who spend the majority of their time in New York can bring claims under the NYLL, and that the NYLL does not apply extraterritorially. *Cf*. Ds' Brief at pp. 10-11.  At most, Defendants' contention presents a common dispute for the merits phase.  Contrary to Defendants' arguments, several cases have found that employees are *not* precluded from bringing NYLL claims for work performed outside

18

of New York and/or where they may not spend the majority of their time in New York. *See, e.g.,* *Solouk v. European Copper Specialties, Inc*., 2019 U.S.Dist. LEXIS 81267, \*47-50 (S.D.N.Y., May 2, 2019) (employees who performed in New Jersey incident to public works project in Manhattan were not precluded form asserting claims under NYLL); *Heng Guo Jin v. Han Sung Sikpoom Trading Corp.*, 2015 U.S.Dist. LEXIS 125961, at \*23-26 (E.D.N.Y., Sept. 21, 2015) (New York-based delivery truck driver who made deliveries both in and out of state was not precluded from bringing NYLL claims); *Hernandez v. NJK Contractors, Inc.*, 2015 U.S.Dist. LEXIS 57568, at \*121-22 (E.D.N.Y., May 1, 2015) (New York-based workers were not precluded from recovering under NYLL for travel time to and from job site in neighboring state).

For instance, in *Heng Gio Jin*, the plaintiff was a delivery driver for a wholesale fruit distributor who alleged wage and hour claims under the NYLL for unpaid time spent working within and outside of New York. 2015 U.S. Dist. LEXIS 125961 at \*4-5.  The issue there was whether the plaintiff's time spent delivering to customers outside the state of New York was covered by the NYLL. Defendant argued that "NYLL claims must fail to the extent they encompass time [plaintiff] spent transporting goods to out-of-state buyers…" *Id.* at \*23 (internal citations omitted).  The Court disagreed, and denied the Defendant's motion for summary judgment on the grounds that the plaintiff's out of state time could be covered by the NYLL because he was a New York-based employee who began and ended his work within the state of New York—even though he spent a "substantial" amount of time outside of New York. *Id*. at \*26. *Heng Gio Jin* is on point.

In the absence of binding authority barring claims under the NYLL for truck drivers who may work in multiple states, the questions of whether the putative classes here have had sufficient contacts with New York to bring claims under the NYLL, and/or whether they can recover for

time spent outside of New York, are premature before discovery. Similarly, Defendants' contention that answering these questions will raise individual inquiries is speculative at this stage, and should be addressed after the record is developed.  In the meantime, defining the classes according to Defendants' disputed reading of the law would be premature, and might well improperly exclude class members with viable claims.

## IV.   DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED

### a.   Plaintiffs' Detailed Allegations are More Than Sufficient to Meet the Pleading Standard for Overtime Claims in the Second Circuit

To state a claim for overtime, "Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Nakahata v. New York-Presbyterian Healthcare Sys.*, 723 F.3d 192, 201 (2d Cir. 2013).

Allegations of a regular work schedule requiring more than 40 hours of work per week are sufficient to support a reasonable inference of more than 40 hours in at least one workweek.  For example, in *Kuck v. Planet Home Lending, LLC*, 354 F. Supp 3d 162 (E.D.N.Y. 2018), the two named plaintiffs alleged they worked ten and eleven hours a day, respectively, for 6 days a week, for a total of fifty to fifty-five hours a week, every week of their employment, and yet received no overtime compensation. *Id.* at 167-68.  Like Defendants here, the defendants in *Kuck* argued that the allegations lacked sufficient detail because they purportedly relied on mere generalizations about the amount of time worked. But the Court disagreed, reasoning that "the [p]laintiffs are not merely claiming that they 'occasionally,' 'typically,' or 'regularly' worked more than 40 hours in some weeks. Rather, the Second Amended Complaint alleges that the Plaintiffs worked 50-55 hours during every single week of their employment." *Id.* at 168.  "These allegations clearly satisfy

the Second Circuit's edict that a complaint contain specificity as to as to uncompensated hours worked during a particular week." *Id.*

