```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _1/12/2022_
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TAVARES HOBBS, RICARDO BELL, and ROBERT SHAW, on behalf of themselves and all others similarly situated,

       Plaintiffs,

-against-

KNIGHT-SWIFT TRANSPORTATION HOLDINGS, INC., and SWIFT TRANSPORTATION CO. OF ARIZONA, LLC,

       Defendants.

21 Civ. 1421 (AT)

**ORDER**

ANALISA TORRES, District Judge:

  Plaintiffs Tavares Hobbs, Ricardo Bell, and Robert Shaw bring this putative class action against Defendants Knight-Swift Transportation Holding, Inc., and Swift Transportation Co. of Arizona, LLC (collectively, "Knight-Swift"), alleging that Defendants violated the New York Labor Law ("N.Y.L.L.") by failing to properly compensate Plaintiffs for off-the-clock work, pay minimum wage, pay overtime compensation for off-the-clock work, provide spread-of-hours pay, and provide accurate itemized wage statements. *See* Second Amend. Compl. ¶¶ 86–127, ECF No. 36; *see also* N.Y.L.L. §§ 190 *et seq.*, 195, 650 *et seq.*; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4. Defendants move under Federal Rule of Civil Procedure 23(d)(1)(D) to strike Plaintiffs' class allegations and proposed class definitions, under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' claims for overtime and spread-of-hours pay for failure to state a claim, and under Federal Rule of Civil Procedure 12(b)(1) to dismiss Plaintiffs' claims for injunctive and declaratory relief for lack of standing. Defs. Mem. at 1, ECF No. 40-3. For the reasons stated below, Defendants' motions are DENIED.

**BACKGROUND**

The following facts are taken from the second amended complaint and are presumed to be true for the purposes of this order. *See Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 398 (2d Cir. 2015).

Knight-Swift employs hundreds of truck drivers, who haul freight in long-haul semi-trucks either alone, or as part of a two-driver team. Second Amend. Compl. ¶ 3. Knight-Swift's trucks contain a sleeper-berth, a small space with a bed located in the truck's cabin, *id.* ¶ 31, as well as a camera that monitors drivers when they are in the trucks, *id.* ¶ 43. Department of Transportation ("DOT") safety regulations require drivers to log ten consecutive hours as "off-duty" after they have driven for eleven hours. *Id.* ¶ 38. Knight-Swift requires its drivers to remain with the truck for those ten hours to ensure the security of the loads and enable the trucks to move as efficiently as possible. *Id.* ¶¶ 43, 45. This requirement extends to drivers' sleeping time, which must take place in the truck's sleeper berth. *Id.* ¶¶ 38–43. Knight-Swift remains in communication with drivers during their ten-hour rest period and occasionally requests that drivers handle discrete tasks, respond to instructions, or report information. *Id.* ¶ 44. Knight-Swift also requires drivers to remain with the truck during DOT-mandated thirty-minute "off-duty" breaks, and occasionally makes other requests while drivers are purportedly "off-duty". *Id.* ¶ 54.

Knight-Swift drivers log their time in an electronic system as either "driving" time, "on-duty, not driving" time, "off-duty" time, and "sleeper berth" time. *Id.* ¶ 9. Knight-Swift pays its drivers one rate for "driving" time and a lesser rate for certain periods of "on-duty, not driving" time, which can include waiting time between loads, pre- and post-trip vehicle inspections, fueling, weighing, and other tasks. *Id.* ¶¶ 35, 50–52. It does not pay drivers for "off-duty" time

or "sleeper-berth" time. *Id.* ¶¶ 35, 53. Knight-Swift provides its employees wage statements that reflect these payment practices. *Id.* ¶ 56.

