**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  2/9/2023
```

Tavares Hobbs, Ricardo Bell and Robert
Shaw, on behalf of themselves and all others
similarly situated,

                                         Plaintiffs,

                    -against-

Knight-Swift Transportation Holdings, Inc.,
et al.,

                                         Defendants.

**1:21-cv-01421 (JLR) (SDA)**

**REPORT AND RECOMMENDATION**

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE JENNIFER L. ROCHON, UNITED STATES DISTRICT JUDGE:**

Pending before the Court are Plaintiffs' motion for class certification, pursuant to Rule 23 of the Federal Rules of Civil Procedure (Pls.' 10/7/22 Not. of Mot., ECF No. 71) and Defendants' motion to deny class certification. (Defs.' 10/7/22 Not. of Mot., ECF No. 67.) For the reasons set forth below, I respectfully recommend that Plaintiffs' motion be DENIED and that Defendants' motion be DENIED AS MOOT.

## BACKGROUND

Plaintiffs Tavares Hobbs ("Hobbs"), Ricardo Bell ("Bell") and Robert Shaw ("Shaw") (collectively, "Plaintiffs") bring this action against Defendants Knight-Swift Transportation Holding, Inc. and Swift Transportation Co. of Arizona, LLC (collectively, "Defendants" or "Swift"), alleging that Defendants violated the New York Labor Law ("NYLL") by failing to properly compensate Plaintiffs for off-the-clock work, pay minimum wage, pay overtime compensation for off-the-clock work, provide spread-of-hours pay and provide accurate itemized wage statements. (*See* Second Amend. Compl. ("SAC"), ECF No. 36, ¶¶ 86-127.)

I.      **Parties**

A.      **Defendants**

Swift is one of the largest trucking companies in the United States. (SAC ¶ 3; Defs.' Am. Ans. To SAC ("Defs.' Ans."), ECF No. 56, ¶ 3.) It operates from three terminals in New York—a facility in Syracuse ("Syracuse Terminal"), a location at a Wal-Mart facility in Johnstown from which it delivers to Wal-Mart retail locations ("Johnstown Terminal") and a location at a Target facility in Amsterdam from which it delivers to Target retail locations ("Amsterdam Terminal"). (Quast 30(b)(6) Dep., ECF No. 68-4, at 21, 25; Damon Decl., ECF No. 69-1, ¶ 4.)

Swift employs three different types of truck drivers—over-the-road ("OTR") drivers, dedicated drivers and local drivers.[1] (*See* Damon Decl. ¶ 5.) In New York, OTR drivers nominally are based out of the Syracuse Terminal and transport loads throughout the country. (*See id*. ¶¶ 4, 6). Dedicated drivers are employed at each of the Syracuse Terminal, the Johnstown Terminal and Amsterdam Terminal. (*See id*. ¶ 8; Williams Decl., ECF No. 69-3, ¶ 6; Mullen Decl., ECF No. 69-2, ¶ 6.) Dedicated drivers deliver merchandise to retail locations of an assigned customer in various States, including New York, Connecticut, Maine, New Hampshire, New Jersey, Pennsylvania and Vermont. (*See* Damon Decl. ¶ 8; Williams Decl. ¶ 4; Mullen Decl. ¶ 4.) Local drivers, who typically make deliveries using trucks without sleeper berths, as a general practice, start and end their day in the same location and are home each night. (*See* Quast 30(b)(6) Dep. at 86-87.)

---

[1] Swift also employs driver-trainees and mentors. (*See* Damon Decl. ¶ 5.)

B.    __Plaintiffs__

Plaintiff Hobbs was employed by Swift as an OTR driver from about May 2019 to March 2020. (*See* SAC ¶¶ 14-15; Hobbs Decl., ECF No. 71-19, ¶ 1; Hobbs Dep., ECF No. 68-5, at 115.) Although Swift asserts that Hobbs was assigned to the Syracuse Terminal (*see* Defs.' 10/7/22 Mem., ECF No. 70, at 3),[2] Hobbs states that he typically picked up loads at a Sears distribution center in Fairless Hills, Pennsylvania,[3] and made deliveries to various locations, including New York City and upstate New York. (*See* Hobbs Decl. ¶ 3; Hobbs Dep. at 80, 84.)

When Hobbs made deliveries for Swift's customer, Kraft, he was not assigned to a particular terminal, but made deliveries "at least one or two times" to upstate New York. (*See* Hobbs Decl. ¶ 2; Hobbs Dep. at 80-81, 84-85.) It was common for him to have to stay out on the road for the night before going back to Fairless Hills to pick up his next load. (*See* Hobbs Decl. ¶¶ 4-5.) Due to his delivery schedule, and the required 10-hour resets,[4] Hobbs was not able to go home more than once a week, and often would need to stay with his truck. (*See id*. ¶¶ 6-15.) He used the sleeper berth in his truck to rest because there were not many hotels where he could park his truck and, in any event, Swift would not pay for a hotel unless his truck broke down. (*See*

---

[2] In support of its assertion that Hobbs was assigned to the Syracuse Terminal, Swift cites to page 53 of Hobbs' deposition transcript. (*See* Defs.' 10/7/22 Mem. at 3 (citing "Hobbs 53:4-10").) However, page 53 does not refer to the Syracuse Terminal, nor is there any mention of the Syracuse Terminal in the entire transcript. (*See generally* Hobbs Dep.) During oral argument, Plaintiffs confirmed that Hobbs was assigned to the Syracuse Terminal for at least some portion of the time he worked for Swift. (1/30/2023 Tr., ECF No. 93, at 3-4.)

[3] During the period of his employment with Swift, Hobbs resided in Pennsylvania. (*See* Hobbs Dep. at 53, 90.)

[4] The safety regulations of the U.S. Department of Transportation ("USDOT") require drivers who have already been driving for 11 hours to log 10 consecutive hours as "off duty" and/or "sleeper berth" before driving again. (SAC ¶ 38.)

*id*. ¶ 17.) Hobbs was not paid for time logged as "sleeper berth" or "off duty."[5] (*See id*. ¶ 19.) The USDOT logs for Hobbs reflect that, during his period of employment with Swift, he was in New York 13 days, and he logged sleeper berth time in New York on a single day, *i.e.*, January 2, 2020. (*See* Hobbs DOT logs, ECF No. 68-15, at PDF pp. 4, 6-9, 12, 14-19.)

