

April 18, 2023

**VIA ECF**

Hon. Jennifer L. Rochon
United States District Judge
United States District Court
for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

      Re:    *Hobbs, et al. v. Knight-Swift Transportation Holdings, Inc., et al.*
             No. 21-CV-01421

Dear Judge Rochon,

      Pursuant to the Court's Order of April 13, 2023 (ECF 104), Plaintiffs provide the following response to the letter of April 12, 2023, submitted by Defendants Knight-Swift Transportation Holdings, Inc. and Swift Transportation Co. of Arizona, LLC ("Swift").

      Swift's April 12, 2023 letter (ECF 102), provides the Court with notice of an April 5, 2023 order in *Bouissey v. Swift Transp. Co.*, pending in the Central District of California. This *Bouissey* order granted in part and denied in part a motion for summary judgment brought by Swift shortly after the Court's earlier decision granting class certification in that case. The order denied Swift's motion for summary judgment to the extent that Plaintiffs' claims are based on Defendants' high value load and high theft area policies. *Bouissey v. Swift Transp. Co.*, 2023 U.S. Dist. LEXIS 60351, at *18-19 (C.D. Cal. Apr. 4, 2023). On the same day as that order, the *Bouissey* Court also issued another order approving a stipulated plan to provide notice by first class mail to the members of the certified class in that case—*i.e.,* Swift's over-the-road truck drivers who are California residents or assigned to a California location. *See* Order (*Bouissey,* ECF 118); *see also* Stipulation re Class Notice (*Bouissey,* ECF 114).

      It is noteworthy that the policies that would be at issue in a renewed motion for class certification in the matter at bar include the same policies pertaining to high value loads that the Court in *Bouissey* found can go to trial as part of a certified class action. Indeed, Magistrate Judge Aaron's Report and Recommendation identified Swift's high value load policies as one set of policies also being addressed in the motion before him. *See* Report and Recommendations of February 9, 2023 (ECF 93) ("R&R") at 5-6. Magistrate Judge Aaron went on to find that whether Plaintiffs can establish commonality and the remaining Rule 23 factors as to Swift's policies, other than those for which Plaintiffs rely entirely on 12 NYCRR § 175.3(c), are better addressed upon further briefing from the parties if this Court permits Plaintiffs to renew their motion for class certification to satisfy numerosity. *Id.* at 25-26.

      Swift now cites the summary judgment decision in *Bouissey* to bolster its previously "limited objections" to the R&R. Aside from the irony that the *Bouissey* ruling supports the merits of Plaintiffs' claims with respect to high value loads and high theft areas, its application to the R&R and objections now before the Court here is limited insofar as the R&R addresses the

1


propriety of class certification under Rule 23, with specific focus on the constituent element of numerosity, not the merits of Plaintiffs' claims (other than 12 NYCRR § 175.3(c)). Moreover, even if the summary judgment order in *Bouissey* would bear upon the Rule 23 factors here, including how they would apply to Swift's high value load and high theft area policies, that should be addressed in the first instance by Magistrate Judge Aaron, if the Court permits Plaintiffs to renew their motion.

Swift attempts to justify its reliance on *Bouissey*'s merits ruling by arguing that it shows the purported "futility" of Plaintiffs' claims. Swift's approach misses the mark.

First, as referenced above, the *Bouissey* Court made a class-wide determination in favor of Plaintiffs "that class members who spend time near their trucks pursuant to Defendant's high value load and high theft area policies while not parked at a 'secure location' are entitled to compensation for that time." *Bouissey*, 2023 U.S. Dist. LEXIS 60351 at *31. There is no dispute that Swift denies drivers pay for this time. Swift's admittedly restrictive high value load policy presents one of the central common issues in this case, as observed by Magistrate Judge Aaron. *See* R&R (ECF 73) at 5-6; *see also* Ps' MPA iso Class Cert. (ECF 71-1) at 14-15; Ps' MPA in Opposition to Ds' Mtn. to Deny Cert. (ECF 83) at 9-10, 15-17, 25. The *Bouissey* Court's class-wide ruling with respect to the high value load and high theft area policies only reinforces the propriety of class treatment here.

