UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TAVARES HOBBS, et al., <br><br> Plaintiffs, <br><br> -against- <br><br> KNIGHT-SWIFT TRANSPORTATION HOLDINGS, INC. and SWIFT TRANSPORTATION CO. OF ARIZONA, LLC, <br><br> Defendants. | Case No. 1:21-cv-01421 (JLR) (SDA) <br><br> **OPINION AND ORDER** |

JENNIFER L. ROCHON, United States District Judge:

Plaintiffs Tavares Hobbs, Ricardo Bell, and Robert Shaw (collectively, "Plaintiffs") bring this putative class action against their former employers, Defendants Knight-Swift Transportation Holding, Inc., and Swift Transportation Co. of Arizona, LLC (together, "Defendants" or "Swift"), a large trucking company, alleging various violations of New York Labor Laws. *See* ECF No. 36, Second Amended Complaint ("SAC"). Now before the Court is the Report and Recommendation of Magistrate Judge Stewart D. Aaron (the "Magistrate Judge"), dated February 9, 2023, addressing Plaintiffs' motion for class certification and Defendants' motion to deny class certification. *See* ECF No. 93 ("R&R"). The Magistrate Judge recommends that Plaintiffs' motion for class certification be denied for lack of numerosity, and Defendants' motion be denied as moot. *Id.* Plaintiffs have filed objections to the R&R, which Defendants oppose. *See* ECF No. 97 ("Pl. Obj."); ECF No. 98 ("Def. Opp."). Defendants have also filed objections to the extent the R&R denied the motion to certify the class without prejudice, which Plaintiffs oppose. *See* ECF No. 96 ("Def. Obj."); ECF No. 99 ("Pl. Opp."). For the reasons set forth below, the Court adopts the R&R

in full, but modifies it to clarify that Plaintiffs may renew their motion to certify a class once additional targeted discovery regarding numerosity has been completed.

## BACKGROUND

The R&R sets forth in detail the factual background and procedural history of this case, with which the Court assumes the parties are familiar. *See* R&R at 2-10. The Court incorporates that portion of the R&R herein and refers the reader to the R&R for a more comprehensive background. Because none of the parties object to the Magistrate Judge's recitation of the record, it is unnecessary to repeat that lengthy recitation here. Instead, the Court will briefly summarize the factual record here for ease of reference.

Swift operates one of the largest trucking companies in the United States, including three terminals in New York: a Syracuse Terminal, a Johnstown Terminal, and an Amsterdam Terminal. R&R at 2. Swift also employs at least three different types of truck drivers in New York: (1) over-the-road drivers ("OTR"), who are based out of the Syracuse Terminal and transport shipments across the country; (2) dedicated drivers, who deliver goods to "retail locations of an assigned customer" in various states such as New York, Connecticut, Maine, New Hampshire, New Jersey, Pennsylvania, and Vermont; and (3) local drivers, who make local deliveries, and who use trucks that do not contain a "sleeper berth" because they are generally able to sleep at home each night. *Id.*

Plaintiff Hobbs was an OTR driver at Swift from May 2019 to March 2020. *Id.* at 3. He contends that he generally loaded his deliveries at a Sears location in Pennsylvania before making deliveries throughout New York; Swift maintains Hobbs was based at the Syracuse Terminal. *Id.* When he had to return to Pennsylvania to pick up another load, "[i]t was common for him to have to stay out on the road for the night." *Id.* Indeed, in light of his delivery schedule and required "off duty" time, *see* R&R at 3 n.4, Hobbs frequently had to use the "sleeper berth" in his truck to sleep,

*id.* at 3-4.  This time was unpaid.  *Id.* at 4.  According to logs submitted to the Department of Transportation, Hobbs logged "sleeper berth" time in New York once, on January 2, 2020.  *Id.*