*Kuck* is just one of many cases following *Nakahata* and other binding Second Circuit authority to hold that allegations of a regular work schedule of more than 40 hours of work per week are sufficient to state a claim for overtime. *See, e.g., Humphrey v. RAV Investigative & Sec. Servs.*, 169 F. Supp. 3d 489, 496-97 (S.D.N.Y. 2016) (finding overtime claims sufficiently pled where the plaintiffs alleged a regular work schedule and estimated their weekly unpaid hours, without specifying alleged violations in a particular workweek); *Shen v. John Doe Corp.*, 2016 U.S. Dist. LEXIS 172232, at *5 (S.D.N.Y. Dec. 13, 2016) ("[T]he complaint alleges that the plaintiffs worked thirty-two hours of overtime and were not compensated for that time in every week that they worked for the defendants. . ."), report and recommendation adopted, 2017 U.S. Dist. LEXIS 146051 (S.D.N.Y. Jan. 11, 2017); *Smith v. Mercy Med. Ctr.*, 2017 U.S. Dist. LEXIS 113860, at *20 (E.D.N.Y. June 6, 2017) (denying motion to dismiss based on allegations of work in excess of 40 hours "every week"); *Neil v. Sidney W. Barbanel Consulting Eng'r, LLC*, 2014 U.S. Dist. LEXIS 110759, at *4 (E.D.N.Y. Aug. 11, 2014) (denying motion to dismiss based on allegations that the plaintiff "worked up to 62 hours a week, without any time off, each and every week."); *Perry v. City of N.Y.*, 2013 U.S. Dist. LEXIS 177396, at *3 (S.D.N.Y. Dec. 17, 2013) ("Plaintiffs clearly 'get beyond' the forty hour requirement . . . in every week of the year for those in Platoon D.").

Here, Plaintiffs' allegations are even more detailed than those that passed muster in the cases cited above.  Plaintiffs not only allege a regular work schedule exceeding 40 hours every workweek, but also make extensive, detailed factual allegations that provide additional context supporting a reasonable inference regarding the amount of unpaid time, including: the time periods

of their employment; the amount of days they worked per week; the geographic areas covered by their routes; the number of routes driven per week; and the amount of hours spent driving, in the sleeper berth while subject to the company's control, and performing various other non-driving tasks, on a daily basis, such as fueling, inspections, maintenance and the like; among other details. *See* SAC, Dkt. No. 36 at ¶¶ 57-77, 47, 50, 53-55. Indeed, Plaintiffs' allegations that they worked 5-6 days per week and incurred 10 or more hours of unpaid sleeper berth time per workday are alone sufficient to state a claim for overtime, because the alleged unpaid sleeper berth time amounts to more than 40 hours per week. *See id*. at ¶¶ 61, 67, 73.

Rather than addressing these detailed allegations head-on, Defendants assert in a conclusory manner that the class allegations are too vague. For instance, Defendants attempt to portray Plaintiffs' allegation that they incurred 24 hours of compensable time during each workday as "generic." *Cf*. Ds' Brief at p. 14. But again, New York District Courts regularly hold that allegations of a work schedule requiring more than forty hours of work during every workweek are sufficient to sustain an overtime claim at the pleadings stage. *See, e.g., Kuck*, 354 F. Supp 3d at 168; *Humphrey*, 169 F. Supp. 3d at 496; *Shen*, 2016 U.S. Dist. LEXIS 172232 at *5.

Moreover, Plaintiffs' allegation that they had 24 hours of compensable time per workday is not "generic," but rather consistent with their theory of liability that Defendant's policies required the drivers to remain on duty and subject to the control of the company throughout their tours of duty transporting freight. If Plaintiffs are correct, they will be entitled to compensation for all 24 hours per day spent on their tours of duty. Defendants may dispute Plaintiffs' contention that they were continuously on duty, but on a motion to dismiss, courts "take all factual allegations as true and draw all reasonable inferences in the plaintiff's favor." *Nakahata*, 723 F.3d at 197.

Next, Defendants protest that Plaintiffs' detailed allegations still are insufficient because

they do not allege a specific number of unpaid hours in a specific workweek. But as shown by the case law cited above, there is no such technical requirement. Rather, Plaintiffs merely are required to provide sufficient detail to raise the "reasonable inference" of at least one workweek of more than forty hours. *See Nakahata*, 723 F.3d at 201.