Hobbs, Shaw, and Bell all previously worked as truck drivers for Knight-Swift. *Id.* ¶¶ 61, 67, 73. Hobbs was employed by Knight-Swift from July 2019 to March 2020 as a solo truck driver. *Id.* ¶ 61. His regular schedule required him to work approximately 24-hours a day, six days a week, including the time spent driving, doing non-driving work tasks, and taking breaks where he was required to remain with the truck. *Id.* Hobbs was paid between $900 and $1,100 a week, resulting in a weekly salary of approximately $1,000 for 144 hours of work. *Id.* His regular route took him through New York City and upstate New York. *Id.*

Shaw worked for Knight-Swift as a solo driver from March 2017 to October 2017. *Id.* ¶ 67. His regular schedule also required him to work approximately 24-hours a day, six days a week. *Id.* Shaw was typically paid approximately $570 per week for a total of 144 hours of work. *Id.* His regular route took him from Johnstown, New York, to New York City and Long Island, and back. *Id.*

Bell was employed by Knight-Swift from June 2016 to January 2017. *Id.* ¶ 73. He initially began working as part of a two-driver team, but then transitioned to working as a solo driver. *Id.* ¶ 72. In both of his roles, Bell's regular schedule required him to work approximately 24-hours a day, five days a week. *Id.* ¶ 73. He was paid between approximately $800 and $1,450 per week, resulting in an average of $1,000 per week for 120 hours of work. *Id.* ¶ 73. His regular route took him from Amsterdam, New York, to the Bronx, and back. *Id.*

While working for Knight-Swift, all three Plaintiffs were not compensated at 1.5 times the minimum wage rate for the hours they worked in excess of 40 hours in a given week, and

they did not receive "spread-of-hours" pay for working more than ten hours in a day. *Id*. ¶¶ 62, 64, 68, 70, 74, 76.

Plaintiffs filed their complaint on February 17, 2021, ECF No. 1, and amended it twice—on March 17, ECF No. 13, and May 19, 2021, Second Amend. Compl. In their second amended complaint, Plaintiffs assert that they are bringing their N.Y.L.L. claims on behalf of two classes of people. *Id*. ¶ 78. They defined the classes as follows:

> Class A: All current and former truck drivers who have been employed by Defendants while being based out of a work location in New York state at any time beginning six years before the filing of this Complaint until resolution of this action[]; and
>
> Class B: All current and former truck drivers who have been employed by Defendants while being based out of a work location outside of New York state, but who had one or more tours of duty and/or routes that necessitated being in New York state for more than 40 hours during at least one workweek at any time beginning six years before the filing of this Complaint until resolution of this action.

*Id*. (quotation marks omitted).

**ANALYSIS**

I. Rule 12(b)(6) Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A plaintiff is not required to provide "detailed factual allegations," but he must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555. Although courts must "draw all reasonable inferences in [the] [plaintiff's] favor [and] assume all well-pleaded factual allegations

4

to be true," they are not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quotation marks and citations omitted).

    A. <u>Overtime Claims</u>

Overtime claims under the N.Y.L.L. are evaluated under the same standards as claims under the federal Fair Labor Standard Act ("FLSA"). *See Limauro v. Consol. Edison Co. of N.Y., Inc.*, No. 20 Civ. 3558, 2021 WL 1226872, at *2 (S.D.N.Y. Mar. 31, 2021). As the Second Circuit has explained, to survive a motion to dismiss a claim based on the FLSA overtime requirement, "[p]laintiffs must allege sufficient factual matter to state a plausible claim that they worked compensable overtime in a workweek longer than 40 hours." *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013). A plaintiff must show that she worked "40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Id*. Moreover, a plaintiff is required to "provide sufficient detail about the length and frequency of [her] unpaid work to support a reasonable inference that [she] worked more than forty hours in a given week." *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013).

"Determining whether a plausible claim has been pled is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Lundy*, 711 F.3d at 114 (quoting *Iqbal*, 556 U.S. at 679). Although courts do not require "plaintiffs to keep careful records and plead their hours with mathematical precision," they have recognized that plaintiffs must draw on their memories and experiences to develop complaints with sufficient factual allegations. *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013).