Plaintiff Bell was employed by Swift from April 2016 to January 2017—first, as an OTR driver for a brief period, and then as a dedicated driver assigned to the Amsterdam Terminal. (*See* SAC ¶¶ 14, 16; Bell Decl., ECF No. 71-21, ¶¶ 1, 3; Bell Dep., ECF No. 68-7, at 77.) As a dedicated driver, he made deliveries to upstate New York, New York City and parts of Long Island. (*See* Bell Decl. ¶ 5.) For many of his loads, Bell could not make it back to the Amsterdam area until the next day. (*See id*. ¶ 6.) Even when he did make it back to the Amsterdam area within 24 hours, he would park his truck at a truck stop near the Amsterdam Terminal, and use the sleeper berth, so that he would be available to pick up his next load. (*See id*. ¶¶ 8, 18.) Bell was out on the road back and forth to the Amsterdam Terminal for five-day periods before he was able to go home. (*See id*. ¶ 9.) He was not paid for time logged as "sleeper berth" or "off duty." (*See id*. ¶ 21.)

---

[5] As set forth in Discussion Section II, *infra*, per N.Y. Comp. Codes R. & Regs. tit. 17 ("NYCRR") § 820.649, record keeping requirements for truck drivers in New York, including maintaining a logbook of record duty status, are governed by federal regulations contained in 49 C.F.R. Part 395. Under the federal regulations, "on-duty time" is defined as "all time from the time a driver begins to work or is required to be in readiness to work until the time the driver is relieved from work and all responsibility for performing work." 49 C.F.R. § 395.2. "'Off-duty time' is not specifically defined in the regulations[;] [i]n effect, it is any time that is not 'driving time,' 'on-duty time,' or 'sleeper berth' as defined in § 395.2." (*See* Federal Motor Carrier Safety Administration, Hours of Service for Motor Carriers of Passengers, available at https://www.fmcsa.dot.gov/safety/carrier-safety/hours-service-motor-carriers-passengers (last accessed Feb. 9, 2023).

Plaintiff Shaw was employed by Swift for a several month period beginning in March 2017[6] as a dedicated driver and assigned to the Johnstown Terminal. (*See* SAC ¶ 17; Shaw Decl. ¶ 1; Shaw Dep. at 71, 76.) He made deliveries to upstate New York, New York City and parts of Long Island, among other places. (*See* Shaw Dep. at 71.) Most of his delivery destinations were within New York. (*See* Shaw Decl. ¶ 4.) Typically, Shaw's loads required him to be out on the road for more than 24 hours before he could pick up his next load. (*See id*. ¶ 5.) Even when he was able to start the trip from his destination back to the Johnstown Terminal without stopping for his required 10 hours, he often would not make it all the way back to Johnstown and would need to find a truck stop or rest area where he could park and use the sleeper berth in his truck. (*See id*. ¶ 7.) Then, even if Shaw did make it back to the Johnstown area, he would need to park the truck in a truck stop near the Johnstown Terminal to use his sleeper berth. (*See id*. ¶ 8.) He thus would be out on the road for several days at a time before he could go home. (*See id*. ¶ 11.) Shaw was not paid for time logged as "sleeper berth" or "off duty." (*See id*. ¶ 24.)

## II.   **Swift Policies**

Swift's guidelines provide that a driver is "not required to sleep in the truck's sleeper berth," and that the sleeper berth is provided "as a convenience." (*See* Sleeper-Berth Guidelines, ECF No. 68-12.) However, there are other Swift policies that make it impracticable for a driver to sleep anywhere other than in the sleeper berth.

For example, for "high value loads," the Swift Driver Handbook provides that the driver must remain in the truck and that the driver may not leave the truck unattended for any reason,

---

[6] The Shaw Declaration states that he was employed by Swift from March to July 2017, but in his deposition, he testified that he was employed from March to October 2017. (*Compare* Shaw Decl., ECF No. 71-20, ¶ 1, *with* Shaw Dep., ECF No. 68-6, at 71.)

including being checked into a hotel. (*See* Driver Handbook, ECF No. 71-17, at 91.) Regardless of load value, drivers are not permitted to detach their trucks from loaded trailers unless in a Swift terminal or approved drop yard (*see id.* at 16), which restricts the places where a driver can park in order to sleep. Moreover, the Swift Driver Handbook provides that Swift does not pay drivers for lodging when drivers are on the road, unless their truck breaks down, there are no other trucks available and the repairs take longer than 24 hours (*see id.* at 139), thus making a hotel or motel economically disadvantageous.

Swift admits that the bulk of its New York drivers are paid on a mileage-based system, commonly referred to as trip pay.[7] (*See* Defs.' 10/7/22 Mem. at 11.) Thus, Swift does not pay New York drivers for time logged as "sleeper berth," and also does not pay for time logged as "off duty," except in the event of a breakdown or other circumstance that results in "exception" pay. (Quast 30(b)(6) Dep. at 78-79, 91-94.)

## PROCEDURAL HISTORY

On February 17, 2021, Plaintiffs Hobbs, Bell and Shaw filed the Complaint in this action. (*See* Compl., ECF No. 1.) The Complaint, which was filed by Plaintiffs on behalf of themselves and all others similarly situated, alleges that Swift's truck drivers were "paid for only a fraction of the time they spen[t] performing non-driving tasks and/or when required to be in a physical area prescribed by Swift," and asserts claims under the NYLL. (*See id.* ¶¶ 11, 64-104.) In the Complaint, Plaintiffs' proposed class was defined as follows: "All current and former truck drivers who have been employed by Defendants and driven a truck for Defendants in New York at any time

---

[7] Local drivers are paid on an hourly basis (*see* Defs.' 10/7/22 Mem. at 11), but Plaintiffs have excluded these drivers from their latest class definitions. *See* Procedural History section, *infra*.

beginning six years before the filing of this Complaint until resolution of this action." (*See id*. ¶ 56.)

On March 17, 2021, Plaintiffs filed a First Amended Complaint ("FAC") identifying the citizenship of each constituent person and entity of the LLC defendant.[8] (*See* FAC, ECF No. 13, ¶ & Ex. 1.) Plaintiffs' class definition remained the same. (*See id*. ¶ 59.)