Nevertheless, Swift attempts to minimize the impact of these policies by baldly asserting in a footnote that they "are not implicated in the instant matter." *See* ECF 102 at n.2. Swift's contention is contradicted by the record. For instance, while Swift asserts that "most" dedicated drivers never carried high value loads, Swift's own dedicated driver affidavits tell a different story. *See, e.g.*, Oaks II Decl. (ECF 69-29) at ¶ 11 (dedicated Driver at Amsterdam facility testifying that "I have carried many high value loads."); Boychoux Decl. (ECF 69-28) at ¶ 10 (dedicated Driver at Johnstown facility testifying "I estimate I have carried 50 high value loads."); Mackay Decl. (ECF 69-6) at ¶ 12 (dedicated Driver at Johnstown facility testifying that he has carried high value loads); Burbano Decl. (ECF 69-10) at ¶ 10 (dedicated Driver at Johnstown facility testifying that "[w]hen I have a high value load I am told by Swift that it is a high value load."); Anderson Decl. (ECF 69-14) at ¶ 10 (dedicated Driver at Syracuse facility testifying that he has carried high value loads). Similarly, although Swift contends that "many" over-the-road drivers have not carried high value loads, the vague assertion of "many" impliedly concedes that some number of others have carried such loads. *Cf.* Ds' Ltr. (ECF 102) at n.3. Swift should not be permitted to evade discovery on this number with such conclusory denials.

Similarly, Swift's footnote argues that the high theft area policies addressed in *Bouissey* do not bear upon the outcome here because there are purportedly "no HTAs near New York or implicating New York Drivers." Ds' Ltr. (ECF 102) at n. 3. This also is not established in the record. For example, while Swift's Driver Handbook may not specifically reference high theft areas in New York, Swift's Rule 30(b)(6) designee witness in the *Bouissey* case admitted that the Driver Handbook does not list all the high theft areas and that "there is some fluidity" in the designated areas "based upon what is happening with thefts throughout the country." *See Bouissey*, No. 19-CV-3203-VAP-KKDkt., ECF 110-2, Quast (PMK) Depo. at 134:14-135:17; *see also* Exh. 15 to Piller Decl. iso Class Cert. (*Hobbs* ECF 71-17), at, p. 92 (Driver Handbook suggesting the existence of "other company designated high theft areas" in addition to those specifically mentioned therein).



Ultimately, the prevalence of high value load and high theft area transports is a question that cannot be resolved until after further discovery. In the meantime, Swift's unsubstantiated assertions regarding the frequency of such transports by the putative class here are premature.

Moreover, even if Swift's assertions as to the purported infrequency of high value loads were credited, this would not excuse its liability for a potentially unlawful policy or undermine the propriety of class treatment. The *Bouissey* Court explicitly rejected this same argument at both the class certification and summary judgment stages. *Bouissey v. Swift Transp. Co. Defendants*, 2022 U.S. Dist. LEXIS 208899, at *25 (C.D. Cal. Sep. 27, 2022) (granting motion for class certification and reasoning that "[e]ven if the Proposed Class may include some drivers who have neither carried a high-value load or stopped in a high-theft area, these drivers 'do not call into question the validity of the class as a whole.'") (citations omitted); *Bouissey*, 2023 U.S. Dist. LEXIS 60351, at *18 (denying motion for summary judgment in part and reasoning that "[w]hile the frequency of Defendant's alleged violations of the law may be relevant to a future determination of damages, it has no bearing on the issue of liability.").

Swift's claims of futility also fail as to the other operational policies that Plaintiffs allege give rise to company control over the drivers' unpaid non-driving time. In this regard, Swift fails to cite case law that is contrary to its position on these other policies. *See, e.g., Ridgeway v. Walmart Inc.*, 946 F.3d 1066, 1079-80 (9th Cir. 2020) (affirming District Court ruling and jury verdict finding sleeper berth time compensable during layovers, while also reasoning that restrictions on having guests in the tractor and prohibitions on alcohol consumption during layovers supported the result). While the *Bouissey* Court distinguished *Ridgeway*, this was a decision on the merits, not on the Rule 23 factors, and is not binding on the merits here in any event.