From April 2016 through January 2017, Plaintiff Bell was employed by Swift first as an OTR driver, and then as a dedicated driver based at the Amsterdam Terminal.  *Id.*  He was not always able to make it back to the Amsterdam Terminal after completing his deliveries and would use the sleeper berth of his truck to rest.  *Id.*  He also often slept in the sleeper berth while awaiting new deliveries from the Amsterdam Terminal.  *Id.*  Bell would frequently be on the road for about five days, including sleeper berth time, until he was able to go home.  *Id.*  Like Hobbs, he was not compensated for off duty or sleeper berth time.  *Id.*

From at least March 2017 to July 2017 (or October 2017), Plaintiff Shaw was employed by Swift as a dedicated driver who was based at the Johnstown Terminal.  *Id.* at 5; *see also id.* at 5, n.6.  Shaw generally conducted deliveries in New York, but his schedule was such that he was out on the road for more than 24 hours between picking up loads.  *Id.* at 5.  During this time, in order to take his required rest time, he would sleep in the sleeper berth at rest areas or truck stops.  *Id.*  Like Bell, he also would often use the sleeper berth while awaiting new deliveries at the Johnstown Terminal, and would not go home for several days.  *Id.*  Like both Hobbs and Bell, Shaw was not compensated for off duty or sleeper berth time.  *Id.*

As outlined in the R&R, while Swift's policies do not require drivers to use the sleeper berths of their trucks, its other policies allegedly make it impracticable for drivers to have any other option than to use the sleeper berths to sleep and rest.  *Id.*  For instance, drivers cannot leave a truck containing a "high value load" unattended for any reason, such as sleeping at a hotel; drivers are never permitted to detach the trailer from the truck unless in an approved place; and Swift does not generally pay for drivers' lodging except in certain circumstances.  *Id.* at 5-6.  Swift admits that the

3

majority of its New York drivers are paid based on mileage, and therefore are not paid for off duty time or sleeper berth time. *Id.* at 6.

Plaintiffs filed the initial Complaint in this action in February 2021, alleging a broad proposed class of drivers. *See id.* at 6-7. Subsequently, Plaintiffs filed a First Amended Complaint on March 17, 2021. *Id.* at 7. On May 19, 2021, Plaintiffs filed their Second Amended Complaint, which proposed a class definition that encompassed two classes. *See id.* On January 12, 2022, in addition to denying a motion to dismiss, the Court denied Swift's motion to strike the proposed class definitions, noting that while the class definitions may be broad as pleaded, it was premature to evaluate the class definitions, including as to ascertainably, based solely on the complaint. *Id.* at 8-9. Subsequently, the parties conducted class-related discovery under the supervision of the Magistrate Judge. *Id.* at 9. In October 2022, the parties briefed their motions regarding class certification, and Plaintiffs propounded a new class definition that contained the following three proposed classes:

> Class A: All current and former truck drivers who have been employed by Defendants while being based out of the Walmart Dedicated location in Johnstown, New York and/or the Target Dedicated location in Amsterdam, New York, at any time from February 17, 2015 until the date of class notice.
>
> Class B: All current and former truck drivers who have been employed by Defendants while being based out of Defendants' Syracuse, New York location, at any time from February 17, 2015 until the date of class notice. Membership in Class B is limited to time logged as "sleeper berth" or "off duty" in New York State.
>
> Class C: All current and former truck drivers who have been employed by Defendants while being based out of a work location outside of New York State, but who have made at least one pickup and/or delivery in New York State and logged sleeper berth time in New York State, at any time from February 17, 2015 until the date of class notice. Membership in Class C is limited to time logged as "sleeper berth" or "off duty" in New York [S]tate.

4

> The Classes <u>exclude</u> the group of Drivers identified by Swift's Rule 30(b)(6) witness as being paid hourly, typically operating a "day cab" truck without a sleeper berth, and who return home every night.

*Id.* at 9-10 (citing ECF No. 71 at 2).