Nor is Defendants' rigid interpretation supported by the leading Second Circuit authorities. Defendants cite *Nakahata*, *supra*, *Lundy v. Catholic Health Sys of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013), and *DeJesus v. HF Mgmt. Servs.*, 726 F.3d 85 (2d Cir. 2013) for the proposition that Plaintiffs must pinpoint the precise amount of hours worked in specific workweeks, but the deficiency in those cases was the lack of "sufficient factual information" to raise a reasonable inference of unpaid overtime, not the failure to allege specific workweeks and hours. *See Kuck*, 354 F. Supp. 3d at 168 (discussing *Nakahata*, *Lundy* and *DeJesus*). For instance, in *Lundy* and *Nakahata*, the plaintiffs made the vague allegation that although they were scheduled to work *less* than 40 hours per week, additional unpaid work occasionally took them over the 40-hour threshold. *Lundy*, 711 F.3d at 114-15; *Nakahata*, 723 F.3d at 201. *DeJesus* explained that the claims in *Lundy* failed 'because of arithmetic: tallying the plausible factual allegations, we could not get beyond forty hours in any given week[.]" 726 F.3d at 88-89. In contrast, the Plaintiffs here have alleged specific work schedules and routes that required them to work between 120 hours (Plaintiff Bell) and 144 hours (Plaintiffs Hobbs and Shaw), every workweek. SAC, Dkt. No. 36 at ¶¶ 61, 67, 73.

Moreover, meeting the level of precision demanded by Defendants would require Plaintiffs to substantiate their allegations with company records that Defendants have withheld up to this point, such as DOT logs showing the precise amount of unpaid sleeper berth time incurred in specific workweeks. *See* SAC, ¶ 58. This is at odds with the foundational *Mt. Clemens* standard, whereby in the absence of adequate company records, employees are entitled to prove the extent

of their unpaid work using reasonable estimates of their hours of work and compensation. *See Anderson v. Mt. Clemens*, 328 U.S. 680, 687 (1946); *Tyson Foods*, 136 S. Ct. at 1040; *see, e.g., Julian*, 2019 U.S. Dist. LEXIS 221423, at *13-18 (applying *Mt. Clemens* standard in analogous case against Defendant Swift, and awarding minimum wage damages to certified collective on summary judgment, based on just and reasonable inferences).   Defendants' approach would absurdly require dismissal of claims before discovery because of a purported lack of precision that only the unproduced company records would show, despite binding authority permitting proof at the *damages* phase of the case by inherently imprecise "inferences," in the absence of such records. *See Tyson Foods*, 136 S. Ct. at 1047.

### b.  Plaintiffs' "Spread of Hours" Claim is Well-Pled

Defendants repackage their argument for dismissal of the overtime claim, contending that Plaintiffs purportedly failed to allege a particular day for which they were not compensated "for a spread-of-hours situation." Ds' Brief. at p. 16.  But as with the overtime claim, Plaintiffs allege that they worked over ten hours during every day they were on a tour of duty working for Defendants, and were not paid a spread of hours penalty.  As with the overtime claim, Plaintiffs' allegation of 10 hours per workday of unpaid sleeper berth time alone passes muster.  Thus, Plaintiffs' allegations are more than sufficient under applicable law. *See, e.g., Zokirzoda v. Acri Café, Inc.,* 2020 U.S. Dist. LEXIS 11747, at *7 (S.D.N.Y. Jan 22, 2020) (finding the plaintiff's "spread of hours" claims sufficiently pled where she alleged a regular schedule requiring over ten hours of work per day).

### c.  If a Class is Certified, Plaintiffs Should be Permitted to Add Class Representatives Who Have Standing to Pursue Injunctive Relief

If this case is certified as a class action, numerous class members will have standing as current employees to pursue injunctive relief.  Even "[w]here the claims of class representatives

are rendered moot, the court may substitute appropriate representatives with live claims." *Villalpando v. Exel Direct Inc.*, 2015 U.S. Dist. LEXIS 118065, at *133 (N.D. Cal. Sep. 3, 2015). If a class is certified, Plaintiffs should be permitted to "substitute in individuals who have standing to pursue the injunctive relief claim." *See id*.   In the meantime, the allegations concerning injunctive relief should not be stricken with prejudice.

## V.   CONCLUSION

For all the foregoing reasons, the Court should deny Defendants' Motion to Dismiss and to Strike.

DATED:  July 8, 2021                         **SCHNEIDER WALLACE**
                                             **COTTRELL KONECKY LLP**


                                             By: */s/ Nathan B. Piller*
                                                    Nathan B. Piller, *Admitted Pro Hac Vice*
                                                    Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing document with the Clerk of the

Court for United States District Court, Southern District of New York, by using the Court's

CM/ECF system on July 8, 2021.

I certify that all participants in the case are registered CM/ECF users and that service will

be accomplished by the Court's CM/ECF system.


By: */s/ Nathan B. Piller*
Nathan B. Piller, *Admitted Pro Hac Vice*
Attorneys for Plaintiffs