Moreover, although approximations of overtime hours are not a necessity in all cases, they "may help draw a plaintiff's claim closer to plausibility." *Id*. at 88 (quoting *Lundy*, 711 F.3d at 114).

The Second Circuit has decided three cases assessing whether a plaintiff's allegations satisfy this pleading standard. In *Lundy*, the Second Circuit determined that the plaintiffs failed to state an overtime claim because the hours they alleged did not add up to over forty hours in a given week. *See Lundy*, 711 F.3d at 114–15. These allegations "failed because of arithmetic: tallying the plausible factual allegations, [the court] could not get beyond forty hours in any given week, and therefore to a plausible claim for overtime." *Dejesus*, 726 F.3d at 88–89. In *Nakahata*, the Second Circuit found that the plaintiffs' allegations failed because the plaintiffs did not allege that they "were scheduled to work forty hours in a given week." *Nakahata*, 723 F.3d at 201. Rather, the plaintiffs merely alleged that they were not compensated for work during breaks, training sessions, and extra shift time. *See id*. Moreover, in *Dejesus*, the Second Circuit determined the plaintiff's claims failed because "[s]he did not estimate her hours in any or all weeks or provide any other factual context or content." *Dejesus*, 726 F.3d at 89.

When interpreting these decisions, district courts have noted that "[t]he most salient corollary from the *Lundy–Nakahata–Dejesus* triumvirate is that an FLSA plaintiff must provide a certain degree of specificity as to uncompensated hours worked during a particular week." *Chime v. Peak Security Plus, Inc.*, 137 F. Supp. 3d 183, 196 (E.D.N.Y. 2015) (emphasis omitted). "[A]llegations that a plaintiff 'typically,' 'occasionally,' or 'regularly' worked more than forty hours a week, without more, are insufficient to state a claim." *Limauro*, 2021 WL 1226872, at *2; *see also Kuck v. Planet Home Lending, LLC*, 354 F. Supp. 3d 162, 168–69 (E.D.N.Y. 2018) (collecting cases). But, allegations that the plaintiff worked over forty hours a week, every week, "clearly satisfy the Second Circuit's edict that a complaint contain specificity

as to uncompensated hours worked during a particular week." *Kuck*, 354 F. Supp. 3d at 168. To hold otherwise would render plaintiffs "unable to pursue claims for FLSA overtime violations based on allegations that their employer systematically denied them overtime pay over the course of their entire employment," and "[t]he Second Circuit certainly could not have intended such an outcome." *Id*. at 170.

Here, the Court finds that Plaintiffs' allegations plausibly show that they worked more than 40 compensable hours in a workweek. As Defendants concede, Plaintiffs allege "that each and every week of their employment was the same, without deviation in duties performed or hours worked, such that they always worked 24 hours per day every day of their employment." Defs. Reply Mem. at 13, ECF No. 45; Defs. Mem. at 16. Defendants contend that these allegations are "implausible," but they state no reason as to why the Court should agree. *See* Defs. Mem. at 16; Defs. Reply at 14. Indeed, Plaintiffs' support their allegations with facts that make it plausible that they did work for 24-hours a day. Specifically, they assert that they were confined to their work location, responsible for monitoring the security of their loads, and performing various duties for Defendants for the entirety of the time they were on their routes, even when they were in their sleeper-berths or otherwise "on break." *See*, *e.g.*, Second Amend. Compl. ¶¶ 5, 8, 11, 33, 37, 60, 61, 66, 67, 72, 73; *cf. Wooldridge v. Gateway Transp. of Ga., Inc.*, No. 19 Civ. 53, 2019 WL 2610904, at *5 (N.D. Ga. June 24, 2019), *adopted*, No. 19 Civ. 53, 2019 WL 5549274 (N.D. Ga. July 12, 2019); *Sanders v. W. Express, Inc.*, No. 20 Civ. 3137, 2021 WL 2772801, at *8 (E.D. Wash. Feb. 11, 2021). Thus, accepting all of Plaintiffs' allegations as true, Plaintiffs have provided sufficient detail to support a reasonable inference that they worked more than forty hours in a given week. *See Nakahata*, 723 F.3d at 201; *Kuck*, 354 F. Supp. 3d at 168. Moreover, Plaintiffs have provided a range of approximate weekly

salaries that sufficiently show that, for at least some of the weeks they worked for Defendants, they were not adequately compensated for all of the hours they worked. *See* Second Amend. Compl. ¶¶ 61, 67, 73. They have, therefore, shown that they worked some uncompensated time in excess of the forty hours. *See Lundy*, 711 F.3d at 114.