On May 19, 2021, Plaintiffs filed their SAC in which they added factual allegations regarding the hours worked by, as well as the compensation paid to, Hobbs, Bell and Shaw. (*See* SAC ¶¶ 57-77.) In addition, Plaintiffs amended their proposed class definition to create two classes, instead of one, as follows:

> Class A: "All current and former truck drivers who have been employed by Defendants while being based out of a work location in New York state at any time beginning six years before the filing of this Complaint until resolution of this action."; and

> Class B: "All current and former truck drivers who have been employed by Defendants while being based out of a work location outside of New York state, but who had one or more tours of duty and/or routes that necessitated being in New York state for more than 40 hours during at least one workweek, at any time beginning six years before the filing of this Complaint until resolution of this action."

(SAC ¶ 78.)

On June 17, 2021, Swift filed a partial motion to dismiss and motion to strike. (*See* Defs.' 6/17/21 Not. of Mot., ECF No. 40.) Swift sought to dismiss Plaintiffs' claims for overtime and spread of hours, as well as Plaintiffs' request for injunctive relief. (*See* Defs.' 6/17/21 Mem., ECF No. 40-3, at 12-18.) Swift also sought to strike Plaintiffs' class definitions and related class

---

[8] On February 19, 2021, the Court had entered an Order requiring this amendment to ensure that the Court had subject matter jurisdiction by reason of diversity of citizenship. (*See* 2/19/21 Order, ECF No. 5.)

allegations. (*See id*. at 6-12.) Swift contended that Plaintiffs' class definitions were overbroad, stating:

> Plaintiffs . . . do not limit either their Class A or Class B definitions to truck drivers who worked 24 hours per day, who drove "long haul" shifts requiring extensive or overnight travel, or who utilized the sleeper berths that animate the crux of their claims. Instead, both Class A and Class B purport to cover "all" truck drivers irrespective of their factual employment circumstances that would cast them outside the population who could have been harmed.

(*See id*. at 7-8.) Swift further contended that the Class A definition was overbroad since it contained truck drivers who spent the majority of their time outside of New York, to whom the NYLL did not apply. (*See id*. at 10-11.) Finally, Swift contended that the Court should strike Plaintiffs' Class B definition because it was not ascertainable, arguing that Plaintiffs had failed to identify "any objective criteria that would resolve membership in Class B and account for factors such as driver routes, crossover of state lines, and detours, traffic, or construction that might impact a driver's time in New York and potential membership in Class B as defined by Plaintiffs." (*See id*. at 11-12.)

By Order dated January 12, 2022, the Honorable Analisa Torres denied Swift's motions. *See Hobbs v. Knight-Swift Transportation Holdings, Inc*., No. 21-CV-01421 (AT), 2022 WL 118256, at *6 (S.D.N.Y. Jan. 12, 2022). With respect to the motion to strike, "although the Court agree[d] that the class definitions may prove to be too broad to be certified as formulated, the Court cannot make that determination based on the allegations contained in Plaintiffs' [SAC]." *See id*. at 5. The Court also stated that any conclusion that the drivers defined in Class A "do not perform sufficient work in New York state to fall under the N.Y.L.L.'s protections . . . would be premature" in light of the SAC's allegations. *See id*. Finally, the Court stated that "reaching a conclusion regarding ascertainability at this stage in the proceedings would be premature because class

discovery should reveal whether or not membership in Class B is truly indeterminable." *See id*. (internal quotation marks omitted).

On January 31, 2022, Judge Torres referred this case to me for general pretrial purposes. (Order of Ref., ECF No. 51.) Following a telephone conference with the parties on February 9, 2022, I entered a Scheduling Order setting a deadline of July 7, 2022 for discovery regarding issues pertaining to class certification. (2/9/22 Scheduling Order, ECF No. 53.) On February 9, 2022, Judge Torres issued an amended order referring to me for a report and recommendation the parties' anticipated motions regarding class certification. (Am. Order of Ref., ECF No. 54.)

On July 7, 2022, I issued an Order regarding a class-related discovery issue and extended the deadline for completion of all class-related discovery until August 8, 2022. (7/7/22 Order, ECF No. 63.) On September 16, 2022, this case was reassigned from Judge Torres to the Honorable Jennifer L. Rochon.

On October 7, 2022, Plaintiffs filed their motion for class certification in which they seek to certify classes three classes, as follows:[9]

> Class A: All current and former truck drivers who have been employed by
> Defendants while being based out of the Walmart Dedicated location in

---

[9] None of these three classes is defined precisely the same way as the classes defined in the initial Complaint, the FAC or the SAC. In their notice of motion, Plaintiffs expressly state that the class definitions quoted in the text above "are intended to supersede the definitions in the [SAC]." (*See* Pls.' 10/7/22 Not. of Mot. at 2.) Swift argues that the Court should "deny Plaintiffs' attempt to modify the class definitions through their" class certification motion. (*See* Defs.' 12/13/22 Opp. Mem., ECF No. 82, at 10-11.) The Court declines to recommend denial of Plaintiffs' motion based upon their modification of the class definitions, as class definitions may be amended at the class certification stage. *See Andres v. Town of Wheatfield*, No. 17-CV-00377 (CCR), 2022 WL 3273891, at *3 (W.D.N.Y. Aug. 11, 2022) ("Courts have recognized 'the ongoing refinement and give-and-take inherent in class action litigation, particularly in the formation of a workable class definition' and have allowed Plaintiffs to amend a class definition even 'in their reply brief' at the certification stage." (citation omitted)).

Johnstown, New York and/or the Target Dedicated location in Amsterdam, New York, at any time from February 17, 2015 until the date of class notice.

Class B: All current and former truck drivers who have been employed by Defendants while being based out of Defendants' Syracuse, New York location, at any time from February 17, 2015 until the date of class notice. Membership in Class B is limited to time logged as "sleeper berth" or "off duty" in New York State.

Class C: All current and former truck drivers who have been employed by Defendants while being based out of a work location outside of New York State, but who have made at least one pickup and/or delivery in New York State and logged sleeper berth time in New York State, at any time from February 17, 2015 until the date of class notice. Membership in Class C is limited to time logged as "sleeper berth" or "off duty" in New York [S]tate.

The Classes exclude the group of Drivers identified by Swift's Rule 30(b)(6) witness as being paid hourly, typically operating a "day cab" truck without a sleeper berth, and who return home every night.