Swift further cites *Bouissey* to criticize Plaintiffs' interpretation of 29 C.F.R. § 785.22. Swift neglects to mention, however, that Plaintiffs' interpretation is the same as the opinion of the Department of Labor and many other federal courts. *See* Exh. 7 to Piller Decl. iso Class Cert. at p.3 of 4 (ECF 71-9) (DOL Wage and Hour Division summary of opinion letters and policy concerning compensability of time spent in a truck's sleeper berth while otherwise relieved from duty); 1964 DOLWH LEXIS 166; 1966 DOLWH LEXIS 248; *Julian v. Swift Transp. Co.*, 2019 U.S. Dist. LEXIS 212447, at *6-11 (D. Ariz. Dec. 10, 2019) & *Julian v. Swift Transp. Co.*, 360 F. Supp. 3d 932, 950 & 952 (D. Ariz. 2018) (citing opinion letters). The District Courts are split on whether to follow the Department of Labor's opinion, with Plaintiffs' interpretation being most consistent with the emerging majority.[1] Plaintiffs are not aware of either this Court or the Second

---

[1] *Compare Julian v. Swift Transp. Co.*, 2019 U.S. Dist. LEXIS 212447, at *6-11 (D. Ariz. Dec. 10, 2019) & *Julian v. Swift Transp. Co.*, 360 F. Supp. 3d 932, 950 & 952 (D. Ariz. 2018) (discussing Department of Labor opinion letters); *Sanders v. W. Express, Inc.*, 2021 WL 2772801, at *8 (E.D. Wash. Feb. 11, 2021); *Montoya v. CRST Expedited, Inc.*, 404 F. Supp. 3d 364, 395 (D. Mass. 2019); *Browne v. P.A.M. Transp., Inc.*, 2020 U.S. Dist. LEXIS 14171, at *9, n.5 (W.D. Ark. Jan. 24, 2020), *Browne v. P.A.M. Transp., Inc.*, 2018 WL 5118449, at *5 (W.D. Ark. Oct. 19, 2018); *Wooldridge v. Gateway Transp. of Ga., Inc.*, 2019 WL 2610904, at *5 (N.D. Ga. June 24, 2019); *Hubchak v. FedEx Ground Package Sys.*, 2019 WL 3458787, at *1–2 (S.D. Ill. July 31, 2019); *Haworth v. New Prime*, 448 F. Supp. 3d 1060, 1070 (W.D. Mo. 2020), *with Bouissey,* 2023 U.S. Dist. LEXIS 60351, at *27; *Petrone v. Werner Enterprises, Inc.*, 2017 WL 510884, *5-7 (D.



Circuit delving into the merits of how 29 C.F.R. § 785.22 might bear upon the interpretation of New York law. Whichever way the issue is decided, however, it is a common merits question that is well suited for class treatment.

Swift's argument boils down to the contention that class certification should be denied with prejudice because it believes Plaintiffs' legal theories are wrong on the merits. But as the Court in *Bouissey* ruled at class certification, such arguments "go to the merits of Plaintiffs' claims" and therefore do not undermine class treatment. *Swift Transp. Co.*, 2022 U.S. Dist. LEXIS 208899, at *17; *see also id*. at *25 (reasoning that "questions about the legality of Swift's policies predominate over questions about their effect on putative class members, which Swift has already admitted can be determined by an examination of its records."). Despite Swift's arguments to the contrary, it remains that *Bouissey* has found analogous claims against Swift to be well-suited for class treatment. *Id.* at *26.

Respectfully submitted,

SCHNEIDER WALLACE
COTTRELL KONECKY LLP

*/s/ Nathan Piller*

NATHAN PILLER
Attorney at Law

---

Neb. 2017); *Kennedy v. LTI Trucking Servs.*, 2019 WL 4394539, at *3–4 (E.D. Mo. Sep. 13, 2019); *Blodgett v. FAF, Inc*., 446 F. Supp. 3d 320, 328 (E.D. Tenn. 2020).