After the motions were fully briefed and oral argument was held, the Magistrate Judge recommended denial of Plaintiffs' motion to certify the aforementioned classes. Specifically, the Magistrate Judge concluded that Plaintiffs had failed to establish numerosity – one of the requirements under Federal Rule of Civil Procedure 23(a). R&R at 13-17. Plaintiffs had not addressed the number of class members on a class-by-class basis, and instead only made broad statements about the number of Swift drivers assigned to only one of the terminals, the Syracuse Terminal. *See id.* Plaintiffs argued that Swift had failed to respond to interrogatories requesting more specific information as to numerosity. However, at oral argument, Plaintiffs were unable to "identify any interrogatories that require[d] information regarding where drivers logged sleeper berth time and Defendants' counsel represented that no such request had been made." R&R at 14-15. Plaintiffs also argued that Defendants' 30 witnesses who submitted declarations in support of the motion to deny class certification in the case "alone nearly clear the numerosity threshold." *Id.* at 15. The Magistrate Judge noted that at least three of the declarants were not drivers, and the 27 remaining declarants were based out of different terminals. *See id.* Numerosity was lacking, according to the Magistrate Judge, because the 27 declarants were not all in the same proposed class and numerosity must be established for *each* proposed class. *Id.* at 15-16. Moreover, the Magistrate Judge noted that – for Class B and Class C – the members are limited "to drivers who logged sleeper berth or off duty time in New York," but Plaintiffs did not offer any evidence as to the sleeper berth time logged by the 27 declarants. *Id.* at 16.

Finally, the Magistrate Judge noted that even though "[i]t might be tempting to assume that, since Swift is a large company with 19,000 drivers nationwide, the number of drivers in Plaintiffs'

5

three classes can overcome the relatively low hurdle" for numerosity, Plaintiffs have the burden to establish numerosity, and they failed to do it. *Id.* at 16. Therefore, the Magistrate Judge recommended that Plaintiffs' motion to certify the class be denied. *Id.*

The Magistrate Judge further noted that he would address the parties' arguments regarding the Rule 23 "commonality" factor "in an effort to narrow and/or focus the issues in the case should Plaintiffs be permitted to renew their motion following additional discovery." *Id.* at 17 n.18. The Magistrate Judge concluded that one of Plaintiffs' arguments on commonality failed as a matter of law because it relied on a New York regulation, NYCRR § 175.3(c), that is no longer valid because the authorizing statute was repealed in 1974. *Id.* at 20-24. However, the Magistrate Judge noted that Plaintiffs' other possible common issues of law or fact – (1) whether Swift's policy of not paying for sleeper berth time violates federal regulations, and (2) whether Swift's other policies which restrict movement and activities during sleeper berth time should be compensated – may be sufficient under Rule 23. *See id.* at 24-25 & n.25. Given Plaintiffs' failure to meet their burden on numerosity, the Magistrate Judge did not reach a conclusive recommendation on commonality and the other Rule 23 factors. *Id.* at 25-26.

Both Plaintiffs and Defendants objected to portions of the R&R.

## STANDARD OF REVIEW

With respect to dispositive motions, a district court may "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see* Fed. R. Civ. P. 72(b)(3). A district court must "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "To the extent, however, that the party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." *Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 174 (S.D.N.Y. 2018). "Objections of this sort are

frivolous, general and conclusory and would reduce the magistrate's work to something akin to a 'meaningless dress rehearsal.' . . . 'The purpose of the Federal Magistrates Act was to promote efficiency of the judiciary, not undermine it by allowing parties to relitigate every argument which it presented to the Magistrate Judge.'" *N.Y.C. Dist. Council of Carpenters Pension Fund v. Forde*, 341 F. Supp. 3d 334, 336 (S.D.N.Y. 2018) (quoting *Vega v. Artuz*, No. 97-cv-03775 (LTS) (JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)). "In addition, new arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all." *Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 716 (S.D.N.Y. 2020) (internal citation and quotation marks omitted); *see United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019) (rejecting argument raised for the first time as objection to report and recommendation).