Accordingly, Defendants' motion to dismiss Plaintiffs' overtime claims for failure to state a claim is DENIED.

### B. Spread-of-Hours Claims

Under the N.Y.L.L., employers are required to pay employees for an additional hour every day they work more than ten hours in a day. *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4. Defendants argue that Plaintiffs' spread-of-hours claims fail because they do not "identify any actual instance when Defendants failed to pay [them] for a spread-of-hours situation." Defs. Mem. at 16 (quoting *Hinckley v. Seagate Hosp. Grp., LLC*, No. 16 Civ. 6118, 2016 WL 6524314, at *10 (W.D.N.Y. Nov. 3, 2016)). The Court disagrees.

As explained above, Plaintiffs plausibly allege that they worked 24-hours a day every day. *See* Second Amend. Compl. ¶¶ 61, 67, 73. And, they allege that Defendants did not "provide [them] with 'spread of hours' pay for the every-workday occurrence of working over ten hours in a day." *Id.* ¶¶ 64, 70, 76. These allegations are sufficient to support a spread-of-hours claim under the N.Y.L.L. *Cf. Zokirzoda v. Acri Cafe Inc.*, No. 18 Civ. 11630, 2020 WL 359908, at *3 (S.D.N.Y. Jan. 22, 2020).

Accordingly, Defendants' motion to dismiss Plaintiffs' spread-of-hours claims is DENIED.

II.     Motion to Strike

"Motions to strike are generally looked upon with disfavor [and] a motion to strike class allegations . . . is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) (citation omitted) (alterations in original). These motions "should be granted only when there is a strong reason for doing so." *Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 573 (S.D.N.Y. 2012). Therefore, courts frequently find "that a determination of whether the Rule 23 requirements are met is more properly deferred to the class certification stage, where a more complete factual record can aid the court in making this determination." *Winfield*, 842 F. Supp. 2d at 573. Even when the plaintiff may have difficulty meeting Rule 23's requirements, courts should hesitate before concluding that those requirements cannot be met when such a conclusion is "based on assumptions of fact rather than on findings of fact," and "it remains unknown what class [the plaintiff will seek] to certify." *Chenensky v. New York Life Ins. Co.*, No. 07 Civ. 11504, 2011 WL 1795305, at *4 (S.D.N.Y. Apr. 27, 2011) (quoting *Parker v. Time Warner Ent. Co., L.P.*, 331 F.3d 13, 21 (2d Cir. 2003)). A court can grant a motion to strike class allegations only when the defendants have demonstrated from the face of the complaint that "it would be impossible to certify the alleged class regardless of the facts [the] [p]laintiffs may be able to obtain during discovery." *Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 696 (S.D.N.Y. 2015) (citation omitted).

Defendants first argue that the Court should strike Plaintiffs' class definitions because they include putative members who have not suffered any injury or harm. Defs. Mem. at 8–10. The Court disagrees.

Plaintiffs' second amended complaint defines two classes of drivers they purport to represent:

> Class A: All current and former truck drivers who have been employed by Defendants while being based out of a work location in New York state at any time beginning six years before the filing of this Complaint until resolution of this action[]; and

> Class B: All current and former truck drivers who have been employed by Defendants while being based out of a work location outside of New York state, but who had one or more tours of duty and/or routes that necessitated being in New York state for more than 40 hours during at least one workweek, at any time beginning six years before the filing of this Complaint until resolution of this action.