(Pls.' 10/7/22 Not. of Mot. at 2 (emphasis in original).) Also on October 7, 2022, Swift filed its motion to deny class certification. (See Defs.' 10/7/22 Not. of Mot.)[10]

Oral argument was held on January 30, 2023.[11]

## **LEGAL STANDARDS**

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). The Court has discretion on questions of class certification because "the district court is often in the best position to assess the propriety of the class . . . ." *Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 139 (2d Cir. 2001).

---

[10] In making its recommendations set forth herein, the Court has reviewed the parties' filings at ECF Nos. 67 to 71, 79 to 87, 91 and 92.

[11] The oral argument transcript (cited herein as "1/30/23 Tr.") has been transcribed and will be filed on the ECF docket shortly.

"Rule 23 does not set forth a mere pleading standard." *Wal-Mart*, 564 U.S. at 350. Class certification is appropriate where the proposed class meets, by a preponderance of the evidence, following a court's "rigorous analysis," the requirements of Rule 23(a) of the Federal Rules of Civil Procedure and the proposed class constitutes one of the types of classes enumerated in Rule 23(b). *See Wal-Mart*, 564 U.S. at 350; *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) ("The standard of proof applicable to evidence proffered to meet the requirements of Rule 23 is a preponderance of the evidence.") (internal quotation and citation omitted). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 564 U.S. at 351. However, "in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement." *In re Initial Pub. Offerings Secs. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006). Thus, the Court should "refrain from deciding any material factual disputes between the parties concerning the merits of the claims and should accept the underlying allegations from the complaint as true." *Dajour B. ex rel. L.S. v. City of New York*, No. 00-CV-02044 (JGK), 2001 WL 1173504, at *3 (S.D.N.Y. Oct. 3, 2001) (internal citations omitted).

In determining whether the Rule 23 requirements have been met, district courts must "assess all of the relevant evidence admitted at the class certification stage." *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d at 42. That evidence "must be such that it could be received into evidence." *Cokely v. New York Convention Ctr. Operating Corp.*, No. 00-CV-04637 (CBM), 2003 WL 1751738, at *3 (S.D.N.Y. Apr. 2, 2003) (denying class certification motion based on expert's statistical analysis that was "clearly not in a form admissible in court").

The four prerequisites of Rule 23(a) are as follows:

(1) the class is so numerous that joinder of all members is impracticable [numerosity]; (2) there are questions of law or fact common to the class [commonality]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and (4) the representative parties will fairly and adequately protect the interests of the class [adequacy of representation].

Fed. R. Civ. P. 23(a).

In addition to meeting the requirements of Rule 23(a), the proposed class must constitute one of the types of classes enumerated in Rule 23(b). Plaintiffs have moved for class certification under Rule 23(b)(3). Rule 23(b)(3) provides for class certification if the requirements of Rule 23(a) are met and (i) common questions of fact or law predominate over any individual questions, and (ii) a class action is a superior method of efficiently and fairly adjudicating the matter. *See* Fed. R. Civ. P. 23(b)(3).

Finally, the Second Circuit recognizes an "implied requirement of ascertainability" under Rule 23. *See Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015). The "touchstone of ascertainability is whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Id*. (quoting 7A Charles Alan Wright & Arthur R. Miller et al., *Federal Practice & Procedure* § 1760 (3d ed. 1998)). "A class is ascertainable when defined by objective criteria . . . and when identifying its members would not require a mini-hearing on the merits of each case." *Id*. at 24-25 (quoting *Charron v. Pinnacle Grp. N.Y. LLC*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010)).

## DISCUSSION

Under Rule 23, "[t]wo or more classes may be represented in a single action." *See* 1966 Advisory Comm. Notes to Fed. R. Civ. P. 23, Subdiv. (c)(4). Here, Plaintiffs are seeking to certify

three separate classes, *i.*e., Class A, Class B and Class C. (*See* Pls.' 10/7/22 Not. of Mot. at 2.) Thus, Plaintiffs must meet the class certification requirements as to each of these classes.[12]

## I.   **Numerosity**

For class certification to be appropriate, the proposed class must be so numerous that joinder of all of its individual members would be impracticable. *See* Fed. R. Civ. P. 23(a)(1). Numerosity is presumed when a class consists of forty members or more. *See Shahriar v. Smith & Wollensky Rest. Grp.*, 659 F.3d 234, 252 (2d Cir. 2011).[13]

In their memorandum in support of their class certification motion, Plaintiffs do not address the number of class members on a class-by-class basis, as required. Instead, they state the following:

> Swift estimates that as of July of 2022, there were 150-200 Drivers assigned to its Syracuse terminal. . . . This figure does not include the other Drivers who stopped working for Swift prior to July 2022, those working out of the Johnstown or Amsterdam facilities, or Drivers assigned to other facilities who have made deliveries within New York State and logged sleeper berth time there—all of which are readily ascertainable from Swift's records.

(*See* Pls.' 10/7/22 Class Cert. Mem., ECF No. 71-1, at 18 (citation omitted).) To start, under the current class definitions, the number of drivers assigned to the Syracuse Terminal is relevant only

---

[12] Even if one were to view Plaintiffs' classes as subclasses, Plaintiffs still would need to establish that each subclass meets the Rule 23 class certification requirements. *See Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 68 (S.D.N.Y. 2018) ("The same class certification requirements apply to the certification of subclasses: 'a court must assure itself that each subclass independently meets the requirements of Rule 23.'" (quoting *Ramirez v. Riverbay Corp.*, 39 F. Supp. 3d 354, 362 (S.D.N.Y. 2014)); *Huang v. Shanghai City Corp.*, No. 19-CV-07702 (LJL), 2022 WL 1468450, at *7 (S.D.N.Y. May 10, 2022) (citing *Zivkovic*).

[13] "Determination of practicability depends on all the circumstances surrounding a case, not on mere numbers." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993). "Relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." *Id.* (internal citations omitted). Here, Plaintiffs do not argue for a smaller class size based upon the *Robidoux* factors.