## DISCUSSION

Federal Rule of Civil Procedure 23 ("Rule 23") governs class certification. Under Rule 23, a class may be certified if it meets the following four prerequisites: (1) "the class is so numerous that joinder of all members is impracticable" ("numerosity"); (2) "there are questions of law or fact common to the class" ("commonality"); (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class" ("typicality"); and (4) "the representative parties will fairly and adequately protect the interests of the class" ("adequacy"). Fed. R. Civ. P. 23(a); *see also In re Amaranth Nat. Gas Commodities Litig.*, 269 F.R.D. 366, 375-76 (S.D.N.Y. 2010).

"[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied[.]" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) (internal citation and quotation marks omitted); *see also In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006) ("A district judge is to assess all of the relevant evidence admitted at the class certification stage and determine whether each Rule 23 requirement has been

7

met . . . ."). "The party seeking to certify a class bears the burden of satisfying Rule 23(a)'s four threshold requirements." *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011). Importantly, a district court "has discretion on questions of class certification because [it] . . . is often in the best position to assess the propriety of the class and has the ability . . . to alter or modify the class, create subclasses, and decertify the class whenever warranted." *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 281 F.R.D. 134, 138 (S.D.N.Y. 2012) (quoting *Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 139 (2d Cir. 2001).

Plaintiffs raise two objections to the R&R: (1) first, they argue that the Magistrate Judge incorrectly concluded that numerosity was not satisfied, and (2) second, they argue that they should be permitted an opportunity to conduct targeted additional discovery as to numerosity, and then renew their motion for class certification. Pl. Obj. at 1. Defendants oppose these objections and also raise two objections to the R&R: (1) first, they argue that the Magistrate Judge's recommended denial of class certification should be modified to be with prejudice, since Plaintiffs squandered their opportunity with respect to class-related discovery, and because Plaintiffs' counsel is inadequate, and (2) second, in the alternative, they argue that Plaintiffs should not be permitted to amend their claims or theory of the case on any renewed motion to certify a class following more targeted discovery. Def. Obj. at 4-10. While some of the parties' arguments overlap, the Court will address each objection in turn.

### A.     Plaintiffs' First Objection

"To satisfy Rule 23(a)(1)'s numerosity requirement, Plaintiffs must show that 'the class is so numerous that joinder of all members is impracticable.'" *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 68 (S.D.N.Y. 2018) (quoting Fed. R. Civ. P. 23(a)(1)). In this Circuit, numerosity is generally presumed if the class has 40 or more members. *See Consol. Rail Corp. v. Town of Hyde*

8

*Park*, 47 F.3d 473, 483 (2d Cir. 1995). "Though plaintiffs are not required to present a precise calculation of the number of class members, they must show some evidence that provides the Court with a reasonable estimate." *Zivkovic*, 329 F.R.D. at 69. In other words, if a "plaintiff's assertion of numerosity is based on pure speculation or bare allegations, the motion for class certification fails." *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 338 (S.D.N.Y. 2004) (internal alterations adopted).