Second Amend. Compl. ¶ 78 (quotation marks omitted). Because these classes contain "all current and former truck drivers," *id*., Defendants contend that they necessarily include truck drivers who are "outside the population who could have been harmed," Defs. Mem. at 8–9. But, although the Court agrees that these definitions may prove to be too broad to be certified as formulated, the Court cannot make that determination based on the allegations contained in Plaintiffs' second amended complaint. Indeed, Plaintiffs allege that all of Defendants' truck drivers work under substantially similar conditions. *See* Second Amend. Compl. ¶¶ 3–5, 8. Thus, although the facts adduced during class discovery may show that some truck drivers worked under different conditions from Plaintiffs, the Court will not strike the Plaintiffs' class definitions "based on assumptions of fact rather than on findings of fact," *Parker*, 331 F.3d at 21.

Defendants next argue that the Court should strike Plaintiffs' allegations regarding Class A because the class contains truck drivers to whom the N.Y.L.L. does not apply. Defs. Mem. at

10

10–11.  Again, the Court disagrees.  Even if the Court assumes, *arguendo*, that merely being based in New York does not trigger the application of the N.Y.L.L., the Court shall not assume that these drivers do not perform sufficient work in New York state to fall under the N.Y.L.L.'s protections.  In light of the allegations in Plaintiffs' second amended complaint, such a conclusion would be premature.  *See Chen-Oster*, 877 F. Supp. 2d at 117; *Mayfield*, 95 F. Supp. 3d at 696.

Defendants also argue that the Court should strike Plaintiffs' Class B definition because the class is not ascertainable.  *See* Defs. Mem. at 11–12.  This argument is based on the asserted difficulty of determining which Knight-Swift drivers spent more than 40-hours in a given week in New York state.  *See id.*  Here, the Court finds that reaching a conclusion regarding acertainability at this stage in the proceedings would be premature because class discovery should reveal whether or not membership in Class B is "truly indeterminable."  *See Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 567 (S.D.N.Y. 2014) (quotation marks and citation omitted).  The Court cannot reach that conclusion based on the allegations in Plaintiffs' second amended complaint.

Accordingly, Defendants' motion to strike Plaintiffs' class allegations is DENIED.

III.     Rule 12(b)(1) Motion to Dismiss

When assessing a motion to dismiss under Rule 12(b)(1) that is based solely on the allegations in the complaint, courts must "determine whether the [complaint] allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue."  *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (quotation marks and citation omitted).  Courts must "accept[] as true all material [factual] allegations of the complaint," and "draw all reasonable inferences in favor of the plaintiff."  *Id*. at 57 (quotation marks and citation omitted).  Moreover,

"[i]t is appropriate to defer standing objections until after class certification where certification issues are 'logically antecedent to Article III concerns.'" *Winfield*, 842 F. Supp. 2d at 574 (quoting *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999) (quotation marks omitted)).

Here, Defendants argue that the Court should dismiss Plaintiffs' claims for injunctive and declaratory relief because, as former employees, they do not have standing to bring these claims. *See* Defs. Mem. at 17–18. First, it is undisputed that Plaintiffs have standing to bring at least some of their claims. And, if any proposed class includes plaintiffs who are current employees of Defendants, those plaintiffs will have standing to bring claims for injunctive relief. Thus, because the class certification process is logically antecedent to the Article III concerns, the Court shall defer consideration of Defendants' standing objections until after class certification. *See Winfield*, 842 F. Supp. 2d at 574.

Accordingly, Defendants' motion to dismiss Plaintiffs' claims for injunctive and declaratory relief is DENIED without prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motions are DENIED. The Clerk of Court is directed to terminate the pending motions at ECF No. 40.

SO ORDERED.

Dated: January 12, 2022
       New York, New York

                                                    ANALISA TORRES
                                       United States District Judge