to Class B. (*See* Pls.' 10/7/22 Not. of Mot. at 2.) In any event, the fact that, as of July 2022, there were approximately 150 to 200 drivers assigned to Swift's Syracuse Terminal does not establish numerosity with respect to Class B. This is because, in order to be a member of Class B, a driver needs to be based out of the Syracuse Terminal **and** must have logged time as "sleeper berth" or "off duty" in New York State. (*See* Pls.' 10/7/22 Not. of Mot. at 2.) Plaintiffs fail to submit evidence regarding the number of drivers assigned to the Syracuse Terminal who logged "sleeper berth" or "off duty" time in New York State. With respect to the remaining two classes, Plaintiffs provide no information regarding the number of members of Class A or Class C.[14]

In a footnote at the end of their reply memorandum, Plaintiffs contend that Defendants purportedly refused to produce, in response to interrogatories, information regarding "the precise number of Drivers at its facilities and where these Drivers logged sleeper berth time." (*See* Pls.' 1/20/23 Reply Mem. at 10 n.11 (citing Ex. 7 to Piller Reply Decl., Defs.' Rog Responses, ECF No. 87-8, at pp. 5-8).) Plaintiffs then argue that "[i]t is pure gamesmanship for Swift to refuse to produce discovery going to numerosity and then argue that the lack of such discovery warrants a finding the class is not numerous." (*See id*.) However, the interrogatories to which Plaintiffs refer did not seek information regarding the number of drivers in Class A, Class B and Class C, as currently defined by Plaintiffs. Rather, the interrogatories sought the identities of all individuals Swift employed from February 17, 2015 to the present (Interrogatory No. 1), and the total number of drivers listed in Swift's records as operating out of a location in New York

---

[14] In their reply memorandum, Plaintiffs state that Swift currently has 19,000 drivers nationwide (*see* Pls.' 1/20/23 Reply Mem., ECF No. 87, at 10 n.11), but the number of drivers nationwide is not indicative of the number of drivers who fall within Class A, B or C.

(Interrogatory No. 4).[15] (*See* Defs.' Rog Responses at 5-8.) During oral argument, Plaintiff could not identify any interrogatories that requested information regarding where drivers logged sleeper berth time and Defendants' counsel represented that no such request had been made. (1/30/23 Tr. at 10-13.)

Finally, Plaintiffs refer in their reply memorandum to "the 30 Driver declarant witnesses in this case [who Plaintiffs contend] alone nearly clear the numerosity threshold." (*See* Pls.' 1/20/23 Reply Mem. at 10 n.11.) The declarant witnesses to whom Plaintiffs refer are the individuals from whom Swift obtained the declarations that were filed in support of Swift's motion to deny class certification. (*See* Defs.' Appendix, ECF No. 69.) The number of declarant witnesses, however, does not "nearly clear" the numerosity requirement for several reasons.

First, three of the declarant witnesses are or were Planners, Managers and/or Leaders, not drivers, and thus would be not be part of any of the three classes. (*See* Damon Decl. ¶ 2; Mullen Decl. ¶ 2; Williams Decl. ¶ 2.) Second, for those 27 declarant witnesses who are or were drivers, they are or were based out of different locations (*i.e.*, 9 out of the Syracuse Terminal, 14 out of the Johnstown and Amsterdam Terminals and 4 out of terminals outside the State of New York),[16] and thus not all are members of the same proposed class. For numerosity purposes, the

---

[15] The Court recognizes that Defendants objected, and failed to respond, to the interrogatory which would have provided Plaintiffs at least with the total number of drivers operating out of a location in New York, and Defendants did not provide that number. (*See* Defs.' Rog Responses at 7-8.) However, although Plaintiffs successfully moved to compel other discovery responses from Defendants (*see* 7/7/22 Order, ECF No. 63; 11/22/22 Order, ECF No. 78), they never moved to compel discovery responses regarding numerosity, despite Plaintiffs having the burden on that issue.

[16] Mortenson Decl., ECF No. 69-4, ¶ 2 (Johnstown); Martin Decl., ECF No. 69-5, ¶ 2 (Johnstown); Mackay Decl., ECF No. 69-6 (Johnstown), ¶ 2; Maarseveen Decl., ECF No. 69-7, ¶ 2 (Johnstown); Hamdani Decl., ECF No. 69-8, ¶ 2 (Johnstown); Ramos Decl., ECF No. 69-9, ¶ 2 (Johnstown); Burbano Decl., ECF No. 69-10, ¶ 2 (Johnstown); Leger Decl., ECF No. 69-11, ¶ 2 (Syracuse); Davis Decl., ECF No. 69-12, ¶ 2 (Johnstown); Kahala Decl., ECF No. 69-13, ¶ 2 (Syracuse); Anderson Decl., ECF No. 69-14, ¶ 2 (Syracuse);

27 declarant witnesses cannot all be lumped together; again, each class must meet Rule 23's requirements. Third, Class B and Class C are limited to drivers who logged sleeper berth or off duty time in New York (*see* Pls.' 10/7/22 Not. of Mot. at 2), but Plaintiffs have submitted no evidence of sleeper berth time logged by the declarant witnesses.[17] (*See* 1/31/2023 Tr. at 13-14.) Thus, on the record before the Court, it cannot be determined how many of the witness declarants could be members of Plaintiffs' three classes and, thus, this evidence is insufficient to establish numerosity.

It might be tempting to assume that, since Swift is a large company with 19,000 drivers nationwide, the number of drivers in Plaintiffs' three classes can overcome the relatively low hurdle presented by Rule 23(a)(1). However, Plaintiffs had the burden to establish numerosity and they plainly did not meet that burden. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009) ("Yes, T-Mobile is a large company, with many retail outlets, and, as such, it might be tempting to assume that the number of retail sales associates the company employed in Florida during the relevant period can overcome the generally low hurdle presented by Rule 23(a)(1)[, but] a plaintiff still bears the burden of establishing every element of Rule 23, . . . and

---

Peterson Decl., ECF No. 69-15, ¶ 2 (Johnstown); Caro Decl., ECF No. 69-16, ¶ 2 (Ocala, Florida); Francis Decl., ECF No. 69-17, ¶ 2 (Syracuse); Patterson Decl., ECF No. 69-18, ¶ 2 (Syracuse); Vaught Decl., ECF No. 69-19, ¶ 2 (Ocala, Florida); Velazquez Decl., ECF No. 69-20, ¶ 2 (Jonestown, Pennsylvania); French Decl., ECF No. 69-21, ¶ 2 (Lewiston, Idaho); Bico Decl., ECF No. 69-22, ¶ 2 (Syracuse); Chimber Decl., ECF No. 69-23, ¶ 2 (Syracuse); Feltmate Decl., ECF No. 69-24, ¶ 2 (Syracuse); Hewitt Decl., ECF No. 69-25, ¶ 2 (Syracuse); Seamon Decl., ECF No. 69-26, ¶ 2 (Johnstown); Schmid Decl., ECF No. 69-27, ¶ 2 (Johnstown); Boychoux Decl., ECF No. 69-28, ¶ 2 (Johnstown); Oaks Decl., ECF No. 69-29, ¶ 2 (Amsterdam); Booth Decl., ECF No. 69-30, ¶ 2 (Amsterdam).