Plaintiffs argue that the Magistrate Judge erred because reasonable inferences drawn from the evidence in the record satisfy the "low hurdle" of numerosity. Pl. Obj. at 12-13. As to Class A – which is defined as "[a]ll current and former truck drivers who have been employed by Defendants while being based out of the Walmart Dedicated location in Johnstown, New York and/or the Target Dedicated location in Amsterdam, New York, at any time from February 17, 2015 until the date of class notice[,]" – Plaintiffs argue that a "Swift manager witness at the Amsterdam location estimated that there are <u>currently</u> 32 drivers working out of that facility alone." Pl. Obj. at 6, 13. The "Swift manager witness" also testified that at the Johnstown location, there were an estimated 20 "surge" drivers working "at points during the liability period in this case." *Id*. at 13. From this testimony, Plaintiffs argue that it is reasonable to infer that more than 40 drivers worked out of the Amsterdam and Johnstown terminals. *Id.* at 13-14. For Class B – which is defined as "[a]ll current and former truck drivers who have been employed by Defendants while being based out of Defendants' Syracuse, New York location, at any time from February 17, 2015 until the date of class notice[,] . . . [with] [m]embership in Class B . . . limited to time logged as 'sleeper berth' or 'off duty' in New York State" – Plaintiffs assert that Swift's witness testified that there are currently over 150 drivers based out of the Syracuse Terminal, and as many as 250 drivers back in 2017. *Id.* at 6, 14. Plaintiffs argue that these numbers alone permit a reasonable inference that there is numerosity as to this class. *Id.* Plaintiffs also claim that Defendants failed to produce evidence

during discovery in response to Plaintiffs' requests that would have permitted Plaintiffs to verify the numbers of drivers who logged "off duty" or "sleeper berth" time. *Id.* Despite this, given that "Syracuse is more than 200 miles away from the nearest state border," according to Plaintiffs, a reasonable inference can be drawn that more than 40 drivers logged "sleeper berth" time. *Id.* Finally, as to Class C – which is defined as "[a]ll current and former truck drivers who have been employed by Defendants while being based out of a work location outside of New York State, but who have made at least one pickup and/or delivery in New York State and logged sleeper berth time in New York State, at any time from February 17, 2015 until the date of class notice[,] . . . [with] [m]embership in Class C . . . limited to time logged as 'sleeper berth' or 'off duty' in New York [S]tate" – Plaintiffs argue that the fact that Swift has reported over 19,000 drivers nationwide permits a reasonable inference that at least 0.5% of those drivers were "routed to New York and logged time as 'Sleeper Berth' there in the past 8 years," which would result in "95 members of the proposed Class C." *Id.* at 6-7, 15-16.

Defendants point out that Plaintiffs never attempted to itemize the evidence like this for any of the individual classes before the Magistrate Judge. Def. Opp. at 2. The Court agrees. Indeed, the Magistrate Judge explicitly noted that in their motion to certify the classes, "Plaintiffs do not address the number of class members on a class-by-class basis, as required." R&R at 13. Instead, after mentioning numerosity in passing in their opening brief, *see* ECF No. 71-1 at 18, in their reply brief, Plaintiffs inserted a footnote which argued that numerosity was established for the classes based on the number of drivers in Syracuse alone, Swift's 19,000 drivers nationwide, the 30 declarant witnesses, and because Swift had refused to produce discovery relevant to numerosity, *see* ECF No. 87 at 10 n.11. But this footnote does not articulate the same points made as part of Plaintiffs' objection here, and it certainly does not detail the evidence for each class. "In this circuit, it is established law that a district judge will not consider new arguments raised in objections

10

to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." *Gladden*, 394 F. Supp. 3d at 480 (internal citation omitted). This alone is grounds to reject Plaintiffs' objection.

But even considering the arguments raised here as to each individual class, Plaintiffs ask the Court to engage in speculation in order to establish numerosity. As to Class A, Plaintiffs ask the Court to speculate as to how "surge drivers" satisfy the proposed definition – a concept absent from their briefing before the Magistrate Judge as well. As to Class B, Plaintiffs ask the Court to speculate as to how many of the approximately 150 drivers would have logged "sleeper berth" time based solely on the Syracuse Terminal's proximity to the border, without further evidence as to what percentage of drivers would necessarily have to cross that border and for how long. As to Class C, Plaintiffs ask the Court to speculate that, because Swift has 19,000 drivers worldwide, at least 0.5% of those drivers must necessarily be based outside of New York and logged "sleeper berth" time in New York. These presumptions and estimates are not grounded in the record. "Although evidence of exact size or identity of class members is not required . . . evidence of numerosity is nonetheless required." *Zirogiannis v. Nat'l Recovery Agency, Inc.*, 14-cv-03954 (DRH), 2015 WL 13735000, at *1 (E.D.N.Y. Dec. 11, 2015) (internal citation and quotation marks omitted).