[17] During oral argument, the parties confirmed that, in response to the Court's November 2, 2022 Order, Defendants produced DOT logs for the declarant witnesses to Plaintiffs and that such logs included sleeper berth time and location. (1/31/2023 Tr. at 13-14.) Defendants noted that the Piller Declaration referred to some of these logs for a different purpose, but that none of the logs were attached as exhibits. (S*ee id.* at 15 (citing Piller Decl., ECF No. 83-1, ¶¶ 9, 19).)

a district court's factual findings must find support in the evidence before it."); *see also Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 357 (3d Cir. 2013) ("Mere speculation as to the number of class members—even if such speculation is 'a bet worth making'—cannot support a finding of numerosity." (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 596 (3d Cir. 2012)); *Kalkstein v. Collecto, Inc.*, 304 F.R.D. 114, 119 (E.D.N.Y. 2015) ("The movant need not provide a precise quantification of their class, since a court may make common sense assumptions to support a finding of numerosity . . . [n]evertheless, the movant must show some evidence of or reasonably estimate the number of class members."  (internal quotation marks and citation omitted)).

By reason of the foregoing, I recommend that Plaintiffs' motion for certification be denied based upon their failure to meet their burden of establishing numerosity.

## II.     **Commonality, Typicality And Predominance**[18]

"The commonality requirement [contained in Rule 23(a)(2)] is met if plaintiffs' grievances share a common question of law or fact." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (citing *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 166-67 (2d Cir. 1987)). "Commonality does not mandate that all class members make identical claims and arguments, only that common issues of fact or law affect all class members." *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y. 1992); *see also Kindle v. Dejana*, 315 F.R.D. 7, 11 (E.D.N.Y. 2016) ("commonality requirement [is] that there be common issues of law or fact affecting all class members").

---

[18] Although I recommend that Plaintiffs' motion be denied for failure to establish numerosity and, thus, the Court need not reach the remaining factors, I address below the parties' arguments regarding commonality in an effort to narrow and/or focus the issues in the case should Plaintiffs be permitted to renew their motion following additional discovery.

"In the context of wage-and-hour disputes, courts have found commonality satisfied where the claim is grounded in an employer's allegedly unlawful policy or practice." *Hardgers-Powell v. Angels in Your Home LLC*, 330 F.R.D. 89, 99 (W.D.N.Y. 2019). "This is because, as *Dukes* instructs, the 'common contention' that an employer's unlawful policy or practice has caused the class's injuries is 'of such a nature that it is capable of classwide resolution.'" *Id.* (quoting *Dukes*, 564 U.S. at 350).

Rule 23(a)(3) requires that the class representatives have claims typical of those shared by the class members. "To establish typicality under Rule 23(a)(3), the party seeking certification must show that 'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *See In re Flag Telecom*, 574 F.3d at 35 (quoting *Robidoux*, 987 F.2d at 936). However, "the typicality criterion does not require that the factual predicate of each claim be identical to that of all class members." *MacNamara v. City of New York*, 275 F.R.D. 125, 138 (S.D.N.Y. 2011) (internal citations, quotation marks and emphasis omitted). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux*, 987 F.2d at 936-37.

"[T]he commonality and typicality requirements of Rule 23(a) tend to merge." *Dukes*, 564 U.S. at 350 n.5 (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157-58 n.13 (1982)). "Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class

claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id*.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The Rule 23(b)(3) predominance requirement overlaps considerably with Rule 23(a)(2)'s commonality requirement, although the predominance requirement is "far more demanding." *Id*. at 624; *see also Allen v. City of New York*, No. 19-CV-03786 (JMF), 2022 WL 4133132, at *2 (S.D.N.Y. Sept. 12, 2022) (citing *Amchem*).

Plaintiffs' claims are brought under the NYLL. "Article 6 of the [NYLL] regulates the payment of wages by employers." *Pachter v. Bernard Hodes Grp., Inc.*, 10 N.Y.3d 609, 614 (2008). To prevail on a claim under Article 6 of the NYLL, "a plaintiff must first demonstrate that he or she is an employee entitled to its protections." *Lauria v. Heffernan*, 607 F. Supp. 2d 403, 407 (E.D.N.Y. 2009) (quoting *Bierer v. Glaze, Inc.*, No. 05-CV-02459 (CPS), 2006 WL 2882569, at *9 (E.D.N.Y. Oct. 6, 2006)). In that regard, the NYLL "do[es] not reach work done entirely and exclusively outside [the] state." *Heng Guo Jin v. Han Sung Sikpoom Trading Corp.*, No. 13-CV-06789 (CBA) (LB), 2015 WL 5567073, at *9 (E.D.N.Y. Sept. 21, 2015). Second, a plaintiff must demonstrate "that their wages were withheld in violation of one of the substantive provisions of the Labor Law." *Contrera v. Langer*, 314 F. Supp. 3d 562, 568 (S.D.N.Y. 2018) (quoting *Michalek v. Amplify Sports & Entm't LLC*, No. 11-CV-00508 (PGG), 2012 WL 2357414, at *3 (S.D.N.Y. June 20, 2012)).

In the present case, each of Plaintiffs' classes has a New York nexus implicating possible application of the NYLL. Class A consists of drivers who work out of terminals located in New York

(*see* Pls.' 10/7/22 Not. of Mot. at 2), and Class B and Class C consist of drivers who, at a minimum, logged sleeper berth or off duty time in New York. (*See id*.) Plaintiffs allege that, in violation of the NYLL, Plaintiffs and the class members were not paid for off-the-clock work, were not paid minimum wage, were not paid for overtime, did not receive spread of hours pay and were not provided accurate wage statements.[19] (*See* SAC ¶¶ 86-127; *see also* Pls.' 10/7/22 Notice at 1-2.) These claims are predicated on Swift's failure to pay for off duty or sleeper berth time.