In addition, the Court agrees with the Magistrate Judge's assessment that reference to the 30 declarants is insufficient to establish numerosity because three of the declarants were not drivers, the remaining 27 were not in the same class, and Plaintiffs did not submit evidence regarding whether the 27 drivers logged any sleeper berth time for purposes of Class B or C – despite the fact that Swift apparently produced such evidence. R&R at 15-16 & n.17.

Finally, while Plaintiffs argue that Defendants impermissibly withheld discovery that would contain evidence of numerosity, Plaintiffs do not dispute that they could not identify a specific

11

interrogatory requesting information regarding where drivers logged sleeper berth time, *see* R&R at 15, nor did they ever move to compel the discovery they say Defendants are withholding that would reveal relevant data.

In sum, Plaintiffs did not present many of these arguments regarding numerosity to the Magistrate Judge and, even considering the arguments anew here, without more, they are not compelling.  Accordingly, Plaintiffs' objection that the Magistrate Judge erred in recommending that Plaintiffs did not sustain their burden to demonstrate numerosity is without merit.

      **B.**      **Plaintiffs' Second Objection**

Plaintiffs argue that, if the Court does not reject the Magistrate Judge's conclusion regarding numerosity, they should be afforded additional time to complete targeted discovery regarding numerosity, and then file a renewed motion for class certification.  *See* Pl. Obj. at 16.  Defendants oppose this request, *see* Def. Opp. at 4-5, and their own objection largely seeks to preclude Plaintiffs from further class discovery or motion practice, *see infra* Section C; *see generally* Def. Obj.  The Court, in its discretion, will permit Plaintiffs to engage in very limited discovery regarding numerosity, and to renew their motion one more time.

Despite its age, the case is at a relatively early stage.  Only class-related discovery has taken place so far in this action because "district courts retain 'ample discretion' to limit discovery and 'the extent of the hearing' on Rule 23 issues 'in order to assure that a class certification motion does not become a pretext for a partial trial of the merits.'" *Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 204 (2d Cir. 2008) (internal citation omitted); *see also Wills v. Amerada Hess Corp.*, 379 F.3d 32, 41 (2d Cir. 2004) (noting that a district court has "broad discretion to direct and manage the pre-trial discovery process").  It is unclear what information was requested from Defendants, the bases for all of Defendants' objections, and why Plaintiffs did not move to compel discovery that they thought was necessary to their motion for class certification.

However, given that the information relevant to the numerosity requirement is almost certainly within Swift's control, the Court is not inclined to prevent Plaintiffs from seeking that additional discovery at this stage of litigation. *See Oscar v. BMW of N. Am., LLC*, 274 F.R.D. 498, 505 (S.D.N.Y. 2011) ("The Court is reluctant to reward BMW for its inability or unwillingness to produce responsive information to Oscar's discovery requests."). The new discovery that will be sought regarding numerosity should be very limited, and the Court concludes that it will not be overly burdensome for Swift to respond to these targeted requests.