With respect to sleeper berth time, Plaintiffs argue that Swift's "uniform policy of not paying for sleeper berth time" violates the NYLL and that this is a question of law common to all putative class members.[20] (*See* Pls.' 10/7/22 Class Cert. Mem. at 2, 20-21.) The centerpiece of Plaintiffs' argument is a New York regulation, *i.e*., NYCRR § 175.3(c), that states "[t]ime spent by a driver in a sleeper berth in [a motor truck] shall not be considered off duty, but shall be considered time on duty." (*See* Pls.' 10/7/22 Class Cert. Mem. at 1 (quoting 12 NYCRR § 175.3(c)).) In Plaintiffs' view, because sleeper berth time is considered time on duty under this regulation, it is compensable under the NYLL. (*See* Pl.'s 10/7/22 Class Cert. Mem. at 7-8.) Thus, Plaintiffs argue that they have established commonality because "[t]he question of whether Swift's common pay policy passes muster under this regulation is ideally suited for class treatment." (Pls.' 10/7/22 Class Cert. Mem. at 20; *see also id*. at 8-9, Pls.' 11/16/22 Ltr. Mot., ECF No. 75, at 1 ("the common question that will drive a determination of liability in this case is whether Swift's uniform policy

---

[19] In denying Swift's partial motion to dismiss, Judge Torres already found that Plaintiffs had stated NYLL claims for overtime and spread of hours pay. *See Hobbs*, 2022 WL 118256, at *4.

[20] Swift's 30(b)(6) witness confirmed Swift's policy—that is, Swift does not pay New York drivers for time logged as "sleeper berth," except in the event of a breakdown or other circumstance that results in "exception" pay. (*See* Quast 30(b)(6) Dep. at 78-79, 91-94.)

of not paying for any sleeper berth time passes muster under applicable New York law making such time compensable").) Similarly, with respect to predominance, Plaintiffs argue that their claims "revolve around the common question of Swift's compliance with New York labor regulations that define sleeper berth time as on duty time." (*See* Pls.' 10/7/22 Class Cert. Mem. at 24.) The problem for Plaintiffs, however, is that the New York labor regulation on which they rely no longer is valid. Thus, whether Swift's policy passes muster under that regulation cannot be the basis for commonality, typicality or predominance.[21]

The regulations contained in Part 175 of Title 12 of the NYCRR, which includes 12 NYCRR § 175.3(c), were promulgated by the New York Industrial Commissioner pursuant to what was then NYLL § 167. *See* 12 NYCRR § 175.1 ("Section 167 of the Labor Law and this Part include in their application the owner, lessee and bailee of a motor truck and/or motor bus who operates such vehicle himself."). NYLL § 167 was enacted in 1963 to govern "[h]ours of labor of operations of motor trucks and motor buses." (*See* Repealed Version of NYLL § 167, ECF No. 80-7.) It provided that, whenever a truck driver "shall have been on duty for fourteen hours in any consecutive twenty-hour hour period . . ., or whenever such a driver shall have had ten hours driving time within a consecutive period of fourteen hours, he shall not continue or again go on duty without having at least eight consecutive hours off duty." (*See id*.) The statute required drivers to "keep and carry on the vehicle records showing the day and hour when and the place where he went on and was released from duty . . .." In addition, the statute provided that "[t]he industrial

---

[21] Plaintiffs argue that "at most Swift raises a common legal question as to how the regulations should be interpreted" (*see* Pls.' Reply Mem. at 5-6), but the Court finds that resolution of this issue is necessary to engage in a rigorous Rule 23 analysis, especially since Plaintiffs are relying on an invalid regulation, as discussed below.

commissioner shall prescribe the form of such records and may require other information to be shown thereon . . ..” (*See id*.)

Pursuant to the statutory authority provided by NYLL § 167, Part 175 of Title 12 of the NYCRR was promulgated, which set forth, among other things, the form of daily time record required. *See* 12 NYCRR § 175.11. The section of Part 175 on which Plaintiffs rely is the section containing definitions of terms used in other sections and in the required forms, including the definitions of the terms “on duty,” “driving time” and “off duty.” *See* 12 NYCRR § 175.3. The definition of “off duty” contained the language seized upon by Plaintiffs to seek to establish commonality: “Time spent by a driver in a sleeper berth in such vehicle shall not be considered off duty, but shall be considered time on duty.” *See id*. § 175.3.

NYLL § 167 was repealed in 1974 and the authority to regulate the hours of work for truck drivers was transferred to the New York Department of Transportation (“NYDOT”). (*See* Bill Jacket, ECF No. 84-1, at PDF pp. 1-7.) At the same time, Section 211 of the New York Transportation Law was enacted, which provided in relevant part, that “[n]o driver of a motor truck or motor bus shall drive such vehicle or be on duty for any period of time in excess of that authorized pursuant to regulation of the commissioner” and that “[t]he commissioner is hereby authorized to promulgate rules and regulations governing the hours of service of drivers of motor trucks and motor buses.” N.Y. Transp. Law § 211. The New York Transportation Commissioner later issued regulations regarding truck driver hours and adopted in full the federal regulations, 49 C.F.R. Part 395. *See* 17 NYCRR § 820.6 (“The Commissioner of Transportation adopts Part 395 of Title 49 of the Code of Federal Regulations (CFR) with the same force and effect as though herein fully set forth at length.”). In contrast to 12 NYCRR § 175.3(c), which defined “off duty

22

time" as not including sleeper berth time, the federal regulations define "on duty time" to include "[a]ll time in or on a commercial motor vehicle, other than . . . [t]ime spent resting in a sleeper berth." 49 C.F.R. § 395.2.

A July 18, 2007 Opinion Letter by the New York State Department of Labor ("NYDOL") summarizes well what occurred with respect to the regulations contained in Part 175 of Title 12 of the NYCRR:

> The regulations contained in 12 NYCRR Part 175 (Operators of Motor Trucks and/or Motor Buses) were promulgated pursuant to Labor Law §167. Labor Law §167 was repealed in 1974 by the same legislation (L. 1974, c. 342) that created Article 9-A of the Transportation Law. According to the legislative history of this chapter, it was enacted for the specified purpose of transferring authority over the hours of labor of drivers of trucks and buses from the Commissioner of Labor to the Commissioner of Transportation.

> Pursuant to Transportation Law §211, the Commissioner of Transportation has promulgated 17 NYCRR §820.6 by which 49 CFR Part 395 was adopted as applicable to "all motor carriers and drivers of commercial motor vehicles as defined in section 820.1 of this Part" whether operating in interstate or foreign commerce (17 NYCRR §820.6(a)) or in intrastate commerce with certain exceptions (17 NYCRR §820.6(b)).