The Court is sympathetic to Defendants' frustration that Plaintiffs had their opportunity to seek discovery with respect to numerosity and failed to obtain and present adequate information in their motion to certify the classes. However, it is not uncommon for courts to permit a plaintiff to renew a motion for class certification where numerosity was initially lacking. *See, e.g.*, *Oscar*, 274 F.R.D. at 513 ("Plaintiff may seek leave to renew in the event that he can make a fuller showing that he meets the numerosity requirement of Rule 23(a)."); *Midtown Valuation, Inc. v. Cap. All. Grp.*, No. 14-cv-01586 (FB) (CLP), 2015 WL 5158448, at *1 (E.D.N.Y. Sept. 2, 2015) (adopting report recommending class certification be denied with leave to renew on numerosity grounds); *Swift v. Toia*, 450 F. Supp. 983, 991 (S.D.N.Y. 1978) ("At this juncture the motion for class certification pursuant to Fed. R. Civ. P. 23(a) and (b)(2) must be denied without prejudice to renew upon submission of data concerning numerosity of the proposed class as defined in the amended complaint."); *Lloyd v. Indus. Bio-Test Lab'ys, Inc.*, 454 F. Supp. 807, 812 (S.D.N.Y. 1978) ("Denial, however, is without prejudice to renewal upon a sufficient showing by plaintiff of numerosity and the impracticability of joinder."). This is often the case because, as courts in this Circuit have agreed, "lack of knowledge of the exact number of persons affected is not a bar to certification where the defendants alone have access to such data." *Clarkson v. Coughlin*, 783 F. Supp. 789, 798 (S.D.N.Y. 1992); *see also Oscar,* 274 F.R.D. at 504. "District courts have ample

discretion to consider . . . a revised class certification motion after an initial denial, and may revisit a prior decision on certification if the movant has identified . . . the availability of new evidence . . . ." *Kulig v. Midland Funding, LLC*, No. 13-cv-04715 (PKC), 2014 WL 6769741, at *1 (S.D.N.Y. Nov. 20, 2014) (internal citations and quotation marks omitted); *see Curtin v. Mitnick L. Off., LLC*, No. 13-cv-03142 (NSR), 2013 WL 12109399, at *2 (S.D.N.Y. Sept. 10, 2013) ("Plaintiffs' motion for class certification is premature, and is therefore denied without prejudice to renewal after sufficient discovery has occurred to allow for the requisite rigorous analysis." (internal citation omitted)). This is true even where a plaintiff fails to move to compel discovery related to numerosity. *See, e.g.*, *Zirogiannis*, 2015 WL 13735000, at *1 & n.1 (denying class certification without prejudice to renewal for failure to show evidence of numerosity even though the plaintiff apparently did not pursue a "further motion" to compel discovery related to numerosity). The Magistrate Judge also specifically contemplated a renewed motion when he addressed the commonality factor "in an effort to narrow and/or focus the issues in the case should Plaintiffs be permitted to renew their motion following additional discovery." R&R at 17 n.18.

In Swift's opposition to Plaintiffs' objections, and in its own objection, *see infra* Section C, Swift only cites to one case in which a court denied class certification with prejudice due to a plaintiff's failures during discovery. *See Gordon v. Kaleida Health*, 299 F.R.D. 380, 406 (W.D.N.Y. 2014). But in *Gordon*, numerosity was not at issue; the defendants conceded that the putative class met the numerosity requirement. *Id.* at 399. Looking instead to commonality, the court concluded, in relevant part, that the plaintiffs had failed to identify common questions of law that were typical of the putative class "[b]ecause Plaintiffs have not identified any question of law that remains unanswered or that can be resolved through representative testimony[.]" *Id.* at 404. The court denied plaintiffs' request for additional discovery on these class issues, concluding that the parties had already been given a three-month extension of time to file their motion for class

certification and the plaintiffs never sought more time. *Id.* at 406-07. Unlike in *Gordon*, the additional discovery here will be limited to the issue of numerosity, and will not more generally probe Swift's policies or address common questions of law.

Defendants finally argue that the Court should not permit Plaintiffs to engage in more discovery or file a renewed motion because numerosity was not the only problem with Plaintiffs' motion – namely, Plaintiffs' motion was based in part on an invalid New York regulation, § 175.3(c). *See* Def. Opp. at 4-5. Plaintiffs here do not object to the Magistrate Judge's conclusion with regard to the invalid New York regulation and will not further pursue that ground for class certification. Pl. Obj. at 11. However, the Magistrate Judge identified potential other grounds for commonality and noted that this and the other requirements under Rule 23 should be addressed with further briefing, *see* R&R at 25-26, if Plaintiffs were allowed to renew their motion based on new numerosity information, which the Court is now holding that they may.