*See* NYDOL Op. Ltr., File No. RO-07-0060 (Jul. 18, 2007), available at https://statistics.labor.ny.gov/legal/counsel-opinion-letters.shtml (last accessed Feb. 9, 2023).

Based upon the foregoing discussion, it is clear that the definitions contained in 12 NYCRR § 175.3(c) no longer apply to truck drivers in New York and that the definitions contained in the federal regulations apply. The statute under which 12 NYCRR § 175.3(c) was promulgated, *i.e.*, NYLL § 167, was repealed and that regulation was supplanted by 17 NYCRR § 820.6. *See Delgado v. Bretz & Coven, LLP*, 109 A.D.3d 38, 45 (1st Dep't 2013) (recognizing regulations of prior version of statute "supplanted by the repeal of those statutory provisions"); *see also United States v. Kahn*, 5 F.4th 167, 175 (2d Cir. 2021) ("It is well-settled that when a regulation conflicts with a

subsequently enacted statute, the statute controls and voids that regulation." (quoting *Norman v. United States*, 942 F.3d 1111, 1118 (Fed. Cir. 2019) (emphasis omitted)).[22] Accordingly, Plaintiffs cannot establish commonality based upon 12 NYCRR § 175.3(c).[23]

Plaintiffs also argue that Swift's policy of not paying for sleeper berth time raises a common question with respect to Swift's compliance with "the federal regulations and guidance providing that truck drivers like the class members here must be paid for, at a minimum, sleeper berth time in excess of 8 hours per day, which establish the legal floor for the New York state law claims that Plaintiff seek to certify." (Pls.' 10/7/22 Class Cert. Mem. at 20, 20; *see also id.* at 4-7 (discussing baseline federal standards); Pls.' 1/20/23 Reply Mem. at 6 (citing 29 CFR § 785.22).[24]) Although Swift disputes the applicability of these regulations, particularly with respect to certain categories of drivers (*see* Defs.' 12/13/22 Opp. Mem. at 14-16), the Court agrees that whether

---

[22] "[T]he cornerstone of administrative law is . . . the principle that the Legislature may declare its will, and after fixing a primary standard, endow administrative agencies with the power to fill in the interstices in the legislative product by prescribing rules and regulations consistent with the enabling legislation." *Juarez v. New York State Off. of Victim Servs.*, 36 N.Y.3d 485, 492 (2021) (citation omitted). It logically follows that, if the enabling legislation is repealed, then the regulations promulgated thereunder no longer are of any effect. The fact that 12 NYCRR § 175.3(c) still is published as part of the New York State regulations published in the NYCRR does not somehow render it effective. *Cf. Barseback Kraft AB v. United States*, 121 F.3d 1475, 1480 (Fed. Cir. 1997) ("The fact that DOE's Enrichment Criteria had not been formally withdrawn from the Code of Federal Regulations does not save them from invalidity.").

[23] Plaintiffs in their class certification reply memorandum cite to an Appendix to the NYDOT regulations regarding daily logs stating that sleeper berth time is on duty time. (*See* Pls.' 1/20/23 Reply Mem. at 1, 5 (citing 17 NYCRR App. B-16).) However, as Swift notes in its sur-reply, the Appendix is not referenced in any current DOT regulation and the regulations in which it previously was referenced were repealed. (*See* Defs.' Sur-Reply, ECF No. 92, at 1-2; *see also* Murphy Supp. Decl. II Exs. X, Y, Z & AA, ECF Nos. 91-1 to 91-4.)

[24] Section 785.22 provides: "Where an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep. If sleeping period is of more than 8 hours, only 8 hours will be credited." 29 C.F.R. § 785.22.

Swift's uniform policy of not paying for sleeper berth time violates the federal standards that set the floor for state law presents a common question of law. *Accord Bouissey v. Swift Transportation Co.*, No. 19-CV-03203 (VAP) (KKX), 2022 WL 16957830, at *6 (C.D. Cal. Sept. 27, 2022.) However, Plaintiffs do not limit any of their classes to drivers who were on duty for 24 hours or more and had more than 8 hours sleeper berth time in the State of New York and thus it is not a common question as to Class A, Class B or Class C as presently defined.

Finally, although Plaintiffs refer to other Swift policies that they contend restrict drivers' movement and activities during their sleeper berth time, and thus could potentially be a basis for requiring Swift to compensate drivers for some time logged as sleeper berth time, Plaintiffs did not rely on these policies to establish commonality in their motion for class certification. (*See* Pls.' 10/7/22 Class Cert. Mem. at 8-9, 19-20.) Indeed, Plaintiffs' approach attempted to circumvent the type of inquiry present in *Bouissey*, noting that "Plaintiffs here seek to certify claims that can be decided in one stroke by application of New York regulations that directly address sleeper berth time and the federal standards that set the legal floor for state law." (*Id.* at 9; *see also* Defs.' 12/13/22 Opp. Mem. at 17 (noting that "Plaintiffs do not meaningfully refer to the record because of their exclusive reliance on an invalid regulation.").) Although it may be that Plaintiffs can establish commonality based on one more of Swift's other policies, *see Bouissey*, 2022 WL 16957830, at *5-6, the Court need not address this issue now given Plaintiffs' failure to establish numerosity.[25] The Court finds this issue and issues regarding the remaining Rule 23 factors are better addressed upon further briefing from the parties if the District Judge

---

[25] The same is true with respect to the parties' respective arguments as to whether the applicability of the NYLL presents a common question and/or whether individual issues would predominate. (*See* Pls.' 10/7/22 Class Cert. Mem. at 20-21; Defs.' 12/13/22 Opp. Mem. at 17, 23 n.11.)

agrees with my determination regarding 12 NYCRR § 175.3 and if Plaintiffs later are permitted to renew their motion for class certification.

### CONCLUSION

For the foregoing reasons, I respectfully recommend that Plaintiffs' motion for class certification be DENIED. I also recommend that Defendants' motion to deny class certification be DENIED AS MOOT.[26]

Dated:      New York, New York
            February 9, 2023

_____
**STEWART D. AARON**
**United States Magistrate Judge**

*          *          *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C.

---

[26] At the time that Defendants filed their motion to deny class certification, the classes had been defined by Plaintiffs differently. In addition, as noted above, the Court is recommending that Plaintiffs' motion for class certification be denied. Thus, I am recommending that Defendants' motion to deny class certification be denied as moot.

§ 636(b)(1), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Rochon.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).