The Court will therefore exercise its discretion here to permit Plaintiffs to engage in limited discovery only on numerosity, and subsequently renew their motion for class certification.

   **C.**  **Defendants' First Objection**

Defendants first object to the R&R to the extent it did not recommend dismissal of Plaintiffs' motion to certify a class with prejudice. Def. Obj. at 4-7. Having concluded that the Court will permit Plaintiffs to engage in limited discovery and renew their motion for class certification, Defendants' objection is rejected. The Court will not re-address issues raised by Defendants in both opposition to Plaintiffs' request for limited discovery and in Defendants' first objection to the R&R. Nevertheless, the Court will address two points.

First, Swift argues that "allowing Plaintiffs to file a second motion would not only disregard the deadlines in the Scheduling Orders, but would first necessitate an amendment of the SAC when the deadline to amend pleadings expired on April 8, 2022." *Id.* at 5. Again, the Court is

15

sympathetic to Defendants' assertion that Scheduling Orders jointly agreed upon by the parties and ordered by the Court should be respected. However, the Court may exercise its discretion, as previously described, to "direct and manage the pre-trial discovery process," *Wills*, 379 F.3d at 41, including with regard to motions for class certification, *see Teamsters Loc. 445 Freight Div. Pension Fund*, 546 F.3d at 204. Moreover, Rule 23(c)(1) explicitly contemplates revisiting class certification determinations any time prior to final judgment. *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *see also Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir. 1999) ("But under Rule 23(c)(1), courts are required to reassess their class rulings as the case develops." (internal citation and quotation marks omitted)).

Second, Swift argues that Plaintiffs' counsel is not adequate to serve as class counsel because counsel attempted to rely on an invalid New York regulation. *See* Def. Obj. at 7. Defendants did not raise this argument with the Magistrate Judge, and only requested to do so in a sur-reply brief, which was rejected by the Magistrate Judge. *See* Def. Obj. at 7 n.5. As such, it is not appropriate for the Court to address the merits of this argument in the first instance as part of Defendants' objections, and the Court declines to do so. Accordingly, Defendants' objection is rejected.

      **D.**    **Defendants' Second Objection**

Swift next argues that, even if the Court permits Plaintiffs to conduct limited discovery on numerosity, they should be "confined to the claim or theory upon which they have litigated this case since inception: whether time spent in a sleeper berth is compensable and whether that question can be resolve on a class-wide basis." Def. Obj. at 10. This objection is fairly nebulous, and the Court is unaware as to how Plaintiffs would wholly redefine their claims at this stage in the litigation without seeking leave to amend their Complaint on that basis. In any event, the Court cautions

Plaintiffs to adhere to the theory of the case that has been litigated for two years and, importantly, to the rulings made by the Magistrate Judge with respect to the invalidity of the New York regulations for purposes of commonality, that were not objected to, and which are adopted here.  *See* R&R at 17-26.  However, the rule does permit a court to revisit class certification determinations any time prior to final judgment.  *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").  Accordingly, Swift's objection is rejected.

## CONCLUSION

For the foregoing reasons, and having concluded that there is no clear error in the parts of the R&R to which the parties did not object, the Court adopts the R&R in full, and modifies it to clarify that the denial of class certification is without prejudice.  The Court will permit Plaintiffs to conduct limited discovery on numerosity, which will be supervised by the Magistrate Judge.  Any renewed motion for class certification shall also be directed to the Magistrate Judge, who may set the briefing schedule at the end of the limited discovery period.

The Clerk of Court is respectfully directed to terminate the motions pending at ECF Nos. 67 and 71.

Dated: June 12, 2023
New York, New York

SO ORDERED.

*Jennifer Rochon*
JENNIFER L. ROCHON
United States District Judge